ANDREW L. SOBOTKA
Texas State Bar No. 18819900
MOHA P. YEPURI
Texas State Bar No. 24046651
Attorneys, Tax Division
U.S. Department of Justice
717 N. Harwood St., Suite 400
Dallas, Texas 75201
(214) 880-9736/9767
(214) 880-9741 (Facsimile)
Attorneys for United States
Andrew.L.Sobotka@usdoj.gov
Moha.P.Yepuri@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    v.<br><br>JOHN MICHAEL PAULSON, as the<br>Executor or Statutory Executor of<br>the Estate of Allen E. Paulson,<br>and Individually;<br><br>JAMES D. PAULSON, as<br>Statutory Executor of the Estate<br>of Allen E. Paulson;<br><br>VIKKI E. PAULSON, as<br>Statutory Executor of the Estate of Allen<br>E. Paulson, as Trustee of the<br>Allen E. Paulson Living Trust, and<br>Individually; | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Case No.  **'15CV2057 AJB NLS**

1

| | |
|---|---|
| CRYSTAL CHRISTENSEN, as | § |
| Statutory Executor of the Estate of Allen | § |
| E. Paulson, as Trustee of the Allen | § |
| E. Paulson Living Trust, and Individually; | § |
| | § |
| MADELEINE PICKENS, as Statutory | § |
| Executor of the Estate of Allen | § |
| E. Paulson, as Trustee of the Marital Trust | § |
| created under the Allen E. Paulson Living | § |
| Trust, as Trustee of the Madeleine Anne | § |
| Paulson Separate Property Trust, and | § |
| Individually; | § |
| | § |
|      Defendants. | § |

# **COMPLAINT**

The United States of America, pursuant to 26 U.S.C. §§ 7401, 7402 and 7404, at the direction of the Attorney General of the United States, or her delegate, and at the request of the Secretary of the Treasury, or his delegate, files this complaint seeking a judgment against the Estate of Allen E. Paulson for $10,621,217 as of July 10, 2015, in unpaid estate taxes, penalties and interest.  The United States also seeks judgments against the other Defendants for their liability arising out of such unpaid estate taxes under 26 U.S.C. § 6324(a)(2), 31 U.S.C. § 3713, and California law.  Finally, the United States seeks to collect a 10% surcharge to the extent allowed by the Federal Debt Collection Procedures Act.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 26 U.S.C. §§ 7402 and 7404, and 28 U.S.C. §§ 1340 and 1345.

2.      Venue of this action properly lies in this district pursuant to 28 U.S.C. §§ 1391(b) and 1396 because the liabilities at issue accrued in this district.  Allen E. Paulson (hereafter Mr. Paulson) resided in this district at the time of his death. Additionally, probate proceedings with respect to Mr. Paulson's Last Will and Testament were initiated in Superior Court of San Diego County, California, as Case No. P 177 675.  Additional proceedings regarding the related Allen E. Paulson Living Trust were filed in the same court as Case No. PN24815.

## THE PARTIES

3.      Plaintiff is the United States of America.

4.      Defendant, John Michael Paulson (hereafter "Michael Paulson"), is a son of Mr. Paulson and the last known Executor of the Estate of Allen E. Paulson (the Estate) formally appointed by the California Probate Court.  He is sued in his representative capacity as the appointed or statutory Executor of the Estate under 26 U.S.C. §§ 2002 and 2203.  He is also sued in his individual capacity for personal liability under 26 U.S.C. § 6324(a)(2) for amounts he held as Trustee of the Allen E. Paulson Living Trust ("Living Trust") on the date of Mr. Paulson's death.  Finally, Michael Paulson is sued in his individual capacity for personal

liability under 31 U.S.C. § 3713 for actions taken to disregard the Marital Trust's right to receive property from the Living Trust in favor of a direct distribution to Madeleine Pickens (previously Madeleine Paulson) or to the Madeleine Anne Paulson Separate Property Trust.

5.      Defendant, James D. Paulson (hereafter "James"), is a son of Mr. Paulson.  James is named to be the alternate Executor to the Estate in a codicil to the Will.  He is sued in his representative capacity as an appointed or statutory Executor of the Estate under 26 U.S.C. §§ 2002 and 2203.

6.      Defendant Vikki E. Paulson (hereafter "Vikki"), is a daughter-in-law of Mr. Paulson and a Co-Trustee of the Living Trust.1  Vikki was named as a Co-Trustee of the Living Trust in March 2009.  She is sued in her representative capacity as a statutory Executor of the Estate under 26 U.S.C. §§ 2002 and 2203. She is also sued in her representative capacity as Co-Trustee of the Living Trust under 26 U.S.C. § 6324(a)(2) and California Probate Code Section 19001.  Finally, she is sued in her individual capacity for personal liability under U.S.C. § 6324(a)(2).

