JEREMY J. GRAY (SBN 150075)
  jgray@zuberlaw.com
ZUBER LAWLER & DEL DUCA LLP
777 S. Figueroa Street, 37th Floor
Los Angeles, California 90017
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendants
Vikki E. Paulson and
Crystal L. Christensen

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>·Plaintiff,<br><br>v.<br><br>JOHN MICHAEL PAULSON, as the Executor or Statutory Executor of the Estate of Allen E. Paulson, and Individually;<br><br>JAMES D. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson;<br><br>VIKKI E. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Allen E. Paulson Living Trust, and Individually;<br><br>CRYSTAL CHRISTENSEN, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Allen E. Paulson Living Trust, and Individually;<br><br>MADELEINE PICKENS, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Marital Trust created under the Allen E. Paulson Living Trust, as Trustee of the Madeleine Anne Paulson Separate Property Trust, and Individually;<br><br>Defendants. | CASE NO. 15CV2057 AJB NLS<br><br>[Assigned to Hon. Anthony J. Battaglia - Courtroom 3B]<br><br>**DEFENDANTS VIKKI E. PAULSON AND CRYSTAL L. CHRISTENSEN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date:   January 21, 2016<br>Time:  2:00 p.m.<br>Place:  Courtroom 3B<br>         221 West Broadway<br>         San Diego, California 92101<br><br>[Filed concurrently with Notice of Motion and Motion to Dismiss; Request for Judicial Notice; Compendium of Tax Authorities; and [Proposed] Order]<br><br>Complaint Filed: September 16, 2015 |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................ 1

II. STATEMENT OF FACTS .............................................................................. 3

    A. Background. ............................................................................................ 3

    B. The Estate Tax Filings. ......................................................................... 4

    C. The Government's Inaction. ................................................................... 4

    D. The Tax Court Determined Vikki and Crystal Were Not Executors. ............................................................................................. 5

III. THE COMPLAINT FAILS TO STATE ANY CAUSE OF ACTION AGAINST DEFENDANTS ......................................................................... 6

    A. Defendants Are Not Liable For Unpaid Estate Taxes Under 26 U.S.C. § 2002 ....................................................................................... 6

    B. The Defendants Are Not Liable For The Unpaid Estate Taxes Under Section 6324(a)(2). .................................................................... 7

        1. Background On Section 6324(a)(2) ............................................. 8

        2. Vikki And Crystal Are Not Liable For The Estate Taxes As "Transferees" Or "Trustees" Either Individually Or As Representatives. .......................................................................... 9

            (a) *Section 6324(a)(2) Only Applies To Persons That Have, Or Receive, Property On The Date Of Death* ........ 11

            (b) *Johnson And Englert Necessarily Concluded That The Date Of Death Limitation Modifies Each Of The Six Enumerated Categories* ......................................... 13

            (c) *Vikki And Crystal Have No Liability Under Section 6324(a)(2).* ................................................................. 13

    C. Vikki And Crystal Are Not Liable Under Probate Code Section 19001 ................................................................................................... 15

    D. The Government Does Not Possess A "Third Party" Contractual Claim Against Vikki or Crystal. ......................................................... 16

IV. CONCLUSION ............................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Englert v. C.I.R.*
32 T.C. 1008 (1959) ................................................................. 8, 9

*Galdjie v. Darwish*
113 Cal. App. 4th 1331 (2003) ............................................. 14

*Garret v. Commissioner*
T.C. Memo 1994-70; 1994 Tax Ct. Memo LEXIS 74 at *39; 67 T.C.M.
(CCH) 2214 ....................................................................... 9

*Miller v. Standard Nut Margarine Co.*
284 U.S. 498, 508 (1932) ....................................................... 12

*R.J. Cardinal Company v. Jess M. Ritchie & Pioneers, Inc.*
218 Cal. App. 2d 124 (1963) ................................................. 16

*United States v. Johnson*
2013 U.S. Dist. LEXIS 106671 *22, 112 AFTR 2d 2013-5474 (D.
Utah, July 29, 2013) .......................................................... 8, 9

*Ziegler v. Nickel*
64 Cal. App. 4th 545 (1998) ................................................. 14

## STATUTES

26 U.S.C. § 2002 ....................................................................... 6, 7

26 U.S.C. § 2040 ....................................................................... 8

26 U.S.C. § 2041 ....................................................................... 8

26 U.S.C. § 2042 ....................................................................... 8, 9

26 U.S.C. § 2203 ....................................................................... 6

26 U.S.C. § 6166 ....................................................................... 4

26 U.S.C. § 6324(a)(2) & Cal. Prob. Code § 19001 ................ 1

26 U.S.C. §§ 2002 & 2003 ......................................................... 6

26 U.S.C. §§ 2002 & 2204 ......................................................... 1

Cal. Prob. Code § 19000(a)(2) ............................................... 2, 15

