ANDREW L. SOBOTKA
Texas State Bar No. 18819900
MOHA P. YEPURI
Texas State Bar No. 24046651
Attorneys, Tax Division
U.S. Department of Justice
717 N. Harwood St., Suite 400
Dallas, Texas 75201
(214) 880-9736/9767
(214) 880-9741 (Facsimile)
Attorneys for United States
Andrew.L.Sobotka@usdoj.gov
Moha.P.Yepuri@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN MICHAEL PAULSON, as the | § | |
| Executor or Statutory Executor of | § | |
| the Estate of Allen E. Paulson, | § | |
| and Individually; | § | |
| | § | Case No. 15cv2057-AJB/NLS |
| JAMES D. PAULSON, as | § | |
| Statutory Executor of the Estate | § | Hearing: January 21, 2016 |
| of Allen E. Paulson; | § | |
| | § | |
| VIKKI E. PAULSON, as | § | |
| Statutory Executor of the Estate of Allen | § | |
| E. Paulson, as Trustee of the | § | |
| Allen E. Paulson Living Trust, and | § | |
| Individually; | § | |
| | § | |

i

| | |
|---|---|
| CRYSTAL CHRISTENSEN, as | § |
| Statutory Executor of the Estate of Allen | § |
| E. Paulson, as Trustee of the Allen | § |
| E. Paulson Living Trust, and Individually; | § |
| | § |
| MADELEINE PICKENS, as Statutory | § |
| Executor of the Estate of Allen | § |
| E. Paulson, as Trustee of the Marital Trust | § |
| created under the Allen E. Paulson Living | § |
| Trust, as Trustee of the Madeleine Anne | § |
| Paulson Separate Property Trust, and | § |
| Individually; | § |
| | § |
| Defendants. | § |

_____

## UNITED STATES' RESPONSE TO
## MADELEINE PICKENS' RULE 12(b)(6) MOTION TO DISMISS

/s/ Andrew L. Sobotka
ANDREW L. SOBOTKA
Texas State Bar No. 18819900
MOHA P. YEPURI
Texas State Bar No. 24046651
Attorneys, Tax Division
U.S. Department of Justice
717 N. Harwood St., Suite 400
Dallas, Texas 75201
(214) 880-9767
(214) 880-9741 (Facsimile)
Attorneys for United States
Andrew.L.Sobotka@usdoj.gov
Moha.P.Yepuri@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

ii

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Procedure Background...................................................................... 1

II.   Standard for Dismissal Under Rule 12(b) ...................................... 3

III.  Response to Issues Raised by Pickens........................................... 6

      A.   The claim against Pickens in her representative capacity
           as statutory executor of the Estate....................................... 6

      B.   The Complaint does not attempt to state a claim against Pickens
           under 31 U.S.C. § 3713 at this time ................................... 9

      C.   Claims against Pickens as Trustee of the Martial Trust and the
           Separate Property Trust under Section 6324 (a)(2) ........................... 9

      D.   Claims against Pickens as beneficiary of the Living Trust under
           Section 6324 (a)(2)............................................................... 15

      E.   Claims against Pickens for indemnification (or third party contract)
           under the 2003 Settlement.................................................... 19

      F.   Claims against Pickens for prejudgment and post-judgment interest as
           a transferee under 26 U.S.C. § 6901, 6601 and 6621) ..................... 22

      G.   The Complaint asserts no claim for the November 26, 2001
           assessment ......................................................................... 23

IV.   Conclusion ................................................................................... 25

# **TABLE OF CITATIONS**

## **Cases**

*Auster Oil & Gas, Inc. v. Stream*, 764 F. 2d 381, 386 (5th Cir. 1985) .................... 3

*Baptiste v. Commissioner,*
    29 F.3d 1533, 1542 (11th Cir. 1994) ................................................................. 22

*Baptiste v. Commissioner,*
    29 F.3d 433, 437 (8th Cir. 1994) ......................................................................... 22

*Baptiste v. Commissioner,*
    100 T.C. 252 (Tax Court 1993) ....................................................................... 23

*Estate of Mangiardi v. Comm'r,* TC Memo. 2011-24, 2011 WL 280925, aff'd,
    442 Fed. Appx. 526, 2011 WL 4835854 (11th Cir. 2011) ................................ 16

*Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) ............. 3

*Hall v. City of Santa Barbara, 833 F. 2d* 1270, 1274 (9th Cir. 1986) ..................... 3

*Jackson v. Birmingham Bd. Of Education*,
    544 U.S. 167 (2005) ......................................................................................... 3

*Lee v. City of Los Angeles*,
    205 F.3d 668, 688-89 (9th Cir. 2001) ................................................................ 4

*Leigh v. Commissioner,*72 T.C. 1105,
    1979 WL 3762 (1979) ....................................................................................... 7

*Maez v. Mountain States Tel. & Tel., Inc.*,
    54 F. 3d 1488, 1496 (10th Cir. 1995) ................................................................ 3

*Martinez v. Socoma Companies, Inc.* 11 Cal.3d 394, 400–401, 113 Cal. Rptr. 585,
521 P.2d 841 (1974)…..……………………………………………………….20

iv

*Outdoor Servs., Inc. v. Pabagold, Inc*., 185 Cal. App.3d 676, 681, 230 Cal. Rptr. 73 (Cal. Ct. App.1986). …………………………………………………………………..……………..20