---

[1] Vikki was the wife of Richard Paulson (hereafter "Richard"), who was a son of Mr. Paulson.  Richard passed away in 2007.

7.      Defendant Crystal Christensen (hereafter "Crystal") is a grandchild of Mr. Paulson and the daughter of Richard and Vikki.   Crystal is a current Co-Trustee of the Living Trust.  She is sued in her representative capacity as a statutory Executor of the Estate under 26 U.S.C. §§ 2002 and 2203.  She is also sued in her representative capacity as Co-Trustee of the Living Trust under 26 U.S.C. § 6324(a)(2) and California Probate Code Section 19001.  Finally, she is sued in her individual capacity for personal liability under 26 U.S.C. § 6324(a)(2).

8.      Defendant Madeleine Pickens, f/k/a Madeleine Paulson (hereafter "Madeleine") is the third wife of Mr. Paulson.  She is sued in her representative capacity as statutory Executor of the Estate under 26 U.S.C. §§ 2002 and 2203. She is also sued in her representative capacity as Trustee of the Madeleine Paulson Separate Property Trust 26 U.S.C. § 6324(a)(2).  Finally, she is sued in her individual capacity for personal liability under 26 U.S.C. § 6324(a)(2) and 31 U.S.C. § 3713.

## FACTUAL BACKGROUND

9.      On December 23, 1986, Mr. Paulson established the Allen E. Paulson Living Trust.

10.      On December 19, 1988, in anticipation of being married, Mr. Paulson and Madeleine Farris entered into agreement titled "Antenuptial Agreement" that

5

defined their respective separate property and established certain gifts for Madeline in the event of Mr. Paulson's death.

11.    On January 28, 2000, the Allen E. Paulson Living Trust was amended and restated.  Three subsequent amendments to the trust were executed on March 21, 2000, June 6, 2000, and June 14, 2000.  (The Allen E. Paulson Living Trust, as amended and restated above, is hereafter referred to as the "Living Trust").

12.    The Living Trust was revocable by Mr. Paulson, and provided him with income and principal during his lifetime.  The Living Trust also gave Madeleine the power to elect between receiving property under the Antenuptial Agreement or the Living Trust, but not both.

13.    Article III, Paragraph B.2.a, of the Living Trust also created a Marital Trust for the benefit of Madeleine. The Marital Trust was to receive a residence and all personal property located at 14497 Emerald Lane, Rancho Santa Fe, California, consisting of two (2) lots and subject to all encumbrances on the residence at Mr. Paulson's death.

14.    Article III, Paragraph B.2.b of the Living Trust also gave Madeleine the right to receive a second residence located at 2614 Ocean Front, Del Mar, California, as well as all household furniture and furnishings, and all policies of insurance on such property, located at that residence, free of all encumbrances on the property.

6

15.   Article IV, Paragraph A of the Living Trust also provided that the Marital Trust established for the benefit of Madeleine was to receive 25% of the residue of the Living Trust.

16.   Article XIV, Paragraph C.2 of the Living Trust named Madeline, Michael Paulson, and Edward White (or alternatively to Edward White, Nicholas Diaco), as the co-trustees of the Marital Trust.

17.   Article III, Paragraphs C.1, C.3, and C.4 of the Living Trust created trusts for Crystal, Violet, Artemus and Grandchildren.  Violet was named as trustee for her trust.  Artemus was named as trustee of his trust.   Michael Paulson was named as the trustee of all other trusts, established by the Living Trust instrument, including Crystal's Trust and the Grandchildren's Trusts.

18.   Article IV, Paragraphs A and B, of the Living Trust required the Living Trust to pay all estate taxes of owed by the Estate of Mr. Paulson. Additionally, under California Probate Code Section 19001, the Living Trust was obligated to pay all claims of creditors of the Estate and expenses of administration of the Estate to the extent the Estate was inadequate to satisfy those claims.

19.   On March 21, 2000, Mr. Paulson executed his Last Will and Testament.

20.   On June 6, 2000, Mr. Paulson executed a First Codicil to his Last Will and Testament.

21.    On July 19, 2000, Mr. Paulson died.

22.    Mr. Paulson was survived by several heirs, including his third wife Madeleine Pickens (previously Madeleine Paulson), his three sons from a prior marriage, Richard Paulson, James Paulson and Michael Paulson, and a granddaughter Crystal Paulson (now Crystal Christensen).