Cal. Prob. Code § 19000(f) ...................................................... 16

Cal. Prob. Code § 8525(b) ....................................................... 7

Case No.: 15CV2057 AJB NLS
MEMORANDUM OF POINTS AND AUTHORITIES

Cal. Probate Code § 19001(a)........................................................................ 15

1856-1009 / 438261.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

After sitting on its hands for more than a decade, instead of collecting the unpaid estate taxes in the myriad ways available (including by years ago suing the executor and original trustee, Michael Paulson), the Government now sues Vikki Paulson and Crystal Christensen ("Co-Trustees"), and seeks to hold them ***individually liable*** for the estate taxes, without any legal basis to do so, and even though the current, successor, Co-Trustees have done nothing other than serve as exemplary stewards of the Allen E. Paulson Living Trust ("Trust").

Happily, this is an occasion where the proper and equitable result – dismissal of these claims -- is also required by the law.  The Government seeks to hold Vikki Paulson ("Vikki") and Crystal Christensen ("Crystal") (together "Co-Trustees" or "Defendants") liable for the unpaid estate taxes on several theories, none of which can withstand this Motion to Dismiss.  The Government claims the Defendants are liable for the estate taxes because they are purportedly "executors" (26 U.S.C. §§ 2002 & 2204); that they have "representative" liability for the taxes as Co-Trustees (26 U.S.C. § 6324(a)(2) & Cal. Prob. Code § 19001); and that they have "individual" liability for the taxes (26 U.S.C. § 6324(a)(2).)

***The Defendants are not executors***.  The Government's own allegations refute its assertion that the Co-Trustees are executors.  The Government concedes that Michael Paulson ("Michael") was appointed executor of the Estate of Allen E. Paulson ("Allen") ("Estate") and that the probate court never replaced him.  More importantly, the Government alleges that the United States Tax Court held, ***in April, 2012***, that the Co-Trustees ***were not executors*** and that they therefore lacked jurisdiction to challenge the Government's tax collection efforts.  Moreover, the Government's bare allegation that Michael "resigned" as executor does not somehow transform Defendants (or anyone else) into an executor; no one else was appointed to the job.  Moreover, the Government does not, because it cannot, allege

1 │ that Michael Paulson undertook the essential steps to absolve himself of his

2 │ responsibilities and obligations as Executor, *e.g.* submitting an accounting to the

3 │ Probate Court.

4 │ ***The Defendants are not liable under Section 6324(a)(2).***  Section 6324(a)(2)

5 │ imposes liability for unpaid estate taxes on six enumerated categories of persons

6 │ who, ***on the date of the decedent's death***, either held or received property from the

7 │ Estate.  The Complaint does not allege that either Vikki or Crystal (individually or

8 │ as a trustee) ***held*** property of the Estate on the date Allen died.  Nor does the

9 │ Complaint allege that Vikki or Crystal (individually or as a trustee) ***received*** any

10 │ property from the Estate on the date Allen died.  Accordingly, the Government's

11 │ attempt to impose liability on Defendants under Section 6324(a)(2) -- whether as

12 │ "representatives," or "individually" – fails because the Government has not, and

13 │ cannot plead this essential element of Section 6324(a)(2).

14 │ ***The Government cannot seek unpaid estate taxes under Probate Code***

15 │ ***Section 19001***.  Probate Code Section 19001 provides that, in certain circumstances,

16 │ creditors with "claims" against an estate may collect unpaid money from a trust

17 │ holding the estate's property.  However, the definition and use of the word "claims"

18 │ in Section 19001 – the statute upon which the Government purports to rely -- ***does***

19 │ ***not include demands for unpaid estate taxes***.  Cal. Prob. Code §§ 19000(a)(2);

20 │ 19000(f) & 19001.  The statute defines the words "claims" as including claims for

21 │ taxes "incurred before the deceased settlor's death."  Cal. Prob. Code § 19000(a)(2).

22 │ The statute defines the word "debts" as including estate taxes; however the word

23 │ "debts" does not appear in Section 19001, the statute on which the Government

24 │ purports to rely in its claims against Vikki and Crystal.  Accordingly, the

25 │ Government has no claim under Section 19001 against Vikki or Crystal, either

26 │ individually or as Co-Trustees, for unpaid estate taxes.

27 │ Because none of the Government's purported claims provides any legal basis

28 │ to proceed against Vikki or Crystal, and there is no conceivable amendment that

1  could cure what are matters of law, this Motion should be granted without leave to
2  amend.

3  **II.    STATEMENT OF FACTS**

4      **A.    *Background.*

5      This matter arises out of the estate of the late Allen E. Paulson ("Allen").
6  (Doc. 1 ¶¶ 9-21.)  Allen died on July 19, 2000 with an estate (before significant
7  deductions for debts and liabilities) initially valued at $193,434,344.  (*Id.* ¶¶ 21 &
8  24.)