*Poinier v. Commissioner,*
    858 F.2d 917, 920 (3rd Cir. 1988) ................................................................... 22

*Steckman v. Hart Brewing, Inc.,*
    143 F.3d 1293, 1295 (9th Cir. 1998) ................................................................. 4

*Supermail Cargo, Inc. v. United States*,
    68 F.3d 1204, 1206-07 (9th Cir. 1995) .............................................................. 4

*United States v. Askegard,*
    291 F. Supp. 2d 971, 979-980 (D. Minn. 2003) .............................................. 24

*United States v. Askegard,*
    357 F.Supp. 2d 1152 (D. Minn. 2005).............................................................. 24

*United States v. Bevan,* 2008 WL 5179099 at *6-8 (E.D. Cal. 2008),
    adopted 2009 WL 151136 (E.D. Cal. 2009) .................................................... 17

*United States v. Botefuhr,* 309 F.3d at 1270, n.5,
    (10th Cir. 2002)................................................................................................. 22

*United States v. Johnson*, 112 AFTR 2d 2013-5474 (D. Utah, July 29, 2013)
    Amending 109 AFTR 2d 2012-2253 (D. Utah, May 23, 2012) ....................... 16

*United States v. Ritchie*,
    342 F.3d 903, 907-08 (9th Cir. 2003) ................................................................ 4

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954, 969 (9th Cir. 2010) ..................................................................... 3

v

**<u>Statutes</u>**

<u>26 U.S.C.</u>

§ 2002............................................................................................................ 1,6, 7

§ 2010......................................................................................................... 5, 6, 21

§ 2034..................................................................................................... 13,16, 18

§ 2038...................................................................................................... 13, 14

§ 2042................................................................................................... 13, 16, 18

§ 2203....................................................................................................... 1,6,7,8

§ 2204............................................................................................................ 18

§ 6166......................................................................................................... 8, 24

§ 6324 (a)(2).......................................... 9,13,14,15,16,171,18,19,22,23

§ 6502......................................................................................................... 7,24

§ 6503(d) ..................................................................................................... 24

§ 6601...................................................................................................... 22,23

§ 6621.................................................................................................... 22, 23

§ 7479........................................................................................................... 8

<u>28 U.S.C.</u>

§ 1961(c) ............................................................................................... 22, 23

31 U.S.C.

§ 3713 ........................................................................................ 7, 9, 17, 18

§ 3713(b) (formerly 31 U.S.C. § 192) ........................................................ 7, 18

**Other**

Federal Rules

Rule 8(a) ......................................................................................................... 4
Rule 12 (b)(6) .................................................................................. 1,3,4,6,8,13, 21,25
Rule 12 (d) ....................................................................................................... 4
Rule 26 (f) ........................................................................................................ 2
Rule 56 ........................................................................................................... 2,4
Rule 56 (d) ....................................................................................................... 4

Treas. Reg. (26 C.F.R.)

§ 20.2002-1 .................................................................................................... 7
§ 20.2203-1 .................................................................................................... 7


5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure
    § 1357, at 598 (1969) ................................................................................. 3

S. Rep. No. 1444, 91ST Cong., 2ND Sess. 1970,
    1970 U.S.C.C.A.N. 5689, 5695-5698, 1970 WL 5901 (Leg.Hist.) ................. 18

Restatement 2nd of Contracts § 302…..…………………………………………..20

Internal Revenue Manual § 4.2.25.2.1.12 (15) …………..…..…………………..24

Internal Revenue Manual § 4.25.2.2.1.15.(15) …………..…..…………………..24

UNITED STATES' RESPONSE TO
<u>MADELEINE PICKENS' RULE 12(b)(6) MOTION TO DISMISS</u>

The United States responds to Madeleine Pickens' Rule 12(b)(6) Motion to

Dismiss (Dkt. 15) as follows:

**I.    <u>Procedural Background</u>**

This case was initiated by the United States as a suit to collect more than

$10 million in unpaid estate taxes owed by the Estate of Allen E. Paulson (the

Estate).  The Complaint asserts claims against: (a) John Michael Paulson, in his

capacity as an executor of the Estate, and individually; (b) James D. Paulson, in his

capacity as an executor of the Estate; (c) Vikki Paulson and Crystal Christensen, in

their capacities as executors of the Estate, their capacities as Trustees of the Allen

E. Paulson Living Trust ("Living Trust"), and individually; and (d) Madeleine

Pickens (Mr. Paulson's spouse) in her capacity as executor of the Estate, her

capacity as Trustee of a Marital Trust created under the Allen E. Paulson Living

Trust, her capacity as Trustee of the Madeleine Anne Paulson Separate Property

Trust, and individually.  In order to establish jurisdiction over the Estate as the

taxpayer that owes the estate tax, the United States was required to name its

executor in his or her representative capacity. 26 U.S.C. § 2002.  In doing so, the

United States named several of these defendants in their representative capacities

as "statutory executors" of the Estate as defined in 26 U.S.C. § 2203 because the

1

court appointed executor had resigned in 2013; no new executor had been

appointed; and these Defendants had possession of property that belonged to the

decedent, Allen E. Paulson.