23.    On August 11, 2000, Mr. Paulson's Will was filed with Superior Court of San Diego County, California (the "Probate Court").  Michael Paulson and Edward White were appointed and served as Co-Executors of the Estate until Edward White's resignation effective October 8, 2001.  Thereafter, Michael Paulson served as the sole successor Executor.

24.    At the time of Mr. Paulson's death, the Living Trust held all of Mr. Paulson's assets except for 100% of the shares in the Gold River Hotel & Casino Corporation (hereafter Gold River shares).  The Living Trust's assets included:

| Description | Date of Death Value as Reported |
|---|---|
| Real Estate | $24,764,500 |
| Stocks and Bonds | $113,761,706 |
| Cash and Receivables | $23,664,644 |
| Miscellaneous Assets | $31,243,494 |
| **Total** | **$193,434,344** |

8

25. Following Mr. Paulson's death, Michael Paulson and Edward White also became co-trustees of the Living Trust until White's resignation effective October 8, 2001. On October 11, 2001, Nicholas V. Diaco, M.D. consented to act as co-trustee of the Trust with Michael Paulson.

26. In April 2001, the Estate filed a Form 4768 with the IRS requesting an extension of time to file its Form 706, Estate Tax Return until October 19, 2001, and an extension to pay its estate tax until April 19, 2002. The IRS approved the Estate's request for these extensions.

27. On October 23, 2001, the IRS received the Estate's Form 706 Estate Tax Return. The return was signed by J. Michael Paulson as Co-Executor. On this Form 706 Estate Tax Return, the Estate elected to use alternate valuation date of January 19, 2001, under Section 2032(a). The Estate reported a total gross estate (including the probate assets listed in the state court inventory as well as non-probate assets (required to be included on the return under 26 U.S.C. §§ 2034 through 2042) of $187,729,626. Included in this gross estate was $11,923,395, attributable to the residence ($8,500,000) and its contents ($3,423,395) located at 14497 Emerald Lane, Rancho Santa Fe, California; it also included $3,503,275 attributable to residence ($3,500,000) and its contents ($3,275) located at 2614 Ocean Front, Del Mar, California; and $27,000,000 attributable to a 100% ownership interest in Del Mar Country Club, Inc. The return reported the probate

estate's 100% ownership interest in the Gold River Hotel & Casino Corporation d/b/a River Palms Resort at $0.00.

28.    The Estate Tax Return reported a net taxable estate of $9,234,172, and an estate tax liability of $4,459,051.   The IRS assessed this originally reported tax of $4,459,051 on November 26, 2001.

29.    However, the Estate did not pay this estate tax in full. Instead, the Estate elected to defer the payment of part of its estate taxes under Section 6166 of the Internal Revenue Code over the next 15 years. As a condition of being allowed this privilege of paying its estate tax debt over time, the statute of limitations for collection of this debt was extended under Section 6503(d) from the time that the election was made until the election was terminated.  For the portion of the tax that did not qualify for the Section 6166 election and 15 year deferral, the Estate paid $706,296 concurrently with its filing of the Estate Tax Return - leaving a deferred balance of $3,752,755 to be paid under the Section 6166 installment election.

30.    At the same time he filed the Estate Tax Return, Michael Paulson filed a letter with the IRS seeking to invoke the provisions of 26 U.S.C. § 2204(a) discharging his personal liability as Co-Executor for any additional estate tax deficiency that might be owed.  The request was not on Form 5495, and it was signed only in Michael Paulson's capacity as a Co-Executor.  The letter did not describe Michael Paulson's role as a trustee in any trust, nor was there any trust

instrument attached to the letter requesting the discharge as required by 26 U.S.C. § 2204(b).

31.   On or about November 15, 2001, the Estate Tax Return was selected for examination by the IRS.

32.   Thereafter several disputes arose between Madeleine on one hand, and Michael Paulson, as Co-Trustee of the Living Trust, on the other hand.  Disputes also arose between Madeleine, and the other Paulson's and the Co-Trustees.

33.   These disputes were settled on or about February 2, 2003 (hereafter the "2003 Settlement").  The 2003 Settlement provided, among other things, that Madeleine would forego receiving property as stated in the Antenuptial Agreement, forego receiving property as stated in the Living Trust through a Marital Trust and through a residual interest, and forego collecting against the creditor's claim that she had filed in probate court, and in exchange receive the following assets: the Emerald Lane residence, the Ocean Front residence, and the stock in the Del Mar Country Club, Inc.