9      Allen's Will appointed his son Michael Paulson ("Michael") and Edward
10  White ("White") as Co-Executors of his estate.  (*Id.* ¶ 23.)  White resigned as an
11  Executor on October 8, 2001.  (*Id.*)  The Complaint then alleges that "[t]hereafter,
12  Michael Paulson ("Michael") served as the sole successor Executor."  (*Id.*)

13      Allen established the "Allen E. Paulson Living Trust" ("Trust") on December
14  23, 1986. (*Id.* ¶ 9.)  Over the subsequent years, the Trust was amended and restated
15  several times. (*Id.* ¶ 11.)  At the time of Allen's death, the Trust held all of his
16  assets with the exception of his shares in the Gold River Hotel & Casino.  (*Id.* ¶ 24.)

17      The Trust appointed Michael and White as Co-Trustees.  (*Id.* ¶ 25.)  White
18  resigned his Trusteeship on October 8, 2001 and Dr. Nicholas V. Diaco replaced
19  White as a Co-Trustee.  (*Id.*)  Although not alleged in the Complaint, Mr. Diaco
20  resigned in 2003 leaving Michael as the sole Trustee.  (*Id.* ¶ 44.)  On March 24,
21  2009, the Probate Court in San Diego, California removed Michael as "Trustee".
22  (*Id.* ¶ 44.)

23      After Michael's removal in March, 2009, Vikki Paulson ("Vikki") and James
24  D. Paulson ("James") were appointed Co-Trustees.  (*Id.*)  About a year later, on June
25  10, 2010, the Probate court removed James as a Co-Trustee.  (*Id.* ¶ 46.)  Vikki
26  continued to serve as Trustee until February 28, 2011, at which time Crystal
27  Christensen ("Crystal") was appointed as a Co-Trustee.  Since then, and currently,
28  Vikki and Crystal have been and are the Co-Trustees.

1   a "Notice of Final Determination" to the Estate.  (*Id.* ¶ 45.)  According to the
2   Complaint, this followed "one or more missed" installment payments by the Estate
3   and had the effect of terminating the 15-year extension of time to pay the taxes.
4   (*Id.*)

5   However, this greatly understates the Government's failure to take action
6   against Michael and the Estate.  The Government admitted as much when, on March
7   21, 2011, the Government appeared at hearing concerning a dispute between the
8   Trust and PNC National Bank which implicated possible tax liens against the Estate.
9   (Exh. A to Request for Judicial Notice ("RFJN").)  At the hearing, under
10  questioning by Judge Stephen V. Wilson, the IRS admitted that the Section 6166
11  installment payments had not been paid for 2007, 2008, 2009 and 2010.  (Exh. A to
12  RFJD at 7:16-22.)  The IRS also admitted, to the astonishment of Judge Wilson, that
13  the Government had not filed federal tax liens.  (*Id.* at 4:15-24 & 11:24-12:8.)

14  Following a challenge to the Notice of Final Determination in the Tax Court
15  by Vikki and Crystal, the Tax Court entered, on May 4, 2011, a stipulated decision
16  upholding the IRS's decision to terminate the Estate's Section 6166 installment
17  election.  (*Id.* ¶ 49.)

18  More than eleven years after Allen died, the United States Government
19  finally, and for the first time, file unspecified "Notices of Federal Tax Lien[s]"
20  against the Estate in property records for San Diego and Los Angeles (allegedly
21  these were filed in the period of time "between June 28, 2011 and July 7, 2011").
22  (*Id.* ¶ 50.)

23  **D.   *The Tax Court Determined Vikki and Crystal Were Not Executors.***

24  In April, 2012, Vikki and Crystal filed a Petition in the Tax Court seeking a
25  review of the Estate's due process rights.  (*Id.* ¶ 51.)  This Petition arose out of the
26  Co-Trustees efforts to make things right after they assumed control of a Trust that,
27  under the Trusteeship of Michael, had failed for several consecutive years to pay
28  taxes and who had wasted the Trust's assets instead of distributing funds to

1    There are no allegations, nor will there be any evidence, that Vikki or Crystal
2  have been anything but exemplary stewards of the Trust's assets.

3    Vikki is the widow of Allen's son Richard Paulson. (*Id.* ¶ 6.) Crystal is
4  Allen's granddaughter from Allen's deceased son Robert, who was raised by her
5  grandfather. (*Id.* ¶ 7.)

6    **B.    *The Estate Tax Filings.***

7    The Estate filed its Tax Return, signed by Michael, on or about October 23,
8  2001. (*Id.* ¶ 27.) The Tax Return reported a next taxable estate of $9,234,172. (*Id.*
9  ¶ 28.)