The United States has recently completed service of process on the various

Defendants, and the time for many of the Defendants to answer has not yet

expired.  There has been no Rule 26(f) conference, no discovery and no scheduling

order entered.  However, Pickens has filed a Motion to Dismiss all the United

States' claims against her under Rule 12(b)(6).  As explained in Section II below,

her Motion a fails to meet the standards for a Rule 12(b)(6) dismissal because she

relies on materials outside of the Complaint by attaching several documents to her

Motion and by relying on numerous factual assumptions that are neither alleged in

the Complaint or supported by any evidence.  In such, case, her Motion no longer

qualifies as a Rule 12(b)(6) Motion, but instead, would have to be denied or

converted to a Rule 56 Motion for Summary Judgment.  Further, if the Motion is

converted to a motion for summary judgment, the United States requests and is

entitled to discovery before being forced to respond to a motion for summary

judgment.   Finally, as also explained in Section III below, her arguments are

incorrect as a matter of fact or law.

2

## II.   Standard for Dismissal Under Rule 12(b)

A motion to dismiss under Rule 12(b)(6) is disfavored and rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).   The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). The Rule 8 standard contains "a powerful presumption against rejecting pleadings for failure to state a claim." *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985); *see also Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir.1986) ("It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.' ") (*quoting* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 598 (1969)).

When a claim is challenged under Fed. R. Civ. P. 12(b)(6), the court must presume that all well pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Jackson v. Birmingham Bd. of Education*, 544 U.S. 167 (2005). There is a strong presumption against dismissing pleadings pursuant to this rule. *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1496 (10th Cir. 1995).  A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove **no set of facts** in support of its claim which would entitle it to relief. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954,

3

969 (9th Cir. 2010); *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir. 1998); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995). As will be shown below, Pickens' Motion fails to meet this standard.

Moreover, when a Rule 12(b)(6) motion to dismiss relies on matters outside of the pleadings, the court may refuse to consider those matters or convert the motion to a motion for summary judgment under Rule 56.  And, if the motion is converted, the court must allow the non-moving parties a reasonable opportunity to present other material that is pertinent to the motion.  Fed. R. Civ. P. 12(d); *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  The court may also deny or suspend the motion while allowing the non-moving party to complete discovery. Fed. R. Civ. P. 56(d).

Here, Pickens Motion attaches and relies extensively on her self-serving interpretation of documents attached to the Motion, and some of those documents do not reflect all of the amendments made by Allen E. Paulson before his death. For example, she attaches her version of the Living Trust as amended and restated on January 28, 2000, and a June 6, 2000 amendment, but neglects to attach other amendments dated March 21, 2000 and June 14, 2000 that are critical to the question of her status as a trustee of the Marital Trust.  (Motion at 10-11).

4

1    Additionally, Pickens contends that despite the settling all of her various

2    claims against the Estate and Living Trust as a spouse, a co-owner, a creditor, a

3    trustee, and a beneficiary, and receiving assets pursuant to that 2003 Settlement

4    Agreement, she instead received assets only as a beneficiary of the Living Trust.

5    (Motion at 11-18).  However, she offers only the unsubstantiated arguments of her

6    attorneys and a few incomplete documents to support this narrative.  The United

7    States is entitled to take discovery from her and the other parties to that 2003

8    Settlement Agreement to determine how the funds she received were allocated

9    between the claims Pickens asserted against the Estate and the Living Trust, and

10   whether her contentions are consistent with the other parties' understanding of the

11   settlement.

12    Finally, by way of further example, Pickens contends her agreement in

13   Paragraph 20 of the 2003 Settlement Agreement to be liable for certain estate taxes

14   attributable to assets distributed to her must be interpreted in accordance with her

15   own self-serving view to eliminate any claims that she agreed to indemnify the

16   Living Trust, or must pay the United States as a third-party beneficiary of that

17   contract.  In doing so, she argues that the undefined words "any estate or gift tax

18   (determined at the highest marginal tax rate and without the benefit of any credit or

19   exclusion amounts)" can mean only the unified credit and the amount attributable

20   to that credit as set forth in 26 U.S.C. § 2010.  (Motion at 16).  However, because

5

the parties to the 2003 Settlement did not define those terms by reference to

Section 2010, the United States is most certainly entitled to take discovery from

her and from the other parties to that agreement to determine if their

understandings of the terms of the settlement are the same.

### III.   <u>Response to Issues Raised by Pickens</u>

Even if the court were to consider each of the United States' claims against

Pickens under Rule 12(b)(6), her Motion must be denied.

#### A.  **The claim against Pickens in her representative capacity as statutory executor of the Estate**

Pickens argues that the Complaint fails to state a claim against her in her

representative capacity as an executor of the Estate.  (Motion at 7-9).   Pickens is

wrong.  Pickens in her "representative capacity" is a statutory executor of the

Estate of Allen E. Pauslon under 26 U.S.C. § 2203 because the court appointed

executor, John Michael Paulson, resigned effective January 15, 2013; no new

executor has been appointed; and Pickens possesses property that belonged to

Allen E. Paulson.

By statute, the taxpayer liable for the estate tax is the executor the estate.

26 U.S.C. § 2002.  Although Section 2002 does not explicitly state whether it

imposes personal liability or merely representative liability for the estate, the

applicable treasury regulation and judicial decisions confirm that it merely imposes a representative capacity liability on an executor for an estate. *See* Treas. Reg. (26 C.F.R.) § 20.2002–1; *Leigh v. Commissioner*, 72 T.C. 1105, 1979 WL 3762 (1979) (stating that Treas. Reg. § 20.2002–1 clarifies that 26 U.S.C. § 2002 only imposes liability in a representative capacity, and that personal liability of an executor only arises if 31 U.S.C. § 3713(b) (formerly 31 U.S.C. § 192) also applies).  Thus, a suit against an executor in his or her representative capacity as an executor or as a statutory executor is a suit against the taxpayer/Estate, but is not a claim intended to reach the personal assets of the executor.  Here, in order to suspend the running of the statute of limitations for collection of the estate tax under 26 U.S.C. § 6502 and to obtain a judgment against the taxpayer/Estate, the United States had to name the executor or executors in their representative capacities.