34.   On March 14, 2003, at the uncontested request of Michael Paulson, the probate court entered an order approving the 2003 Settlement and modifying the Living Trust to bypass the Marital Trust and make direct distributions to Madeleine.

35.     However, instead making direct distributions to Madeleine, the Emerald Lane residence, the Ocean Front residence, and the stock in the Del Mar Country Club, Inc., were all transferred to, and received by, Madeleine as Trustee of the Madeleine Anne Paulson Separate Property Trust.

36.     During 2004, Michael Paulson, as Trustee of the Living Trust, distributed the following amounts from the Living Trust:

| **Beneficiary or Trustee** | **Amount** |
| --- | --- |
| Georgia Southern University | $2,500,000 |
| Crystal Christensen | $900,125 |
| Trustee of Grandchildren's Trust for benefit of Robert Paulson | $336,647 |
| Trustee of Grandchildren's Trust for benefit of Alison Paulson | $336,647 |
| Trustee of Grandchildren's Trust for benefit of Steven Paulson | $336,647 |
| Violet Paulson | $519,630 |
| Artemus Paulson | $514,553 |
| Carolyn Paulson Andrews | $146,744 |
| Boyd Paulson | $146,744 |
| George Paulson | $92,075 |
| Cheryl Nicolson | $92,075 |
| **Total** | **$5,921,887** |

37.    On information and belief, the distributions to Crystal Christensen, the Grandchildren's Trust, Violet Paulson and Artemus Paulson were made to trusts established under the Living Trust for their benefit.

38.    On January 16, 2005, the IRS issued a notice of deficiency to the Michael Paulson as Executor of the Estate proposing a $37,801,245 deficiency in the estate tax reported on the return.

39.    On January 19, 2005, Michael Paulson as Executor of the Estate petitioned the United States Tax Court challenging the IRS's proposed additional estate tax.

40.    On December 2, 2005, the Tax Court (Dkt. No. 1217-05) determined pursuant to the parties' stipulation, that $6,669,477 of additional estate tax was owed by the Estate.  The Estate elected to pay this additional estate tax liability under the same fifteen-year installment period permitted by 26 U.S.C. § 6166.

41.    The Tax Court settlement and stipulated decision:  (a) made no changes to the values originally reported on the Estate Tax Return for the residence and contents located 14497 Emerald Lane, the residence and contents located 2614 Ocean Front, the stock in the Del Mar Country Club. Inc., or the stock in the Gold River Hotel & Casino Corporation; (b) increased the value of other assets held in the Living Trust by $2,974,738 to $190,704,364; (c) disallowed certain expenses and claims; (d) allowed certain other expenses and claims; and (e) increased the

13

marital deduction for transfers to Madeleine as a surviving spouse from $9,917,923 to $19,040,654.

42.     Accordingly, on January 30, 2006, the IRS assessed the $6,669,477 of additional estate taxes due from the Estate.  These additional taxes were subject to being paid under the existing Section 6166 installment election.

43.     During 2006, Michael Paulson, as Trustee of the Living Trust, distributed an additional $1,250,000 to Georgia Southern University from the Living Trust.

44.     On March 24, 2009, the Probate Court removed Michael Paulson as Trustee of the Living Trust for misconduct and appointed Vikki Paulson and James D. Paulson as Co-Trustees.  On August 11, 2009, the Trust vis-à-vis the newly appointed Co-Trustees Vikki Paulson and James D. Paulson, reported that it had assets worth $13,738,727.

45.     On May 7, 2010, in response to one or more missed installment payments, the IRS issued the Estate a Notice of Final Determination as provided in I.R.C. § 7479 that Extension of Time for Payment under I.R.C. § 6166 has ceased to apply.

46.     On June 10, 2010, the probate court removed James D. Paulson as a Co-Trustee of the living trust for breach of court orders.  Vikki Paulson continued to serve as the sole Trustee of the Living Trust.

47.     On August 5, 2010, the Estate, through Vikki E. Paulson, As Temporary Trustee Of The Living Trust, as Sole Residuary Beneficiary of the Estate, filed a petition in the United States Tax Court (Dkt. 17998-10) challenging the IRS's proposed termination of the Estate's Section 6166 Installment Election.

48.     On February 28, 2011, Crystal Christensen was appointed as a Co-Trustee of the Living Trust.  On information and belief the Living Trust held assets worth at least $8,802,034 on that date.