10    The Estate elected to defer payment of the taxes over the following fifteen
11  (15) years pursuant to 26 U.S.C. § 6166 ("Section 6166"). (*Id.* ¶ 29.) The Estate
12  paid $706,296 with the Tax Return filing leaving the balance of $3,752,755 to be
13  paid in installments over time. (*Id.*)

14    Less than a month after the Tax Return was filed, on November 15, 2001, the
15  IRS selected the return for examination. (*Id.* ¶ 31.) Three and one-half *years* later,
16  on January 16, 2005, the IRS issued a notice of deficiency in the amount of
17  $37,801,245 in the estate tax reported on the Tax Return. (*Id.* ¶ 38.) Three *days*
18  later, Michael challenged the IRS's notice of deficiency in the United States Tax
19  Court. (*Id.* ¶ 39.)

20    About a year later, on December 2, 2005, the Tax Court approved the
21  stipulation between the IRS and Michael that an additional $6,669,477 in estate
22  taxes were owed by the Estate (the "Stipulation"). (*Id.* ¶ 40.) (The IRS effectively
23  admitted by the Stipulation that it had overstated the taxes owed by $31 million.)
24  As with the original return, the Estate elected to pay the taxes over 15 years pursuant
25  to Section 6166. (*Id.*) To date, the Trust has paid the government $5,065,723 in
26  estate taxes.

27    **C.    *The Government's Inaction.***

28    On May 7, 2010, nearly five years after the Stipulation, the IRS finally issued

1    beneficiaries and heirs. (*Id.* at ¶ 44.) Specifically, the Petition followed the Co-

2    Trustees pursuit of an "offer in compromise" with the Federal Government to

3    resolve the residual tax liability.

4       The Tax Court dismissed the Petition challenging the Government's behavior,

5    for lack of jurisdiction, on the grounds that the Petition had not been signed by the

6    appointed executor for the Estate, Michael Paulson. (*Id.* ¶ 51.) The Government

7    now reverses course and cynically (and incorrectly) claims that Crystal and Vikki

8    *are* executors.

9    **III.**    **THE COMPLAINT FAILS TO STATE ANY CAUSE OF ACTION**

10       **AGAINST DEFENDANTS**

11       **A.**    ***Defendants Are Not Liable For Unpaid Estate Taxes Under 26 U.S.C.***

12          ***§ 2002***

13       The Government improperly seeks to impose liability for the unpaid Estate

14    Taxes upon Vikki and Crystal by purporting to allege that they are executors. (Doc.

15    1 at 8 (relying upon 26 U.S.C. §§ 2002 & 2003.) 26 U.S.C. § 2203 defines

16    "executor" as follows:

17           The term "executor" wherever it is used in this title in
           connection with the estate tax imposed by this chapter means

18           the executor or administrator of the decedent, or, if there is not
           executor or administrator appointed, qualified, and acting

19           within the United States, then any person in actual or
           constructive possession of any property of the decedent.

20

21       The Complaint does not, because it cannot, allege that Vikki and Crystal were

22    ever appointed as "executors" of the Estate. Just the opposite, the Complaint alleges

23    that on December 4, 2012, the United States Tax Court specifically held that Vikki

24    and Crystal lacked standing to challenge the Government because they were not

25    "executors" of Decedent's estate under Section 2203. (Doc. 1 at ¶ 51.) The Tax

26    Court ruled that only the "court appointed executor" (*i.e.*, Michael Paulson) was an

27    "executor" under Section 2203 leaving the Co-Trustees unable to close out the

28    Estate. (*Id.*)

1    The Government's bare allegation that Michael Paulson resigned as the

2  executor on January 15, 2013 (Doc. 1 at 54) is wholly insufficient to transform Vikki

3  in Crystal into executors, especially in the face of the Tax Court's ruling rejecting

4  such status.  In fact, contrary to the Government's attempt to somehow convert

5  Defendants into executors, California Probate Code section 8525(b) provides that

6  Michael remains responsible as an executor until he provides the Court with a final

7  accounting, and there is no allegation that he did so.  Cal. Prob. Code § 8525(b).

8    Because there is no basis to allege that either Vikki or Crystal qualify as an

9  executor of the Estate, the Government's claim in this regard should be dismissed.

10    **B.**    ***The Defendants Are Not Liable For The Unpaid Estate Taxes Under***

11         ***Section 6324(a)(2).***

12    A person can only be liable for unpaid estate taxes under Section 6324(a)(2) if

13  that person had or received property from the estate ***on the date of decedent's death***.