By law, the executor is the person appointed by a probate court or in the absence of such court appointed executor, those persons having possession of the property of the decedent.  26 U.S.C. § 2203; Treas. Reg. § 20.2203-1.  Here, the Complaint clearly alleges that the court appointed executor, John Michael Paulson, resigned effective January 15, 2013 (Complaint at ¶ 54)[1], and that Pickens is one of

---

[1] *See also*, Resignation, Appendix J (Dkt. 15-12, p. 30 of 30) attached to Pickens' Motion.

the persons who currently possesses property that belonged to Allen E. Paulson (Complaint at ¶¶ 87-92).  This alone is sufficient for denial of the Rule 12(b)(6) Motion on this claim.

Although Pickens is correct in that Defendant John Michael Paulson was appointed by the probate court as the Executor of the Estate for a period of time, her Motion conveniently overlooks the fact that he resigned from that position effective January 15, 2013 - before this suit was filed.  Further, Pickens' reliance on the December 4, 2011 Order of the Tax Court (Pickens' Motion at Appendix L, Dkt. 15-14) dismissing a petition[2] filed by Vikki Paulson and Crystal Christenson as "statutory executors" is similarly misplaced because at that time John Michael Paulson was still acting as the court appointed executor and only he had standing to file such a petition on behalf of the Estate.  Accordingly, in the absence of Pickens providing this Court with information that a new executor has been appointed by the probate court, the provisions of 26 U.S.C. § 2203 apply, and the Complaint states a claim against her in her representative capacity as a statutory executor of the Estate.

---

[2] This second Tax Court petition was filed under 26 U.S.C. § 7479 challenging the IRS's proposed termination of the Estate's Section 6166 installment payment election.

**B.  The Complaint does not attempt to state a claim against Pickens
    under 31 U.S.C. § 3713 at this time.**

Pickens argues that the Complaint does not state a claim against her under
31 U.S.C. § 3713.  (Motion at 9-10).   The United States agrees that at this time its
Complaint does not state a claim against Pickens under 31 U.S.C. § 3713, and that
the inclusion of 31 U.S.C. § 3713 in Paragraph 8 of the Complaint was an
unintended oversight.  Thus, there is no Section 3713 claim to dismiss.  However,
if the Court were to enter an order dismissing such a claim, it must be without
prejudice so that if additional facts are discovered or Pickens subsequently takes
actions[3] that support a claim against her under 31 U.S.C. § 3713, it may be asserted
in and amended complaint or separate action.

**C. Claims against Pickens as Trustee of the Marital Trust and the
    Separate Property Trust under Section 6324(a)(2)**

Pickens argues that the Complaint fails to state a claim against her as a
trustee of the Marital Trust for her benefit that was established by Allen E. Paulson
in his Living Trust.  She argues that she never accepted Allen E. Paulson's

---

[3] With service of the United States' Complaint on Pickens, she is notice of the
government's claims against her Marital Trust and her Separate Property Trust
such that prospective distributions or unauthorized administrative expenditures
from those Trusts might later give rise to an action against her under Section 3713.

9

1    nomination of her as a Co-trustee of the Marital Trust, and that in any event the

2    Marital Trust was by-passed when the probate court modified the Living Trust to

3    allow for a direct distribution to Pickens.  (Motion at 10-11).  However, Pickens is

4    wrong because the Complaint alleges that the Living Trust expressly "names"

5    Pickens as a Co-Trustee of the Marital Trust. (Complaint, ¶ 16).  Moreover, the

6    version of the Living Trust attached to Pickens' Motion agrees. (Motion at

7    Appendix A, Living Trust, Article XIV, Paragraph C naming John Michael

8    Paulson, Madeleine Pickens and Edward White as Ultimate Successor Co-trustees

9    after the death of the original trustee, Allen E. Paulson).  Ironically, Pickens has

10   attached an outdated version of the Living Trust, and only the June 6, 2000

11   Amendment to that Living Trust.  This amendment was one of three known

12   amendments to the restated Trust as of January 28, 2000.  The other two

13   amendments were dated March 21, 2000[4] and June 14, 2000.  The March 21, 2000

14   amendment added Paragraphs C.1 and C.2 to the Article XIV the Living Trust.

---

[4] See attached Declaration of Sobotka at Gov. Ex. A; March 21, 2000, June 6, 2000 and June 14, 2000 Amendments to the Living Trust as Gov. Exs. A-1, A-2 and A-3; and "Compilation of the Terms of Amended and Restated Declaration of Trust as Gov. Ex. A-4.

Paragraph C.1 removed Pickens as Co-Trustee of the Living Trust,[5] while

Paragraph C.2 expressly made her a Co-Trustee of the Marital Trust.  The

subsequent amendments on June 6, 2000 and June 14, 2000 did not change either

of these provisions.

Furthermore, the Living Trust does not require Pickens to first accept the

nomination of her as a Co-trustee of the Marital Trust, instead, it provides that she

automatically becomes a Co-Trustee subject to her taking affirmative action to

resign.