49.     On May, 4, 2011, the Tax Court entered a stipulated decision sustaining the IRS's decision to terminate the Estate's Section 6166 installment election.

50.     Between June 28, 2011 and July 7, 2011, the United States recorded Notices of Federal Tax Lien against the Estate in the property records of San Diego County, California and Los Angeles County, California.

51.     On April 16, 2012, Vikki E. Paulson and Crystal Christensen, Successor Co-Trustees of the Living Trust, filed a third petition in the United States Tax Court (Dkt. 009605-12) on behalf of the Estate seeking a review of the Estate's Collection Due Process rights.  This Tax Court was dismissed on April 18, 2013, for lack of jurisdiction because the petition had not been signed by Michael Paulson who was, at that time, the court appointed Executor of the Estate.

52.    From 2007 through 2013, several disputes arose between Michael Paulson, Vikki Paulson, Crystal Christensen, James Paulson, and other interested parties in the Living Trust.  On June 3, 2013, the California Superior Court entered a Stipulation and Order on Settlement Agreement and Mutual General Release that is the formalized resolution to these disputes ("2013 Settlement Agreement").

53.    The 2013 Settlement Agreement provided that (1) the Living Trust would transfer its ownership of the Supersonic Aerospace International, LLC project ("SAI") to Michael Paulson; and (2) the Estate would transfer its ownership of the Gold River Hotel & Casino Corporation and the Gold River Operation Corporation ("GROC entities") to Michael Paulson.  Both of these transfers were to be made free of any encumbrances.  The 2013 Settlement Agreement also provided that Living Trust distribute its "Gitlitz Tax Losses" to Michael Paulson. In exchange for the SAI project, the GROC entities, and the Gitlitz Tax Losses, Michael Paulson surrendered any further interest in the Trust, forgave any loans made to the Trust, forgave any unpaid trustee fees or expenses that he incurred while serving as Trustee, surrendered a 35% beneficiary interest in the Violet M. Paulson Family Trust, resigned as Executor of the Estate, and agreed to pay the Trust a certain percentage of Net Income that Michael Paulson might receive from the sale or licensing of SAI or its intellectual property.

54.   Michael Paulson's resignation as Executor of the Estate was effective on January 15, 2013.

55.   As of July 10, 2015, the unpaid balance of the estate tax liability (tax, penalties and interest) was $10,261,217.

## COUNT I

### Judgment Against the Estate

56.   On January 30, 2006, the IRS assessed additional tax against the Estate in the amount of $6,669,477.

57.   Despite assessment, notice, and demand for payment, the Estate has neglected, failed, or refused to pay the full amount of the estate taxes, penalties and interest owed to the United States.

58.   Under 26 U.S.C. § 2001, an executor appointed by the courts, or in his or her absence, those persons in possession of the decedent's property (statutory executors under 26 U.S.C. § 2203) are liable for the estate tax in their representative capacities.

59.   Accordingly, pursuant to 26 U.S.C. § 7402, the United States is entitled to a judgment that John Michael Paulson, James D. Paulson, Vikki E. Paulson, Crystal Christensen, and Madeleine Pickens, in their respective capacities as the appointed or statutory Executors of the Estate are liable to the United States

in the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6601 and 6621 until paid.

## COUNT II

### Judgment Against the Allen E. Paulson Living Trust

60.   The Estate has not fully paid its estate tax liability.

61.   On information and belief, the Estate no longer holds any assets, much less any assets sufficient to pay the estate tax liability.

62.   As of July 19, 2000, the date of Mr. Paulson's death, the Living Trust held property valued at $190,704,364 that was required to be included in the gross estate under 26 U.S.C. §§ 2034 through 2042.

63.   By operation of 26 U.S.C. § 6324(a)(2), Vikki E. Paulson and Crystal Christensen, in their capacity as Trustees of the Living Trust, are liable to the United States for the lesser of: (i) the Estate's unpaid estate tax, plus its applicable penalties and interest; or (ii) the value of the non-probate property (included in the gross estate under Sections 2034 through 2042) held or received plus interest on such amount under Section 6601 from the date of death until paid. *Baptiste v. Commissioner*, 29 F.3d 1533, 1542 (11th Cir. 1994.

64. The value of the non-probate property held or received by the Living Trust on the date of Mr. Paulson's death exceeds the current unpaid balance of the estate tax liability.