14  26 U.S.C. § 6324(a)(2).  Section 6324(a)(2) provides, in relevant part, as follows:

> **(2) Liability of transferees and others.**
>
> If the estate tax imposed by chapter 11 is not paid when due,
> then the spouse, transferee, trustee (except the trustee of an
> employees' trust which meets the requirements of section 401
> (a)), surviving tenant, person in possession of the property by
> reason of the exercise, nonexercise, or release of a power of
> appointment, or beneficiary, ***who receives, or has on the date***
> ***of the decedent's death***, property included in the gross estate
> under sections 2034 to 2042, inclusive, to the extent of the
> value, at the time of the decedent's death, of such property,
> shall be personally liable for such tax.

23  26 U.S.C. § 6324(a)(2) (emphasis added.)[1]

---

[1] The predecessors to 26 U.S.C. §§ 2035-2038 are sections 811(c) and 811(d) of the
1939 Code.

1         **1.**   ***Background On Section 6324(a)(2).***

2         The application of Section 6324(a)(2) is limited to six enumerated categories

3   of persons who may be potentially liable for unpaid estate taxes.  26 U.S.C. §

4   6324(a)(2).  They are: spouse; transferee; trustee; surviving tenant; person in

5   possession of the property by reason of a power of appointment; and beneficiary.

6   Only two of these six categories are even conceivably applicable to Vikki and/or

7   Crystal:  "transferee" and "trustee".

8         Neither Vikki nor Crystal are alleged to have been Allen's "spouse".  (Doc. 1

9   at ¶¶ 6-7.)

10        There are no allegations in the Complaint suggesting that Vikki or Crystal

11  qualify as "surviving tenants".  *Englert v. C.I.R.*, 32 T.C. 1008, 1012-1013 (1959)

12  (under of section 811(e) of the 1939 Code (which is the predecessor statute to

13  Section 6324(a)(2)) a "surviving tenant" is a person with whom the decedent owned

14  property as joint tenants and which is included in the decedent's estate under 26

15  U.S.C. § 2040.)

16        There are no allegations that either Vikki or Crystal are a "person in

17  possession of the property by reason of the exercise, non-exercise, or release of a

18  power of appointment."  This category of persons, as defined by Section 6324(a)(2),

19  refers only to the person who received property which is included in the decedent's

20  estate under 26 U.S.C. § 2041 (section 811(f) of the 1939 Code.)  (*Id.*)

21        There are no allegations that either Vikki or Crystal were beneficiaries of an

22  applicable life insurance policy.  The term "beneficiary" in Section 6324(a)(2)

23  applies only to a beneficiary of a life insurance policy on the decedent's life that is

24  included in the decedent's estate under 26 U.S.C. § 2042.  *United States v. Johnson*,

25  2013 U.S. Dist. LEXIS 106671, *22, 112 AFTR 2d 2013-5474 (D. Utah, July 29,

26  2013); *Garret v. Commissioner*, T.C. Memo 1994-70; 1994 Tax Ct. Memo LEXIS

27

28

74 at *39; 67 T.C.M. (CCH) 2214 ("the personal liability imposed upon beneficiaries referred only to specific beneficiaries of life insurance.").[2]  Thus, the fact that Crystal is alleged to have been a beneficiary and distributee from the Trust in 2004 does not qualify her as a "beneficiary" as that term is used in Section 6324(a)(2).

However, even though Vikki and Crystal allegedly qualify as "trustees" and "transferees," Section 6324(a) cannot apply here because the Complaint only alleges that property from the estate was transferred to Vikki and Crystal (both individually and as trustees) *after the date of Allen's death*.

> **2.  *Vikki And Crystal Are Not Liable For The Estate Taxes As "Transferees" Or "Trustees" Either Individually Or As Representatives.***

Because Vikki and Crystal did not have any property of the estate on the date of Allen's death, nor "receive" any such property on the date of death, they can have no personal or representative liability for the estate taxes under Section 6324(a)(2). *United States v. Johnson*, 112 AFTR 2d 2013-5474 (D. Utah, July 29, 2013) (citing *Englert v. C.I.R.*, 32 T.C. 1008, 1016 (1959) & *Garrett v. Commissioner*, 67 T.C.M. (CCH) 2214, T.C. Memo 1994-70 (1994).)

---

[2] *Englert*, 32 T.C. at 1014 ("[i]t is obvious the use of the word 'beneficiary' in this section applies only to insurance policy beneficiaries.")  The *Garret* and *Johnson* courts reviewed the legislative history of Section 6324(a)(2) and its predecessors and found that Congress was only referring to insurance beneficiaries when it used the term "beneficiary" in the statute. *Johnson* *22-23.  Plaintiff's reliance on *Baptiste v. Commissioner*, 29 F. 3d 1533 (11th Cir 1994), as its authority for imposing liability on Defendants under 26 U.S.C. § 6324(a)(2) is misplaced.  The petitioner in that case was the beneficiary of an insurance policy on the decedent's life that was included in the decedent's estate under 26 U.S.C. § 2042.  Unlike a trust beneficiary, a life insurance beneficiary is liable for estate tax under 26 U.S.C. § 6324(a)(2).