> Any Trustee hereunder, shall have the right to resign at any time.
> Said resignation shall become effective when delivered in writing to
> the Trustor, or, if Trustor is not then living, when delivered to all of
> the other then serving Co-trustees.

(Motion Appendix A, Living Trust, Article XIV, Paragraph A; Gov. Ex. A-4,

Compilation of the Terms of Amended and Restated Declaration of Trust, Article

XIV, Paragraph A).  Pickens makes no claim and offers no evidence that she

resigned in writing as a Co-trustee before that trust was by-passed as a result of the

2003 Settlement.

---

[5] Without the March 21, 2000 Amendment, Pickens is a Co-Trustee of the Living
Trust under the original provisions of Article XIV of the Living Trust (as Restated
on January 28, 2000) and liable under Section 6324(a)(2) for the value of the assets
held by the Living Trust on the date of Mr. Paulson's death.

1    Finally, if Pickens was required to accept a nomination has a Co-trustee of

2  the Marital Trust, she did so when she elected to receive the "gifts" under Article

3  III, Paragraph B and Article IV, Paragraph A of the Living Trust in lieu of

4  exercising her rights under the Antenuptial Agreement – thereby accepting the

5  terms of Allen E. Paulson's Living Trust and her role as Co-trustee of the Marital

6  Trust created thereunder.  Additionally, she accepted her role a Co-trustee of the

7  Marital Trust by signing the 2003 Settlement Agreement which expressly named

8  her as the sole trustee of the Marital Trust and agreed that the parties to the 2003

9  Settlement would ask the probate court to disregard the Marital Trust, but in the

10  event the probate court refused, Pickens held onto her status as sole trustee of the

11  Marital Trust.  (2003 Settlement Agreement, ¶¶15 and ¶ 17; Motion at Appendix

12  D, at Dkt. 15-5, pages 34-35 of 37).

13    In sum, because the 2003 Settlement Agreement made Pickens the sole

14  trustee of the Marital Trust, she was the only person with standing to object to that

15  trust being disregarded (something she did not do), the government has stated a

16  claim that Pickens as trustee of the Marital Trust participated in disregarding the

17  Marital Trust so that the assets intended for her under the Living Trust were

18  ultimately received by Pickens as the trustee of the Madeleine Anne Paulson

19  Separate Property Trust.  The United States contends that when examined more

20  closely, the substance and form of these transactions is the same as if the Living

12

1  Trust had distributed assets to Pickens as Trustee of the Marital Trust, and then she

2  distributed those assets to herself as Trustee of her Separate Property Trust. Not

3  surprisingly, Pickens' Motion agrees.  (Motion at 15).  As such the United States

4  has stated a claim against her as trustee of the Marital Trust under Section

5  6324(a)(2) that is sufficient to survive her Rule 12(b)(6) Motion.

6          With regard to Pickens role as a trustee of her separate property trust,

7  Pickens does not dispute that assets from the Living Trust (which were included in

8  the decedent's gross estate under Section 2038) were received by the Madeleine

9  Anne Paulson Separate Property Trust.  Because she was also a trustee of that trust,

10  Section 6324(a)(2) also makes her individually and personally liable for the value

11  (as of the date of death) of the assets received later by that Separate Property Trust.

12  However, Pickens argues that she is not liable under Section 6324(a)(2) for the

13  receipt of those assets as trustee of the Separate Property Trust because those assets

14  were not transferred to the Separate Property Trust during the decedent's lifetime

15  or immediately upon his death, but rather several years after his death when the

16  settlement agreement was finalized. (Motion at 15).  However, in doing so, she

17  misreads Section 6324(a)(2).  It provides:

18        If the estate tax … is not paid when due, then the spouse, transferee,
19        trustee … surviving tenant, person in possession of the property by
20        reason of the exercise of a power of appointment, or beneficiary, who
21        receives, or has on the date of the decedent's death, property included
22        in the gross estate under sections 2034 to 2042, inclusive . . .

13

26 U.S.C. § 6324(a)(2).  Here, the words "or has" are modified and limited by the words "on the date of the decedent's death," but the word "receives" is not modified or limited to any date restriction.  Indeed, it would make no sense to require an immediate receipt of non-probate property included in the gross estate as a condition of liability under Section 6324(a)(2) because no life insurance company ever pays the beneficiary of a life insurance policy before the decedent's death or immediately on the date of the decedent's death.  Yet, even Pickens agrees that life insurance beneficiaries who receive insurance proceeds after the date of death are routinely held liable by the courts for unpaid estate tax under Section 6324(a)(2).  (Motion at 11-15).[6]

Pickens also argues that the receipt of assets previously included in the decedent's gross estate under Section 2038 (via the Living Trust) by her as trustee of her Separate Property Trust, is not actionable under Section

---

[6] As discussed below, the United States agrees that life insurance beneficiaries who receive policy proceeds that are included in the decedent's gross estate under Section 2042 are liable as beneficiaries under Section 6324(a)(2), but disagrees that the word "beneficiary" in Section 6324(a)(2) is limited to beneficiaries of life insurance policies and rather than including beneficiaries of a trust that is included in the gross estate under Section 2038.