65. Accordingly, the United States is entitled to a judgment that Vikki E. Paulson and Crystal Christensen are liable to the United States under 26 U.S.C. § 6324(a)(2) in their representative capacities as Trustees of the Living Trust in the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

66. In addition, the United States is entitled to a judgment that Vikki E. Paulson and Crystal Christensen, in their representative capacities as Trustees of the Living Trust are liable to the United States under California Probate Code Section 19001 for an amount equal to the Estate's unpaid estate tax, penalties and interest, which is $10,261,217 as of July 10, 2015, plus prejudgment and post-judgment interest thereon under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

67. Finally, the United States is entitled to a judgment that Vikki E. Paulson and Crystal Christensen, in their representative capacities as Trustees of the Living Trust are liable to the United States for breach of third party contract in an amount equal to the Estate's unpaid estate tax, penalties and interest, which is 10,261,217 as of July 10, 2015, plus prejudgment and post-judgment interest thereon under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

## COUNT III

### Judgment against J. Michael Paulson

68.     The Estate has not fully paid its estate tax liability, and as July 10, 2015, a balance of $10,621,217 was still owed.

69.     As of July 19, 2000, the date of Mr. Paulson's death, the Living Trust held property valued at $190,704,364 that was included in the gross estate under 26 U.S.C. §§ 2034 through 2042.

70.     By operation of 26 U.S.C. § 6324(a)(2), Michael Paulson became personally liable in his individual capacity to the United States for the lesser of: (i) the Estate's unpaid estate tax, plus its applicable penalties and interest; or (ii) the value of the non-probate property (included in the gross estate under Sections 2034 through 2042) held or received plus interest on such amount under Section 6601 from the date of death until paid. *Baptiste v. Commissioner,* 29 F.3d 1533, 1542 (11th Cir. 1994)

71.     The value of the non-probate property held or received by the Living Trust on the date of Mr. Paulson's death exceeds the current unpaid balance of the estate tax liability.

72.     Accordingly, the United States is entitled to a judgment Michael Paulson is personally liable to the United States under 26 U.S.C. § 6324(a)(2) in

the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

## COUNT IV

### Judgments against Vicki Paulson and James D. Paulson

73.   The Estate has not fully paid its estate tax liability, and as July 10, 2015, a balance of $10,621,217 was still owed.

74.   Vikki Paulson and James D. Paulson became Trustees of the Living Trust on or about March 24, 2009, when the Trust still held property that had been included in the gross estate under 26 U.S.C. §§ 2034 through 2042.

75.   By operation of 26 U.S.C. § 6324(a)(2), Vikki Paulson and James D. Paulson became personally liable in their individual capacity to the United States for the lesser of: (i) the Estate's unpaid estate tax, plus its applicable penalties and interest; or (ii) the value of the non-probate property (included in the gross estate under Sections 2034 through 2042) held or received plus interest on such amount under Section 6601 from the date of death until paid. *Baptiste v. Commissioner*, 29 F.3d 1533, 1542 (11th Cir. 1994).

76.   On information and belief, the value of the non-probate property held by the Living Trust on the date Vikki Paulson and James D. Paulson took over from Michael Paulson as Trustees of the Living Trust exceeded the current unpaid balance of the estate tax liability.

77.     Accordingly, the United States is entitled to a judgment stating that Vikki Paulson and James D. Paulson are personally, and jointly and severally, liable to the United States under 26 U.S.C. § 6324(a)(2) in the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

## COUNT V

### Judgment against Crystal Christensen

78.     The Estate has not fully paid its estate tax liability, and as July 10, 2015, a balance of $10,621,217 was still owed.

79.     Crystal Christensen received a $990,125 distribution from the Living Trust in 2004 as a beneficiary of that Living Trust, or as a trustee of the trust established for her benefit under the Living Trust.

80.     Crystal Christensen also became a Trustee of the Living Trust on or about February 28, 2011, when the Living Trust still held property that had been included in the gross estate under 26 U.S.C. §§ 2034 through 2042.

81.     By operation of 26 U.S.C. § 6324(a)(2), Crystal Christensen became personally liable in her individual capacity to the United States for the lesser of: (i) the Estate's unpaid estate tax, plus its applicable penalties and interest; or (ii) the value of the non-probate property (included in the gross estate under Sections 2034 through 2042) held or received plus interest on such amount under Section 6601

22

from the date of death until paid. *Baptiste v. Commissioner*, 29 F.3d 1533, 1542 (11th Cir. 1994).

82.     On information and belief, the value of the non-probate property held by the Living Trust on the date Crystal Christensen became a Trustee of the Living Trust exceeded the current unpaid balance of the unpaid estate tax liability, or alternatively, such value plus interest from such date exceeds the current unpaid estate tax liability.