1       The application of Section 6324(a)(2), as a tool for collecting estate taxes is

2   limited to persons who held, or received, property from the estate on the date of

3   death.  Highlighted below is the key phrase in Section 6324(a)(2) which contains the

4   language limiting the application of the statute to those who held, or received,

5   property on the date of death (the "date of death limitation"):

6           If the estate tax imposed by chapter 11 is not paid when
    due, then the spouse, transferee, trustee (except the

7           trustee of an employees' trust which meets the
    requirements of section 401 (a)), surviving tenant, person

8           in possession of the property by reason of the exercise,
    non-exercise, or release of a power of appointment, or

9           beneficiary, ***who receives, or has on the date of the
    decedent's death***, property included in the gross estate

10          under sections 2034 to 2042, inclusive, to the extent of
    the value, at the time of the decedent's death, of such

11          property, shall be personally liable for such tax.

12  26 U.S.C. § 6324(a)(2) (emphasis added).

13      As discussed below, the *Johnson* and *Englert* courts rendered two rulings

14  regarding the application of the date of death limitation within Section 6324(a)(2)

15  which are relevant here.  First the courts ruled that the date of death limitation

16  means that Section 6324(a)(2) cannot be invoked unless a person holds or receives

17  property from the estate, on the date of decedent's death. And second, the courts

18  necessarily concluded that the date of death limitation modifies and limits the

19  application of Section 6324(a)(2) to persons within ***each*** of the six enumerated

20  categories.

21      In *Johnson* the Government filed suit to collect unpaid estate taxes from

22  individuals who had received, after the date of the decedent's death, distributions

23  from the decedent's trust (these individuals are referred to in *Johnson* as the

24  "Distributees").  The Government claimed that the Distributees were liable for estate

25  taxes under Section 6324(a)(2) based on the theory that these Distributees were

26  "transferees" and/or "beneficiaries".  *Johnson* at *14.  The Distributees successfully

27  moved to dismiss under Rule 12(b)(6) on the grounds that Section 6324(a)(2) did

28  not apply to them because the property they received was not transferred to them

1  immediately upon the date of Decedent's death. *Id.* at *6-8.

2              (a)   ***Section 6324(a)(2) Only Applies To Persons That Have,***
3                     ***Or Receive, Property On The Date Of Death.***

4      The courts in *Johnson* and *Englert* both concluded, after careful examination

5  of Section 6324(a)(2) and it legislative history, that the clause, "on the date of

6  decedent's death" ***modifies both*** the word "receives" and the word "has". *Johnson*

7  at *14; *Englert* at 1016.  Thus, Section 6324(a)(2) only applies to persons who

8  receive or have property of the estate on the date of decedent's death.  *Id.*

9      *Johnson* began its analysis of the date of death limitation by discussing the

10 Tax Court's ruling in *Englert*. *Johnson* at *12.  *Englert* involved the Government's

11 attempt to collect estate taxes from a person who received property from an estate

12 ***after the date*** of decedent's death.  *Englert* at 1012-13.  The analysis in *Englert*

13 turned on the meaning of an identical date of death limitation in the predecessor

14 statute to Section 6324(a)(2).[3]

15     *Englert* noted that the word "receives" could potentially be read separately

16 from the clause "or has on the date of decedent's death." *Id.*  And, that the statute

17 could possibly be interpreted to mean that a person who "receives" property from

18 the estate, even after the date of decedent's death, could be liable for estate taxes.

19 *Englert* at 1015-16.  *Englert* flatly rejected such a reading of the statute: "We

20 believe, however, that Congress used the word 'receives' to take care of property

21 received by persons solely because of decedent's death, such as insurance proceeds

22 or property which was not in the possession of one of the persons described in [the

23 former Section 6224(a)(2)] at the moment of the decedent's death, but who

24 immediately received such property solely because of decedent's death." *Englert* at

25 _____

26 [3] *Englert* addressed Section 827(b) which is the predecessor to Section 6324(a)(2)
   and courts have repeatedly construed them as having the same substantive content.
27 *Garret v. Commissioner*, TC Memo 1994-70, 67 TCM (CCH) 2214 (1994.)

28

1   1016.  The *Englert* court concluded that a "transferee" "can only mean the person

2   who 'on the date of decedent's death' receives or holds property of a transfer made

3   in contemplation of, or taking effect at, death." *Englert*, 32 T.C. at 1016.

4   The *Johnson* court agreed with the reasoning in *Englert*.  Both *Englert* and

5   *Johnson* acknowledged that the syntax of Section 6324(a)(2) created some

6   ambiguity as to whether the word "receives" is modified by the date of death

7   limitation.  *Johnson* at *12; *Englert* at 1016.  However, both courts also recognized

8   that ***any ambiguity in a tax statute must be resolved in favor of the taxpayer***.