14

6324(a)(2) because those assets were first transferred to her as a beneficiary

of the Living Trust, and that she then re-transferred them to herself as trustee

of her Separate Property Trust.  (Motion at 15).  However, the Complaint

alleges that these transfers were directly to her as trustee of the Separate

Property Trust (Complaint at ¶ 35), and the documents Pickens has attached

to her Motion support the fact that these transfers were directly to her as

trustee of the Separate Property Trust and not to her as a beneficiary of the

Living Trust or the Marital Trust. (Motion, Appendices E-1 and E-2, Dkts.

15-6 and 15-7).

### D. Claim against Pickens as beneficiary of the Living Trust under Section 6324(a)(2)

Pickens argues that the Complaint fails to state a claim against her under

Section 6324(a)(2) as a beneficiary of the Living Trust. She contends that she

received assets included in the gross estate of Allen E. Paulson under Section 2038

only in her capacity as a beneficiary of the Living Trust (despite offering deeds

proving otherwise in Appendices E-1 and E-2), and that as a matter of law a

beneficiary of such a trust cannot be liable for unpaid estate tax under Section

6324(a)(2). (Motion at 11-15).  In making this argument she relies on a line of

cases from the Tax Court, and one district court case which have attempted to find

15

symmetry in the categories of non-probate assets listed in Sections 2034 through 2042 with the categories of transferees listed in Section 6324(a)(2) to reach the conclusion that the word beneficiary in Section 6324(a)(2) refers only to a beneficiary of a life insurance policy included in the gross estate under Section 2042, but not to a beneficiary of a living trust that was included in the gross estate under Section 2038.

The United States respectfully disagrees with those cases.  Here it is important to note that the *Johnson* decision[7] cited by Pickens is still pending without the opportunity for the United States to appeal that interlocutory order. Furthermore, other cases from the Tax Court have upheld the government's interpretation of Section 6324(a)(2) to include beneficiaries of trusts that are included in the gross estate.  In *Estate of Mangiardi v. Commissioner*, T.C. Memo. 2011-24, 2011 WL 280925, *aff'd* 442 Fed. Appx. 526, 2011 WL 4835854 (11th Cir. 2011), the court held that the IRS did not abuse its err as a matter of law in rejecting an estate's offer in compromise for a smaller amount when the IRS included the additional value it could recover from beneficiaries of a living trust

---

[7] *United States v. Johnson*, 112 AFTR 2d 2013-5474 (D. Utah, July 29, 2013), amending 109 AFTR 2d 2012-2253 (D. Utah, May 23, 2012).

16

1    and IRA accounts.  These were not beneficiaries of life insurance policies as

2    Pickens view of the law would require.

3          Similarly, at least one district court reached a result different from *Johnson*.

4    In *United States v. Bevan*, 2008 WL 5179099 at *6-8 (E.D. Cal. 2008), *adopted*

5    2009 WL 151136 (E.D. Cal. 2009), the government brought a similar suit under 26

6    U.S.C. § 6324(a)(2) to impose personal liability for a portion of the unpaid estate

7    taxes on a trustee (Bevan) and beneficiaries (Bevan and Kimball) of a living trust

8    that had been included in the decedent's gross estate.  There, the District Court for

9    the Eastern District of California imposed personal liability on the trust's

10   beneficiaries under Section 6324(a)(2) for the value of the assets distributed to

11   them from the trust several years after the decedent's death.  The court also

12   imposed personal liability personal liability under Section 6324(a)(2) on the trustee

13   of that living trust for the value of the assets it held on the date of the decedent's

14   death.[8]

---

[8] The government was not required to apply 31 U.S.C. § 3713's insolvency or
knowledge requirements to the trustee before imposing personal liability on the
trustee under Section 6324(a)(2).  Thus, even if the Court agrees with Pickens that
a beneficiary of a trust cannot be liable under Section 6324(a)(2) for receipt of
assets included in the decedent's gross estate, the trustee will always be personally
liable under Section 6324(a)(2) for the date of death value of the trust assets held
on the date of the decedent's death or received later by such trustee.  This personal
liability of the trustee is consistent with Congress's understanding of the law in the
(continued...)

1    Finally, as a matter of statutory construction, it is possible that Congress

2    intended the word "beneficiary" in Section 6324(a)(2) to mean both life insurance

3    beneficiary and beneficiaries of trusts included in the gross estate under Section

4    2038 when there are 9 categories of assets referred to in Sections 2034 through

5    2042 and only 7 categories of recipients referred to in Section 6324(a)(2).[9]

6    Following the Tax Court's own logic of symmetry between Sections 2034 through

7    2042 and the categories listed in Section 6324(a)(2), the number of the categories

8    of transferees in Section 6324(a)(2) should be the same as the number of non-

9    probate statutes triggering the inclusion of those assets in the decedent's gross

10   estate.  However, such symmetry does not exist, and because collection of the

11   estate tax is enforced against all of the transfers referred to in Sections 2034

12   through 2042 through the provisions of Section 6324(a), some of the categories of

---

(… continued)

history to the amendments of Section 2204.  See, S. Rep. No. 1444, 91ST Cong., 2ND Sess. 1970, 1970 U.S.C.C.A.N. 5689, 5692-5698, 1970 WL 5901 (Leg. Hist.) (discussing P.L. 91-614 amendment to 26 U.S.C. § 2204 to permit a trustee to apply to the IRS for a discharge of personal liability for unpaid estate taxes arising from an audit, and explaining that the reason for doing so was because a trustee can be held personally liable for unpaid estate taxes under both 31 U.S.C. § 3713 (formerly 31 U.S.C. § 192) and 26 U.S.C. § 6324(a)(2).