83.     Accordingly, the United States is entitled to a judgment that Crystal Christensen is personally liable to the United States under 26 U.S.C. § 6324(a)(2) in the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

84.     Alternatively, if the United States is not granted the judgment it seeks against Crystal Christensen above then it seeks a judgment against her for the value of the $990,125 she received plus interest from the date she received such amount at the rates provided by 26 U.S.C. §§ 6601 and 6621.  Although the exact date of this distribution is not yet clear, the United States contends that with interest from December 31, 2004, through July 10, 2015, the this amount is equal to at least $1,629,520.

85.     Accordingly, the United States is entitled to an alternative judgment that Crystal Christensen is personally liable to the United States under 26 U.S.C. §

6324(a)(2) in the amount of at least $1,629,520 as of July 10, 2015, plus

prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621

until paid.

## COUNT VII

### Judgment Against Madeleine Pickens

86.     The Estate has not fully paid its estate tax liability, and as July 10,

2015, a balance of $10,621,217 was still owed.

87.     As a result of the 2003 Settlement, Madeline Pickens received

$750,000 cash paid to her directly from the Living Trust.

88.     Also, as a result of the 2003 Settlement, Madeleine Pickens received

net assets from the Living Trust which were valued as of the date of death at

$19,040,654 and included in the gross estate of the Form 706 Estate Tax Return

under 26 U.S.C. § 2034 through 2042, inclusive.  These assets included:

| | |
|---|---|
| The Residence at Emerald Lane less $4,200,000 encumbrance, (Form 706, Schedule A, Item 1) | $4,300,000 |
| The Residence at Ocean Front, Form (706 Schedule A, Item 2) | $3,500,000 |
| Tangible personal property (Form 706, Schedule F, Items 4a through 4f, 5a, 5b).  Personal property at Emerald Lane | $3,423,395 |
| Tangible personal property (Form 706, Schedule F, Item 6a).  Personal Property at Ocean Front. | $3,275 |

| | |
|---|---|
| Tangible personal property (Form 706, Schedule F, Item 8a). Antiquities. | $117,000 |
| Stock in Del Mar Country Club, Inc., less $3,500,000 in assumed debt (Form 706, Schedule B, Item 5 and Schedule K-1, Item 42) | $7,696,984 |
| Total | $19,040,654 |

89.    Based on Madeleine's receipt of these assets, the Estate claimed, and was allowed, a marital deduction of $19,040,654 in the Tax Court case. *Estate of Allen E. Paulson, Deceased, et. al, v. Commissioner*, U.S. Tax Court (Dkt. 1217-05).

90.    Of the assets received by Madeleine, the Emerald Lane Residence, the personal property at that residence, and the stock in the Del Mar Country Club, Inc., were to have been received by her as a Co-Trustee of the Marital Trust established for her benefit in the Living Trust.

91.    However, Madeleine Pickens and Michael Paulson agreed to disregard the Martial Trust, and instead transferred all $19,040,651 of these assets to Madeleine Anne Paulson as Trustee of the Madeleine Anne Paulson Separate Property Trust.

92.    Accordingly, by operation of 26 U.S.C. § 6324(a)(2), Madeline Pickens is liable to the United States for the lesser of: (i) the Estate's unpaid estate tax, plus its applicable penalties and interest; or (ii) the value of the non-probate property (included in the gross estate under Sections 2034 through 2042) she

received plus interest on such amount under Section 6601 from the date of death until paid. *Baptiste v. Commissioner*, 29 F.3d 1533, 1542 (11th Cir. 1994).

93. Here, the value of the non-probate assets received by Madeleine Pickens exceeds the current outstanding estate tax liability. Accordingly, the United States is entitled to a judgment against Madeleine Pickens in her capacity as Trustee of the Madeleine Anne Paulson Separate Property Trust is liable to the United States under 26 U.S.C. § 6324(a)(2) for $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

94. Additionally, because liability under 26 U.S.C. § 6324(a)(2) is personal liability for all persons (including trustees) described therein, the United States is also entitled to a judgment that Madeleine Pickens is personally liable to the United States under 26 U.S.C. § 6324(a)(2) for $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

95. As an alternative to the judgments sought above against Madeleine Pickens under 26 U.S.C. § 6324(a)(2), the United States seeks a judgment that Madeleine Pickens has breached obligation to the United States as a third party beneficiary of the 2003 Settlement.