9   *Englert* at 1016; *Johnson* at *12 (quoting *Miller v. Standard Nut Margarine Co.*,

10  284 U.S. 498, 508 (1932) ("It is elementary that tax laws are to be interpreted

11  liberally in favor of taxpayers and that words defining things to be taxed may not be

12  extended beyond their clear import.  ***Doubts must be resolved against the***

13  ***Government and in favor of the taxpayer***." (emphasis added).)

14  The *Johnson* court found additional support for its construction of Section

15  6324(a)(2) based language in the second half of Section 6324(a)(2) which concerns

16  the effects of property transfers on liens.  *Johnson* at *18-19.  In part two of the

17  statute Congress expressly applied the law to persons who *receive* property after the

18  date of death by using the language "transferees of transferees." *Johnson* at *18-19.

19  Part two of Section 6324(a)(2) provides:

20          Any part of such property transferred by *(or transferred by a
21          transferee of)* such spouse, transferee, trustee, surviving tenant,
            person in possession, or beneficiary, to a purchaser or holder of
22          a security interest shall be divested of the lien provided in
23          paragraph (1) and a like lien shall then attach to all the property
            of such spouse, transferee, trustee, surviving tenant, person in
24          possession, or beneficiary, or transferee of any such person,
25          except any part transferred to a purchaser or a holder of a
            security interest.

26  26 U.S.C. § 6324(a)(2) (emphasis added.)

27  The *Johnson* court rightly concluded that if Congress intended, in the first

28  part of Section 6324(a)(2), to impose personal liability for estate taxes upon persons

1  who "received" property after the date of death (*i.e.* persons who were "transferees

2  of transferees") it would have used the same language found in the second half of

3  the statue. *Johnson* at *18-19.  Accordingly, the *Johnson* court concluded that "in

4  order for a person to be a transferee under section 6324(a)(2), the person must have

5  or received property from the gross estate immediately upon the date of decedent's

6  death rather than at some point thereafter." *Johnson* at *14.

7       The same conclusion should be reached here regarding the claims against

8  Defendants, which should be dismissed.

9            (b)    ***Johnson And Englert Necessarily Concluded That The***

10                  ***Date Of Death Limitation Modifies Each Of The Six***

11                  ***Enumerated Categories***.

12      *Johnson* and *Englert*  also necessarily hold that the date of death limitation

13  refers back to, and modifies, ***each*** of the six enumerated categories of persons who

14  can potentially be liable for the estate taxes.  Given the placement of the date of

15  death limitation, at the end of the six enumerated categories, one possible (although

16  unlikely) construction of the statute is that the limitation only applies to the last of

17  the six (*i.e.* the category which immediately precedes the limitation in the statute.)

18  However, *Johnson* concerned the application of the date of death limitation to the

19  second of the categories, "transferees."  Thus, the only possible reading of *Johnson*

20  is that the date of death limitation modifies and limits each of the six categories,

21  including the terms "transferees" and "trustees".

22           (c)    ***Vikki And Crystal Have No Liability Under Section***

23                  ***6324(a)(2)***.

24      Application of the reasoning in *Johnson*, *Englert*, and the other authorities

25  discussed above leads to the conclusion that the claims against Vikki and Crystal

26  must be dismissed.

27      ***First***, the fact that Crystal is referred to, in common parlance, as a

28  "beneficiary" because she allegedly received a distribution from the Trust in 2004,

1  is irrelevant to the application of Section 6324(a)(2) which only applies to insurance

2  beneficiaries.  And even if Crystal does qualify as a beneficiary under Section

3  6324(a)(2) she did not receive any distribution until years after Allen died, and not

4  on the date of death as required by the statute.

5    *Second*, the Complaint alleges that any transfers of property from the estate to

6  Vikki or Crystal, whether individually, or in their capacity as representatives of the

7  Trust, happened long after the date of Allen's death.  Thus, the Government has not,

8  and cannot plead an essential element of Section 6324(a)(2).

9    *Third*, the fact that Vikki and Crystal are alleged to be Co-Trustees does not

10  alter this analysis.  The Government may try and argue that there was a single

11  transfer of the estate property to the Trust, and that Vikki and Crystal are simply

12  replacements of Michael and the other, prior, Trustees.  However, unlike a

13  corporation, the Trust is not a legal entity which owns or holds property.  *Ziegler v.*

14  *Nickel*, 64 Cal. App. 4th 545, 548 (1998).  The title to the property of a trust is held

15  by the individual trustee.  *Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 1343-44

16  (2003).  Thus, by definition and operation of law, Vikki and Crystal "received"

17  property from the estate, in their capacity as Co-Trustees, after the date of Allen's

18  death.