[9] The same can be said for the possibility that the word "transferee" in Section 6324(a)(2) includes more than one type of recipient.

18

transferees listed in Section 6324(a)(2) must include more than one type of recipient.  For example, it is clear that the Section 6324(a)(2) includes different kinds of trustees because the parenthetical excludes trustees of 401(a) employee trusts of as one of the types of trustees that may be liable.  Under this view, the word "beneficiary" or the word "transferee" could easily include a beneficiary of a trust included in the gross estate who subsequently receives distributions from that trust while the estate tax remains unpaid.

Given this mix of different results from the courts and the lack of numerical symmetry in Section 6324(a)(2)'s various categories, the United States' Complaint states a claim against Pickens under Section 6324(a)(2) as a beneficiary of the Living Trust because there is a circumstance in which the United States may prevail on that theory.

### E.  Claim against Pickens for indemnification (or third-party contract) under the 2003 Settlement

Pickens argues that no claim can be stated against her for indemnity to the Living Trust or directly to the United States as a third-party beneficiary under Paragraphs 20 and 21 of the 2003 Settlement Agreement making Pickens responsible for the payment of estate taxes resulting from the distribution of assets of the Living Trust to her.  (Motion at 16-17).  Here, she relies on two unsupported assumptions about the terms of the 2003 Settlement Agreement.  First, she argues

19

that her self-serving interpretation of Paragraph 39 of the 2003 Settlement

Agreement precludes any cause of action for third party contract against her by the

United States.  Paragraph 39 of the 2003 Settlement Agreement provides:

> Binding on Successors:  This Agreement shall inure to the benefit of,
> and shall be binding upon, each of the Parties and their respective
> heirs, successors, personal representatives and assigns.

However, Pickens offers no law or evidence to support this self-serving statement.

By contrast, California recognizes that a creditor may become a third-party

beneficiary of a contract if identity of that creditor is clear and the performance by

the promisor to the creditor would discharge the obligation to the promisee.

*Martinez v. Socoma Companies, Inc*. 11 Cal.3d 394, 400–401, 113 Cal. Rptr. 585,

521 P.2d 841 (1974); *Outdoor Servs., Inc. v. Pabagold, Inc*., 185 Cal. App.3d 676,

681, 230 Cal. Rptr. 73 (Cal. Ct. App.1986).  *See also*, Restatement 2nd of

Contracts, § 302.  Here, the Complaint alleges that because the estate tax

mentioned in the Settlement Agreement was payable only to the United States, the

identity of the United States as an intended third-party beneficiary of that contract

is unmistakable.  (Complaint at ¶ 98).  Thus, while Pickens may disagree, the

United States' standing as a third-party creditor beneficiary of the 2003 Settlement

Agreement is a question to be determined by looking at all of the facts and Pickens

has failed to show how the language of Paragraph 39 of that settlement agreement

precludes such standing as a matter of law.

20

1    Second Pickens acknowledges, as she must, that her liability for estate taxes

2  under Paragraphs 20 and 21 of the 2003 Settlement Agreement is controlled by the

3  following language:

4       The liability for any estate tax or gift tax (determined at the highest
5       marginal tax rate and without the benefit of any credit or exclusion
6       amounts) payable as a result of any distribution made to Madeleine
7       pursuant to this agreement shall be borne entirely by Madeleine.
8

9    However, she argues that her liability is zero because all of the assets she

10  received from the Living Trust enjoyed a marital deduction against the estate tax,

11  and that such marital deduction is different from the "credit" or "exclusion" that

12  she is not permitted to use in calculating her agreed liability for the estate tax.  In

13  this regard, she argues that the terms "credit" and "exclusion" can only mean the

14  unified credit and amount of value associated with it under 26 U.S.C. § 2010.

15  However, she offers no law or evidence to support this assertion, and if the other

16  parties' had intended to limit these terms to Section 2010, they could have easily

17  defined them by reference to that statute. Because the Settlement Agreement does

18  not define those terms in any way, the United States is entitled pursue its claims

19  through discovery into the meaning of those terms, as well as the parties, intent

20  regarding those terms.  In sum, because Pickens has failed to show that under no

21  circumstances could the government prevail on its indemnity and third party

22  contract claims, her Rule 12(b)(6) Motion to Dismiss those claims must be denied.

21

### F. Claim against Pickens for prejudgment and post-judgment interest as a transferee under 26 U.S.C. § 6901, 6601 and 6621.

Law is well settled that where the value of the amount received by a transferee under Section 6324(a)(2) exceeds the unpaid balance of the estate tax owed by the estate (including all tax, penalty and interest), the value limitation set forth in Section 6324 is never reached, and the courts agree, *albeit* for different reasons, that the transferee is also liable for the unpaid balance of the estate tax even though it includes interest owed by the estate.  *United States v. Botefuhr*, 309 F. 3d at 1270, n. 5 (10th Cir. 2002); *Baptiste v. Commissioner*, 29 F. 3d 1533, 1542 (11th Cir. 1994)*; Baptiste v. Commissioner*, 29 F.3d 433, 437 (8th Cir. 1994)*; Poinier v. Commissioner*, 858 F.2d 917, 920 (3d Cir.1988).  Additionally, once a judgment is entered against the transferee for his liability under Section 6324(a)(2), post judgment interest accrues on that liability at the rates set forth in 26 U.S.C. § 6601, 6621, and 28 U.S.C. § 1961(c).