96.    At the time of the 2003 Settlement, the IRS was auditing the Estate's

Form 706 Estate Tax Return, and it was not known by the direct parties to the 2003

Settlement if the IRS (or the Tax Court) would ultimately determine that there

should be increases to the value of the assets that Madeleine Pickens was to receive

under that 2003 Settlement.

97.    Accordingly, in Paragraph 21 of that 2003 Settlement, Madeleine

assumed sole liability for "any estate or gift tax (determined at the highest marginal

tax rate and without the benefit of any credit or exclusion amounts) payable as a

result of any distribution made to Madeleine pursuant to [the 2003 Settlement

Agreement]".  Madeleine also agreed to indemnify the Living Trust for any such

estate tax liability.

98.    Because this estate tax was payable only to the United States, it is a

third party beneficiary of Madeleine's promise in the 2003 Settlement and the

United States may bring an action directly against her under California law, or

federal common law, for breach of that obligation.

99.    Madeleine received assets valued at $19,040,654 under the 2003

Settlement, and the highest marginal estate tax rate for the year 2000 was 55%.

Therefore, Madeleine Paulson assumed an obligation to pay $10,472,360 in estate

tax to the United States.  When interest is added to that assumed tax liability from

the date of the 2003 Settlement, the total liability assumed for estate taxes by

Madeleine exceeds the Estate's remaining unpaid liability of $10,621,217 as of July 10, 2015.

100.    Accordingly, the United States is entitled to an alternative judgment that Madeleine Pickens is personally liable to the United States for breach of contract in the amount of the remaining unpaid estate tax liability, $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid.

## COUNT VIII

## Ten Percent Surcharge for Costs of Collection

101.    28 U.S.C. Section 3011 authorizes the United States to recover a surcharge of 10% of the amount of the debt in the event that the United States avails itself of the pre-judgment or post judgment relief as set forth in Subchapter B or C of the Federal Debt Collection Procedure Act, 28 U.S.C. §§3001 *et. seq.*, in order to cover the cost of processing and handling the litigation and enforcement under this chapter of the claim for such debt.

**PRAYER / REQUEST FOR RELIEF**

FOR THESE REASONS, the United States requests the Court to Order,

A.      That defendants John Michael Paulson, James D. Paulson, Vikki E. Paulson, Crystal Christensen, and Madeleine Pickens, in their capacities as the appointed or statutory executors of the Estate of Allen E. Paulson are liable to the United States for unpaid estate taxes, penalties and interest in the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6601 and 6621 until paid;

B.      Vikki E. Paulson and Crystal Christensen, in their representative capacities as Co-Trustees of the Allen E. Paulson Living Trust, are liable to the United States under 26 U.S.C. § 6324(a)(2) interest in the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6601 and 6621 until paid;

C.      Michael Paulson is personally liable to the United States under 26 U.S.C. § 6324(a)(2) in the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid;

D.      Vikki E. Paulson and James D. Paulson are personally, and jointly and severally, liable to the United States 26 U.S.C. § 6324(a)(2) in the amount of

$10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid;

E. Crystal Christensen is personally liable to the United States under 26 U.S.C. § 6324(a)(2) in the amount of $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid;

F. Madeleine Pickens in her capacity as Trustee of the Madeleine Anne Paulson Separate Property Trust is liable to the United States under 26 U.S.C. § 6324(a)(2) for $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid;

G. Madeleine Pickens in her individual capacity is personally liable to the United States under 26 U.S.C. § 6324(a)(2) for $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid;

H. Madeleine Pickens is personally liable to the United States for breach of contract in the amount of the remaining unpaid estate tax liability, $10,621,217 as of July 10, 2015, plus prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601 and 6621 until paid;

I. The United States' federal tax liens under 26 U.S.C. §§ 6321 and 6322 may be foreclosed against all property and rights to property that (A) are

remaining in the Estate; and (B) were distributed by the Estate after January 30, 2006, and still held by the heirs of the Estate.

J.      That the United States is entitled to the 10% litigation surcharge set forth in 28 U.S.C. Section 3011; and,

K.      That the United States has such further relief as this Court may deem just and proper, including its costs.

/s/ Moha P. Yepuri
ANDREW L. SOBOTKA
Texas State Bar No. 18819900
MOHA P. YEPURI
Texas State Bar No. 24046651
Attorneys, Tax Division
U.S. Department of Justice
717 N. Harwood St., Suite 400
Dallas, Texas 75201
(214) 880-9767
(214) 880-9741 (Facsimile)
Attorneys for United States
Andrew.L.Sobotka@usdoj.gov
Moha.P.Yepuri@usdoj.gov

ATTORNEYS FOR THE UNITED STATES