19    *Fourth*, the Government may also try and argue, as it did in *Johnson*, that

20  unless personal liability is extended to trust beneficiaries or successor trustees that

21  "endless abuse and estate tax evasion would ensue." *Johnson* at *24.  The *Johnson*

22  court rejected these concerns as "overstated" because, under the law governing

23  trusts, a decedent's property is either held by, or received by the original trustee on

24  the date of death (thereby triggering individual liability for the original trustee under

25  Section 6324(a)(2).)  *Id*.  The *Johnson* court concluded that the imposition of

26  individual liability on the original trustee would curb any incentive to engage in

27  abuses. *Id*.

28    *Johnson* also observed that the Government possesses a variety of tools to

1   collect taxes – separate and apart from Section 6324(a)(2) -- including recording and
2   levying on liens. *Johnson* at *7. In the present case, if the Government had exerted
3   even a modicum of effort when Michael stopped paying the estate taxes in 2007, the
4   Government could have sued Michael under Section 6324(a)(2) (both individually
5   and as the original trustee) and, the Government could have recorded and levied on
6   liens. Instead, the Government did none of that; it did not record any lien until
7   2011. Accordingly, the reading of Section 6324(a)(2) advanced by Defendants in
8   this Motion, rather than fostering "abuse" of the tax system, would encourage the
9   Government to act promptly and responsibly in collecting taxes.

10       *Fifth*, as discussed above, the requirement that a person has or receives
11   property on the date of decedent's death applies to each of the six enumerated
12   categories, including "transferees" and "trustees." The fact that Vikki and Crystal
13   are Co-Trustees has no special significance under Section 6324(a)(2) unless they
14   had, or received, property on the date of death, which they did not.

15       **C.   *Vikki And Crystal Are Not Liable Under Probate Code Section 19001*.**

16       The Government purports to allege that Vikki and Crystal possess liability
17   under California Probate Code Section 19001. Section 19001 provides that any of
18   Allen's property, held in a revocable trust, became subject to "claims" of creditors
19   upon Allen's death.

20       Section 19001(a) provides:

21           (a) Upon the death of a settlor, the property of the
             deceased settlor that was subject to the power of
22           revocation at the time of the settlor's death is subject to
             the *claims* of creditors of the deceased settlor's estate and
23           to the expenses of administration of the estate to the
             extent that the deceased settlor's estate is inadequate to
24           satisfy those claims and expenses.

25   Cal. Probate Code § 19001(a) (emphasis added).

26       Critically, however, the word "claims" is defined in Section 19000 to include
27   "Liability for taxes incurred *before the deceased settler's death* . . .." Cal. Prob.
28   Code § 19000(a)(2) (emphasis added). The statute does not define "claims" as

1  including estate taxes.  (*Id.*)  Nor is the absence of "estate taxes" from the definition
2  of claims in 19000 inadvertent or an oversight.  Section 19000(f) defines the word
3  "debts" as including taxes against the trust estate.  Cal. Prob. Code § 19000(f).
4  However, the word "debts" does not appear in Section 19001, the statute upon
5  which the Government purports to rely in this matter.

6      By its clear terms, Section 19001 does not apply to estate taxes and provides
7  no legal basis for the Government to pursue any claim against Vikki or Crystal.

8  **D.**    ***The Government Does Not Possess A "Third Party" Contractual***
9         ***Claim Against Vikki or Crystal.***

10      In what can best be described as pleading by grasping at straws, the
11  Government throws in an allegation that Vikki and Crystal are somehow liable for
12  the estate taxes because they breached an unspecified "third party contract."  (Doc. 1
13  at 67.)  Of course "third party contracts" are a very narrow and limited species of
14  contract in California requiring a very specific agreement by one party to pay the
15  debts of another.  *R.J. Cardinal Company v. Jess M. Ritchie & Pioneers, Inc.*, 218
16  Cal. App. 2d 124, 135-36 (1963).  The Government does not, because it cannot
17  allege a single fact averring that Vikki or Crystal are parties to any such agreement.
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1    Accordingly, any claim asserted by the Government against Vikki and Crystal
2    which purports to arise out of an unspecified "third party contract" should be
3    dismissed.

4    **IV.    <u>CONCLUSION</u>**

5    For the reasons discussed above, all claims against Vikki and Crystal should
6    be dismissed.

7

8    Dated: December 7, 2015              Respectfully submitted:

9

10                                        **ZUBER LAWLER & DEL DUCA LLP**
                                          JEREMY J. GRAY

11

12

13                                        By: /s/ *Jeremy J. Gray*
                                          _____
14                                        Attorneys for Defendants Vikki  E. Paulson
                                          and Crystal L. Christensen

15

16

17

18

19

20

21

22

23

24

25

26

27

28