Where the courts are split is whether the transferee can be held liable for an amount greater than the value of the assets he receives under a theory that prejudgment interest runs directly against him on his Section 6324(a)(2) liability for that principal value received from the date of the distribution until paid. *Baptiste v. Commissioner*, 100 T.C. 252 (Tax Court 1993), *aff'd*, 29 F. 3d 1533, 1541-42 (11th Cir. 1994).  However, in those cases the government does not seek

22

to collect more than the unpaid balance of the tax account which gives rise to the

liability under Section 6324(a)(2).  Accordingly, because the estate tax debt

(currently $10.6 million) exceeds the $19 million (Complaint at ¶ 88) value of the

assets received by Pickens, the spilt in the circuits on this interest issue is not yet

part of the United States' claim against Pickens, and it is not likely to become part

of that claim given the vast difference in the numbers.   Consequently, if the Court

finds that Pickens is liable to the United States under 26 U.S.C. § 6324(a)(2), then

it need only apply the undisputed rule that she would be liable for unpaid estate

tax, plus interest applied to the Estate under 26 U.S.C. § 6601 and 6621 (the unpaid

estate tax balance of $10,621,217 as of July 10, 2015 that currently does not

exceed the value of the assets she received).  Even though additional prejudgment

interest will accrue on that estate tax debt until a judgment is entered against her, it

is not likely to make the unpaid balance of the estate tax exceed the $19 million

that she received.  Finally, once a judgment is entered against her, post judgment

interest will apply under 26 U.S.C. §§ 6601 6621 as required by 28 U.S.C. §

1961(c).

## G. <u>The Complaint asserts no claim for the November 26, 2001 assessment</u>

Pickens argues that to the extent the United States' Complaint includes a claim for any part of the originally reported estate tax assessed on November 26, 2001, such claim is barred by the general 10 year statute of limitations for collection under 26 U.S.C. § 6502.  (Motion at 17).  Although the United States disagrees that the statute of limitations to collect that original tax assessment would be barred,[10] its Complaint makes no claim against any Defendant for that original tax assessed on November 26, 2001.  This because that original tax and related interest has been paid off with the partial payments previously made by the Estate and Living Trust[11] – leaving only the $6,669,477 of additional tax assessed on January 30, 2006, and its related interest and penalties to form the United States' claim for $10,621,217 in unpaid estate tax liability in this suit.

---

[10] See, 26 U.S.C. § 6503(d) and 6166(g)(3); *United States v. Askegard,*291 F. Supp. 2d 971, 979-980 (D. Minn. 2003); and *United States v. Askegard,* 357 F. Supp. 2d 1152 (D. Minn. 2005). *See also*, IRM 4.2.25.2.1.12 (15) and 4.25.2.2.1.15.(15).

[11] See Declaration of Sobotka, Gov. Ex. A; IRS Computation, Gov. Ex. A-5; and Notice of Federal Tax Lien, Gov. Ex. A-6.

IV.     <u>Conclusion</u>

For the reasons stated above, Pickens' Rule 12(b)(6) Motion to Dismiss the United States' Complaint must be denied.

<u>/s/ Andrew L. Sobotka</u>
ANDREW L. SOBOTKA
Texas State Bar No. 18819900
MOHA P. YEPURI
Texas State Bar No. 24046651
Attorneys, Tax Division
U.S. Department of Justice
717 N. Harwood St., Suite 400
Dallas, Texas 75201
(214) 880-9767
(214) 880-9741 (Facsimile)
Attorneys for United States
Andrew.L.Sobotka@usdoj.gov
Moha.P.Yepuri@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

It is hereby certified that on December 7, 2015, a copy of the United States' Response in Opposition to Madeleine Pickens' Rule 12(b)(6) Motion to Dismiss was served electronically on the following using the Court's ECF system, and by mail:

Joshua A. Mandell
Ackerman LLP
725 South Figueroa Street, 38th Floor
Los Angeles, CA 90017-5433
Phone: (213) 688-9500
Fax: (213) 627-6342
Joshua.mandell@ackerman.com

Donald N. David
666 Fifth Avenue, 20th Floor
New York, NY 10103
Phone: (212) 880-3800
Fax: (212) 880-8965
Donald.david@ackerman.com

Glen A. Stankee
Ackerman LLP
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
Phone: (954) 463-2700
Fax: (954) 463-2224
Glen.stankee@ackermann.com

Attorneys for Madeleine Pickens

26

And by mailing a copy to the following parties whose time to answer or appear has not yet expired:

LEIGHTON R. KOEHLER
FabianVanCott
601 South Tenth Street, Suite 204
Las Vegas, NV  89101
Phone: (801) 323-2244
lkoehler@fabianvancott.com
www.fabianvancott.com

Attorney for John Michael Paulson

Jeremy Gray
Zuber Lawler & Del Duca LLP
777 S. Figueroa Street • 37th Floor
Los Angeles, CA 90017
Phone: (213) 596-5620
Fax: (213) 596-5621
jgray@zuberlaw.com
www.zuberlaw.com

Attorneys for Vikki Paulson and Crystal Christensen

Jeff Greenwald
Greenwald & Greenwald
23901 Calabasas Rd Suite 2013
Calabasas, CA 91302
Phone: (818) 876-1800
jeff@greenwaldlaw.org

Attorney for James D. Paulson

/s/ Andrew Sobotka
Andrew Sobotka

27