1   ANDREW L. SOBOTKA
2   Texas State Bar No. 18819900
3   MOHA P. YEPURI
4   Texas State Bar No. 24046651
5   Attorneys, Tax Division
6   U.S. Department of Justice
7   717 N. Harwood St., Suite 400
8   Dallas, Texas 75201
9   (214) 880-9736/9767
10  (214) 880-9741 (Facsimile)
11  Attorneys for United States
12  Andrew.L.Sobotka@usdoj.gov
13  Moha.P.Yepuri@usdoj.gov
14
15
16         IN THE UNITED STATES DISTRICT COURT FOR THE
17              SOUTHERN DISTRICT OF CALIFORNIA
18
19  UNITED STATES OF AMERICA,          §
20        Plaintiff,                    §
21                                      §
22        v.                            §
23                                      §
24  JOHN MICHAEL PAULSON, as the        §
25  Executor or Statutory Executor of   §
26  the Estate of Allen E. Paulson,     §
27  and Individually;                   §
28                                      §     Case No. 15cv2057-AJB/NLS
29  JAMES D. PAULSON, as                §
30  Statutory Executor of the Estate    §      Hearing: January 21, 2016
31  of Allen E. Paulson;                §
32                                      §
33  VIKKI E. PAULSON, as                §      United States' Response to
34  Statutory Executor of the Estate of Allen  §  Vikki Paulson and Crystal
35  E. Paulson, as Trustee of the       §      Christensen's Rule 12(b)(6)
36  Allen E. Paulson Living Trust, and  §      Motion to Dismiss
37  Individually;                       §
38                                      §
39  CRYSTAL CHRISTENSEN, as             §

Statutory Executor of the Estate of Allen §
E. Paulson, as Trustee of the Allen §
E. Paulson Living Trust, and Individually; §
§
MADELEINE PICKENS, as Statutory §
Executor of the Estate of Allen §
E. Paulson, as Trustee of the Marital Trust §
created under the Allen E. Paulson Living §
Trust, as Trustee of the Madeleine Anne §
Paulson Separate Property Trust, and §
Individually; §
§
      Defendants. §
_____

## UNITED STATES' RESPONSE TO
## VIKKI PAULSON AND CRYSTAL CHRISTENSEN'S
## RULE 12(b)(6) MOTION TO DISMISS

ANDREW L. SOBOTKA
Texas State Bar No. 18819900
MOHA P. YEPURI
Texas State Bar No. 24046651
Attorneys, Tax Division
U.S. Department of Justice
717 N. Harwood St., Suite 400
Dallas, Texas 75201
(214) 880-9767
(214) 880-9741 (Facsimile)
Attorneys for United States
Andrew.L.Sobotka@usdoj.gov
Moha.P.Yepuri@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

# **TABLE OF CONTENTS**

Page

I.    Procedure Background..................................................................... 1

II.    Overview of Statutory Scheme for Collecting Estate Taxes ........................ 3

III.    Standard for Dismissal Under Rule 12(b) ..................................... 8

IV.    Response to Issue Raised by Vikki and Crystal .......................... 9

    A.    The claims against Vicki and Crystal in their representative capacity as statutory executors of the Estate........................................ 9

    B.    The Complaint states a claim against the Living Trust under California law for breach of a third-party beneficiary contract ........ 12

    C.    The Complaint states a claim against the Living Trust under Section 19001 of the California Probate Code.................................. 13

    D.    Claims against Vicki and Crystal under Section 6324 (a)(2).......................................................................... 16

V.    Conclusion.................................................................................... 25

# **TABLE OF CITATIONS**

## **Cases**

*Englert v. Comm'r*, 32 T.C. 1008 (1959) ………………………………..18, 20

*Estate of Mangiardi v. Comm'r,* TC Memo. 2011-24, 2011 WL 280925, aff'd,
    442 Fed. Appx. 526, 2011 WL 4835854 (11th Cir. 2011) ......................... 23, 25

*Garrett v. Comm'r*, T.C. Memo. 1994-70, 1994 WL 52379 …………….…..20, 21

*Higley v. Comm'r*, 69 F. 2d 106 (1934) ………………………………………19

*Leigh v. Commissioner,*72 T.C. 1105,
    1979 WL 3762 (1979)......................................................................... 10

*Leighton v. United States,* 289 U.S. 506 (1933) ………………………..……..16

*Martinez v. Socoma Companies, Inc.*,
    11 Cal. 3d 394, 400-401, 113 Cal. Rptr. 585, 12 521 P.2d 841 (1974)........... 13

*Outdoor Serv., Inc. v. Pabagold, Inc.*,
    185 Cal.App.3d 676, 13 681, 230 Cal. Rptr.73 (Cal. Ct. App. 1986) ............. 13

*Ripley v. Commissioner,* 102 T.C. 654 (1994) …………………………………7

*United States v. Rogers*, 461 U.S. 677 (1983) …………………………………16

*Roski v. Commissioner,* 128 T.C. 113 (2007)…………………………………..6

*United States v. Bevan,* 2008 WL 5179099 at *6-8 (E.D. Cal. 2008),
    adopted 2009 WL 151136 (E.D. Cal. 2009).................................................... 23

*United States v. Cleavenger,*
    517 F.2d 230 (7th Cir. 1975).................................................................. 7

*United States v. Johnson*, 112 AFTR 2d 2013-5474 (D. Utah, July 29, 2013)
    Amending 109 AFTR 2d 2012-2253 (D. Utah, May 23, 2012) ............ 20,22,23

*United States v. Overman,*
424 F.2d 1142 (9th Cir. 1970)................................................................. 7

*United States v. Summerlin,*
310 U.S. 414 (1940)............................................................................... 7


**Statutes**

**26 U.S.C.**

§ 2001 ................................................................................................. 3

§ 2002 ............................................................................................... 10

§ 2031 ................................................................................................. 3

§ 2033 ............................................................................................ 3, 5

§ 2034 ................................................................................. 3,5,17,22,24

§ 2038 ............................................................................... 18, 22, 24

§ 2039 ............................................................................................. 25

§ 2040 ................................................................................ 4,6,21,23,26

§ 2041 ................................................................................ 4,6,21,23,26

§ 2042 ................................................................................ 3,5,17,22,25

§ 2051 ................................................................................................. 3

§ 2203 ............................................................................................ 9, 11

§ 6166 .......................................................................... 2,4,5,6,8, 21

§ 6166(g)(3) ................................................................................... 4

§ 6212 ........................................................................................................... 4

§ 6213 ........................................................................................................... 4

§ 6321 ........................................................................................................... 5

§ 6322 ........................................................................................................... 5

§ 6324A ...................................................................................................... 2,6

§ 6324(a)(1) ............................................................................................ 5, 25

§ 6324 (a)(2) ............................................... 6,8,16,17, 20, 21, 22, 23,24, 25

§ 6502 ................................................................................................. 2,4,5, 9

§ 6503 ........................................................................................................... 4

§ 7402 ........................................................................................................... 9

§ 7479 ........................................................................................................... 6

**28 U.S.C.**

§ 3304 ..................................................................................................... 7,13

**31 U.S.C.**

§ 3713 ............................................................................................... 7, 10, 15

§ 3713(a) ................................................................................................... 15

§ 3713(b) (formerly 31 U.S.C. § 192) ......................................................... 10

# Other

# Federal Rules

Rule 12 (b)(6)................................................................... 1,,2, 8, 9, 25
Rule 26 (f) ........................................................................................ 1
Rule 56 ............................................................................................. 8

# Treas. Reg. (26 C.F.R.)

§ 20.2002-1 .................................................................................... 10
§ 20.2203-1 .................................................................................... 11
§ 301.6324 1(d) ............................................................................... 7

# Misc.

California Probate Code Section 11420............................................... 7, 15

California Probate Code Section 19001.......................................... 13, 14

California Probate Code Section 19000(f).......................................... 14

California Uniform Fraudulent Transfer Act Section 3439.04
    (West's Ann. Cal. Civ. Code § 3439.04) ...................................... 7, 13

Restatement 2nd of 14 Contracts § 302 ................................................ 13

UNITED STATES' RESPONSE TO
<u>VIKKI PAULSON AND CRYSTAL CHRISTENSEN'S</u>
<u>RULE 12(b)(6) MOTION TO DISMISS</u>

The United States responds to Vikki Paulson and Crystal Christensen's Rule 12(b)(6) Motion to Dismiss (Dkt. 25) as follows:

## I. **Procedural Background**

This case was initiated by the United States as a suit to collect more than $10 million in unpaid estate taxes owed by the Estate of Allen E. Paulson (the Estate). The Complaint asserts claims against: (a) John Michael Paulson, in his capacity as an executor of the Estate, and individually; (b) James D. Paulson, in his capacity as an executor of the Estate; (c) Vikki Paulson and Crystal Christensen (Vikki and Crystal), in their capacities as executors of the Estate, their capacities as Trustees of the Allen E. Paulson Living Trust ("Living Trust"), and individually; and (d) Madeleine Pickens (Mr. Paulson's spouse) in her capacity as executor of the Estate, her capacity as Trustee of a Marital Trust created under the Allen E. Paulson Living Trust, her capacity as Trustee of the Madeleine Anne Paulson Separate Property Trust, and individually.

The United States has recently completed service of process on the various Defendants, and the time for many of the Defendants to answer has not yet expired. There has been no Rule 26(f) conference, no discovery and no scheduling

1

order entered.  However, without denying that the terms of the Living Trust require them, as the current trustees, to pay the estate tax, and without offering any justification for their failure to do so since taking over the Living Trust in 2009, Vikki and Crystal seek to have the government's claims against the Living Trust and against themselves personally dismissed under Rule 12(b) by suggesting that the government is at fault for not forcing them to pay these taxes sooner, or by not demanding an optional lien under Section 6324A to secure the 15 year deferred payment plan that the Estate exercised its right to impose on the government.

However, the amount of the tax is not in dispute, and there is no allegation that the 10 year statute of limitations under Section 6502 for collecting the IRS's January 30, 2006 assessment of additional estate tax had expired before this suit was filed.  Moreover, as explained below in Section II, Congress established a statutory system of cumulative tools for collecting estate taxes that includes both the ability, but not a requirement, that the IRS demand a lien, when an estate asserts its rights to pay the estate tax under Section 6166 over 15 years.  Congress also imposed personal liability on those who distribute or receive the assets of the decedent.  Indeed, it would be an injustice to allow the two Defendants who, by last account, still held over $8 million of assets belonging to the decedent as Trustees of his Living Trust to be excused from turning those assets over to pay what is an undisputed $10 million estate tax liability merely because the IRS did

2

1   not collect it sooner.  In sum, their argument is one of laches which does not apply

2   to the federal government in collecting taxes.  A better question is why the current

3   trustees of the Living Trust have not paid the undisputed estate tax liability since

4   they took over the trust in 2009?

5

6   II.    **Overview of Statutory Scheme for Collecting Estate Taxes**

7          Congress has established a comprehensive statutory scheme for imposing

8   and collecting estate taxes.  Under 26 U.S.C. § 2001, an estate tax is imposed on

9   the taxable estate of every decedent who is a citizen of the United States.  The

10  taxable estate is determined by first establishing the value of assets that are

11  included in the decedent's "gross estate" and then allowing certain deductions and

12  credits.  26 U.S.C. § 2051.  The gross estate includes the value of all real and

13  personal property as further defined by the Internal Revenue Code.  26 U.S.C. §

14  2031.  In particular, assets in which the decedent held an interest at death are

15  included in the gross estate under Section 2033.  These assets generally pass to

16  heirs through probate and are commonly referred to as probate assets.  Similarly,

17  any assets which the decedent retained or enjoyed some benefit in at the time of his

18  death, but which pass directly to heirs by operation of law or title are also included

19  in the gross estate under 26 U.S.C. §§ 2034 through 2042.  Because these assets

3

1   pass to heirs automatically outside of probate, they are commonly referred to as

2   non-probate assets.

3         The executor is the person who is responsible for filing the estate tax return

4   and paying the estate tax from the assets or rights of the estate.  If the IRS audits

5   the estate tax return and proposes an additional estate tax, the executor can

6   challenge that additional estate tax in the Tax Court without first paying the tax.

7   Until the Tax Court case is resolved, the IRS is prevented from assessing (and

8   collecting) the additional tax.  26 U.S.C. § 6212 and 6213.  Once an assessment is

9   made, the IRS has 10 years from the date of that assessment to collect the tax,

10  unless the statute of limitation is suspended.  26 U.S.C. §§ 6502 and 6503.  Where

11  an estate consists of a qualifying closely held business, collection of an original tax

12  shown due on a return or an additional audit assessment can be further deferred by

13  the estate making an election to pay the tax attributable to that qualified business

14  over a 15 year deferral period under 26 U.S.C. § 6166.  In exchange for this

15  deferred payment election, the statute of limitations for collection for the deferred

16  estate tax is suspended until the IRS terminates the Section 6166 election and gives

17  notice and demand for payment of all future installments (accelerates the account).

18  26 U.S.C. § 6503(d) and 6166(g)(3).

19        Congress created several different tax liens that may pertain to the collection

20  of an estate tax.  In this case, three of those liens are potentially applicable.  First,

4

1  as with all other types of taxes, a general statutory lien arises under 26 U.S.C. §§

2  6321 and 6322 on the date that the estate tax is assessed.  While this general lien

3  does not expire until the statute of limitations for collecting the assessment expires

4  under Section 6502 (including any suspensions or extensions) this lien attaches

5  only to those assets of the probate estate (Section 2033 assets. e.g. probate court

6  inventory).  In many estate tax cases this lien is not effective because the decedent

7  previously placed most of his assets in a living trust or transferred title heirs using

8  non-probate transfers such that they are not subject to probate administration.

9  Additionally, this general lien can be ineffective in those cases where the executor

10  distributes all of the probate assets before any additional estate tax arising from an

11  audit or Tax Court litigation can be assessed.

12       Second, a special estate tax lien is imposed under Section 6324(a)(1) on all

13  assets that are included in the "gross estate".  This lien attaches to both probate

14  (Section 2033) and non-probate assets (Sections 2034 through 2042) as of the date

15  of death.  However, this lien is not always effective because it automatically

16  expires 10 years after the date of death even if the tax has not yet been fully paid

17  because of protracted audits, Tax Court litigation, or an election under Section

18  6166 for deferred payments over 15 years.

19       Third, in certain cases where a Section 6166 deferred payment is elected by the

20  estate, Congress authorized the IRS to request a lien on specific property under 26

5

U.S.C. § 6324A.  However, this lien is not always effective because it requires the consent of the estate and any persons who hold the specific property given as collateral, and the IRS's right to such a lien is not automatic.  *Roski v. Comm'r.*, 128 T.C. 113 (2007); 26 U.S.C. § 7479 (providing juridical review for denial of a Section 6166 deferred payment election or the subsequent termination of that election for any reason – including the failure to give lien under Section 6324A lien as collateral for the 15 year deferred payment election).

Because the liens provided by Congress are not always effective, Congress also provided for enforcement through personal liability on various persons. Although the probate estate (executor of the probate estate, in his representative capacity) is primarily liable to pay the estate tax to the extent the probate estate has assets, other persons are also personally liable for unpaid estate tax to the extent they receive or control the decedent's assets. For example, under 26 U.S.C. § 6324(a)(2) imposes liability persons who:

    a.  receive non-probate assets that were included in the gross estate; and

    b.  hold on the date of death non-probate assets that were included in the gross estate.

This makes sense, because decedents often transfer the bulk of their assets to their heirs using techniques such jointly held property with rights of survivorship, deeds

6

1  with a retained life estate, or a living trust for the benefit of the decedent during his

2  life and then to his heirs as beneficiaries of that trust after his death.[1]

3      Finally, the law is well settled on two other points.  First, the liens and personal

4  liability for unpaid estate taxes are cumulative remedies, and can be imposed by

5  the government in any order at its choosing.   See Treas. Reg. (26 C.F.R.) §

6  301.6324 1(d); *United  States v. Cleavenger*, 517 F.2d 230 (7th Cir. 1975); *Ripley*

7  *v. Commissioner*, 102 T.C. 654 (1994).  Second, the United States is not subject to

8  the defense of laches in enforcing its rights. *United States v. Summerlin,* 310 U.S.

9  414 (1940); *United States v. Overman*, 424 F.2d 1142 (9th Cir. 1970).

10

---

[1] In order to avoid being an automatic fraudulent transfer as to the United States as a future creditor for unpaid estate taxes, living trust instruments must provide for the payment of the estate that would be owed by settlor's estate which has been stripped of assets. See 28 U.S.C. § 3304; California Uniform Fraudulent Transfer Act Section 3439.04 (West's Ann. Cal. Civ. Code § 3439.04). Similarly, although not specific to the estate tax, an executor or a trustee, can, in certain circumstances, also be held personally liable for unpaid debts of the United States (including estate taxes) if they make distributions from an estate or trust that render it unable to pay a known or potential debt to the government.  31 U.S.C. § 3713.  The United States reserves its right to file an amended complaint asserting these theories should they become warranted by the court's rulings or discovery of additional information.

### III.    Standard for Dismissal Under Rule 12(b)

As explained in more detail in the United States' Response to Madeline

Pickens' Rule 12(b)(6) Motion to Dismiss (Dkt. 21 at 3-6), the Court must

presume that all well pleaded allegations are true, resolve all doubts and inferences

in the pleader's favor, and view the pleading in the light most favorable to the non-

moving party.  Moreover, when a Rule 12(b)(6) motion to dismiss relies on matters

outside of the pleadings, the court may deny the motion, refuse to consider those

outside matters, or convert the motion to a motion for summary judgment under

Rule 56.  And, if the motion is converted, the court must allow the non-moving

parties a reasonable opportunity to present other material that is pertinent to the

motion.

Here, Vikki and Crystal rely on that outside evidence to make the further

argument that the Section 6324(a)(2) should be interpreted in a manner that

excuses them from personal liability for the value of the assets in the Living Trust

they control merely because the IRS did not have an effective lien against those

assets while the Estate and the Living Trust enjoyed a deferral of time for payment

Section 6166.  Assuming for the sake of argument that the Court were to entertain

this invitation to error, the United States is entitled to discovery into the reasons for

the Trustees' delay in paying taxes owed by the Estate and which the Living Trust

is obligated to pay by its own terms.

8

## IV.    **Response to Issues Raised by Vikki and Crystal**

Even if the Court were to consider each of the United States' claims against Vikki Paulson and Crystal Christensen under Rule 12(b)(6), their Motion must be denied.   The issues raised in the Motion are addressed below - but in a different order so the discussion of liability begins with their representative capacities as statutory executors of the Estate and their representative capacities as Trustees of the Living Trust.  Then the discussion moves on to their personal liabilities.

### A.  The claims against Vikki and Crystal in their representative capacity as statutory executors of the Estate

First, Vikki and Crystal argue that the Complaint fails to state a claim against them in their representative capacities as executors of the Estate.  (Motion at 6-7).  As explained below, they are wrong because they are statutory executors under 26 U.S.C. § 2203, and they mistakenly suggest that the Complaint seeks to impose personal liability on them for actions or omissions while they were executors when it merely seeks to obtain a judgment against the Estate by naming its executor or administrator in a representative capacity. This is necessary to reduce the estate tax liability to a judgment under 26 U.S.C. § 7402, and to extend the statute of limitation for collection of that tax under 26 U.S.C. § 6502. However, the United States does not care which of the Defendants is deemed to be the executor or administrator so long as someone appears in this case as a

9

representative of the Estate of Allen E. Paulson so that a judgment can be sought and entered against the Estate.[2]

By statute, the taxpayer liable for the estate tax is the executor the estate. 26 U.S.C. § 2002.  Although Section 2002 does not explicitly state whether it imposes personal liability or merely representative liability for the estate, the applicable treasury regulation and judicial decisions confirm that it merely imposes a representative capacity liability on an executor for an estate. *See* Treas. Reg. (26 C.F.R.) § 20.2002–1; *Leigh v. Commissioner*, 72 T.C. 1105, 1979 WL 3762 (1979) (stating that Treas. Reg. § 20.2002–1 clarifies that 26 U.S.C. § 2002 only imposes liability in a representative capacity, and that personal liability of an executor only arises if 31 U.S.C. § 3713(b) (formerly 31 U.S.C. § 192) also applies.  Thus, a suit against an executor in his or her representative capacity as an executor or as a statutory executor is a suit against the estate, but is not a claim intended to reach the personal assets of the executor.

By law, an executor is defined as the person appointed by a probate court or in the absence of such court appointed executor, those persons having possession

---

[2] Imposing such representative capacity on all of the Defendants does nothing more than ensure that this Court's final judgment against the Estate cannot be overturned because the Court chose incorrectly.

of the property of the decedent.  26 U.S.C. § 2203; Treas. Reg. § 20.2203-1.  Here, the Complaint clearly alleges that the court appointed executor, John Michael Paulson, resigned effective January 15, 2013 (Complaint at ¶ 54)[3], and that Vikki Paulson and Crystal Christensen are persons who currently possesses property that belonged to Allen E. Paulson (Complaint at ¶¶ 87-92).  Indeed, the Complaint also alleges that such resignation was with the agreement of Vikki and Crystal as part of their 2013 settlement between themselves and John Michael Paulson. (Complaint at ¶ 53).  This is sufficient for denial of their Motion on this claim.

Further, their reliance on the December 4, 2011 Order of the Tax Court (Motion at 7) dismissing a petition filed by Vikki Paulson and Crystal Christenson as "statutory executors" is similarly misplaced because at that time John Michael Paulson was still acting as the court appointed executor and only he had standing.

Finally, their allegation that John Michael Paulson has not effectively resigned as executor because he did not provide an final accounting (Motion at 7) is specious at best given their consent to such resignation in the 2013 Settlement Agreement (Complaint § ¶ 53).  Accordingly, in the absence of Vikki and Crystal providing this Court with information that a new executor has been appointed by

---

[3] *See also*, Resignation, Appendix J (Dkt. 15-12, p. 30 of 30) attached to Pickens' Motion.

11

the probate court, the provisions of 26 U.S.C. § 2203 apply, and the Complaint

states a claim against them in her representative capacities as a statutory executors.

### B. The Complaint states a claim against the Living Trust under California law for breach of a third-party beneficiary contract.

Vikki and Crystal argue that the Complaint fails to state a claim against them

under a third-party beneficiary contact theory.  (Motion at 16).  Here, they artfully

point out that they were not the original parties to the Living Trust instrument in an

attempt to draw attention away from the fact that the government's third-party

beneficiary contract claim is against them in their representative capacities as the

current trustees of the Living Trust.  A trust that had at least $8 million in assets

previously belonging to the decedent (Complaint at ¶¶  48) when they took over

and is believed to still have most of those assets.  However, the Complaint clearly

alleges that the terms of the Living Trust obligate the trustees (whomever they may

be) to pay the estate tax that is owed to the United States in this case. (Complaint at

¶ 18).  Under those terms, payment of the estate tax by the Living Trust to the

Estate so the Estate can pay the United States, or payment of the estate tax directly

to the United States results in the same obligation of the Trust being fulfilled.

Furthermore, because the United States is easily identified as the creditor to whom

1   such estate tax would be owed, the United States is entitled to enforce that

2   contractual provision in the trust agreement as an intended[4] third-party beneficiary.

3   *Martinez v. Socoma Companies, Inc*. 11 Cal.3d 394, 400–401, 113 Cal. Rptr. 585,

4   12 521 P.2d 841 (1974); *Outdoor Servs., Inc. v. Pabagold, Inc*., 185 Cal. App.3d

5   676, 13 681, 230 Cal. Rptr. 73 (Cal. Ct. App.1986). *See also*, Restatement 2nd of 14

6   Contracts, § 302.  Moreover, it should be noted that the inclusion of this obligation

7   in the Living Trust instrument for benefit of the United States was necessary in

8   order to avoid creating a trust that is automatically voidable by the United States

9   under as a future creditor for estate taxes that would be owed by Allen E. Paulson's

10   Estate which would have insufficient assets to pay the estate taxes on the assets

11   moved to the Living Trust.  See 28 U.S.C. § 3304; California Uniform Fraudulent

12   Transfer Act Section 3439.04 (West's Ann. Cal. Civ. Code § 3439.04).

### C. The Complaint states a claim against the Living Trust under Section 19001 of the California Probate Code.

17   Vikki and Crystal also argue that the Complaint fails to state a claim against

18   them under California Probate Code Section 19001.  (Motion at 15-16).  They

19   again engage in misdirection by suggesting that the United States can only recover

[4] To the extent that intent is a question of fact, it is not suitable for a Rule 12(b)(6) dismissal.

13

1    under that statute if it is asserting a pre-death claim against the decedent, and that

2    estate taxes are not such claims.  (Motion at 15-16).  However, Section 19001 is

3    broader.  It provides:

> (a) Upon the death of a settlor, the property of the deceased settlor that
> was subject to the power of revocation at the time of the settlor's
> death is subject to the claims of creditors of the deceased settlor's
> estate and to the ***expenses of administration of the estate*** to the extent
> that the deceased settlor's estate is inadequate to satisfy those claims
> and expenses.

> (b) The deceased settlor, by appropriate direction in the trust
> instrument, may direct the priority of sources of payment of ***debts***
> among subtrusts or other gifts established by the trust at the deceased
> settlor's death. ***Notwithstanding this subdivision, no direction by the
> settlor shall alter the priority of payment, from whatever source, of
> the matters set forth in Section 11420 which shall be applied to the
> trust as it applies to a probate estate.***

Cal. Probate Code § 19001 (emphasis in bold and italics).

Vikki and Crystal ask the Court to overlook Section 19001(a)'s remaining

language that makes the trust assets liable for, "expenses of administration of the

estate."  They also ask the Court to completely ignore Section 19001(b)'s

incorporation of the word "debts" despite admitting that the word "debts" includes

taxes.  (Motion at 16).  California Probate Code Section 19000(f) provides:

> (f) "Debts" means all claims, as defined in subdivision (a), all
> expenses of administration, and all other proper charges against the
> trust estate, ***including taxes***.

Finally, they ignore the directive in Section 19001(b) that the assets of the trust be

treated as though they were assets of the estate and always subject to the priority

14

rules set forth in Probate Code Section 11420 for estates.  Under Section 11420,

the debts of the United States are given super priority above all other categories,

including expenses of administration:

> (a) Debts shall be paid in the following order of priority among classes of debts, _except that debts owed to the United States or to this state that have preference under the laws of the United States or of this state shall be given the preference required by such laws_:
>     (1) Expenses of administration.  . . .

Cal. Probate Code § 11420 (emphasis in bold italics).

Here, because the Estate of Allen E. Paulson is insolvent (Complaint at ¶¶

27 and 61), and because the Living Trust also has insufficient assets to pay the

estate tax in full (Complaint at ¶ 82), the estate tax owed to the United States is

entitled to the highest priority under 31 U.S.C. § 3713(a), and consequently under

California Probate Code Sections 11420 and 19001.

In sum, the estate tax is either an expense of administration on of Allen E.

Paulson's Estate or it is a debt of the Trust that is entitled to the highest preference

in the order of payment under Probate Code Section 11420 because by its own

terms Section 19001 applies to the assets of the Living Trust just as though they

were assets of the Estate.  Cal. Probate Code § 19001(b) ("Section 11420 . . . shall

be applied to the trust as it applies to a probate estate.)  In either case, given that

the claims of regular creditors of a lower priority are protected by Section 19001, it

is illogical to conclude, as Vikki and Crystal urge, that Section 19001 does not also

15

protect estate taxes owed to the United States that are entitled to a higher priority under both federal and state law.[5]

### D. Claims against Vikki and Crystal under 26 U.S.C. 6324(a)(2)

Vikki and Crystal argue that the Complaint fails to state a claim against them in any capacity under 26 U.S.C. § 6324(a)(2). (Motion at 6-13).  The government asserts that Vikki and Crystal are liable in two different capacities under this statue. First, the government assets that Section 6324(a)(2) creates personal liability of Vikki and Crystal in their individual capacities to the extent of the value of the assets in the Living Trust when they took over as trustees in 2009 and 2011, respectively.  The government also asserts that in addition to the express provision of the Living Trust for payment of the estate tax, and California Probate Code Section 19001, Section 6324(a)(2) is the federal equivalent of such liability against the original and any successor trustees in their representative capacities (i.e. trust liability) for any assets currently left in the Living Trust. Finally, the government asserts that Crystal is individually liable under Section 6324(a)(2) as a beneficiary

---

[5] The United States may use any state law remedies at its disposal to satisfy its unpaid claim for estate taxes. *United States v. Rogers*, 461 U.S. 677, 682 (1983); *Leighton v. United States,* 289 U.S. 506 (1933).  Its ability to do so is not governed or shortened by state procedural rules or state law limitations. *United States v. Summerlin,* 310 U.S. 414, 416 (1940).

16

or transferee of more than $900,000 in assets distributed to her from the Living

Trust to the extent of the value of those assets.

Although they admit being the current trustees of the Living Trust, Vikki

and Crystal argue they are not liable under Section 6324(a)(2) because they did not

receive or hold the assets as trustees on the date of Mr. Paulson's death, but instead

received those assets as trustees in 2009 and 2011, respectively.  Their argument is

that only the trustee on the date of the decedent's death can be liable under Section

6324(a)(2), no matter whether that original trustee has resigned, been replaced, or

involuntarily removed by the very heirs who took over as successor trustees.  They

also argue that no beneficiary of a trust can ever be held liable under Section

6324(a)(2). Thus, if their view were correct (it is not), a mere change in a trustee

one day after the decedent's death would allow the new trustees to freely distribute

all of the trust assets to beneficiaries without any personal liability under Section

6324(a)(2) for the new trustees or the beneficiaries.

In making these arguments, they misrepresent the clear language of Section

6324(a)(2) which provides:

> If the estate tax … is not paid when due, then the spouse, transferee,
> trustee … surviving tenant, person in possession of the property by
> reason of the exercise of a power of appointment, or beneficiary, who
> receives, or has on the date of the decedent's death, property included
> in the gross estate under sections 2034 to 2042, inclusive . . .

26 U.S.C. § 6324(a)(2).

17

1    Here, the words "or has" are modified and limited by the words "on

2    the date of the decedent's death," but the word "receives" is not modified or

3    limited to any date restriction.  Indeed, it would make no sense to require an

4    immediate receipt of non-probate property included in the gross estate as a

5    condition of liability under Section 6324(a)(2) because no life insurance

6    company ever pays the beneficiary of a life insurance policy before the

7    decedent's death or immediately on the date of the decedent's death.  Yet,

8    Vikki and Crystal cite cases that have held that Section 6324(a)(2) and its

9    predecessor Section 827(b) of the 1939 Internal Revenue Code apply only to

10   those persons who, on the date of the decedent's death, received or held

11   assets that were included in the gross estate under Section 2038.

12       These cases are wrongly decided.  First, these cases wrongly refuse to

13   recognize the well drafted and grammatically correct use of commas to separate

14   the two phrases "received" and "or held on the date of the decedent's death".  The

15   best example of this disregard for the clear and unambiguous syntax of the statute

16   is found in *Englert v. Comm'r*, 32 T.C. 1008 (1959) where the court omitted the

17   comma in its analysis of the statute, "the statute provides that the person to be held

18   as personally liable is the person who receives, or has on the date of the decedent's

19   death the property included in the gross estate under section 811(b) to (g),

18

1  inclusive." *Id.* at 1015.  However, in footnote 4 of that opinion, the court correctly

2  quoted the statute as containing the comma its analysis omitted.

3         If the tax herein imposed is not paid when due, then the spouse,
4         transferee, trustee, surviving tenant, person in possession of the
5         property by reason of the exercise, nonexercise, or release of a power
6         of appointment, or beneficiary, ***who receives, or has on the date of***
7         ***the decedent's death,*** property included in the gross estate under
8         section 811(b), (c), (d), (e), (f), or (g), to the extent of the value, at the
9         time of the decedent's death, of such property, shall be personally
10        liable for such tax. * * *

11
12  *Id.* at n. 4 (emphasis in bold italics).[6]  Although *Englert* purports to rely on an

13  earlier decision of the Eight Circuit in *Higley v. Comm'r*, 69 F. 2d 106 (1934) for

14  this grammatical blunder, *Higley* dealt with former Section 315(b) of the 1926

15  Internal Revenue Code which contained entirely different language:

16        If (1) the decedent makes a transfer, by trust or otherwise, of any
17        property in contemplation of or intended to take effect in possession
18        or enjoyment at or after his death (except in the case of a bona fide
19        sale for an adequate and full consideration in money, or money's
20        worth) or (2) if insurance passes under a contract executed by the
21        decedent in favor of a specific beneficiary, and if in either case the tax
22        in respect thereto is not paid when due, then the transferee, trustee, or
23        beneficiary shall be personally liable for such tax . . .

24
25  *Higley*, 69 F.2d at 162.  It is only from this mistaken blindness to an entirely

26  different and unambiguous grammatical syntax used by Congress in Section 827(b)

---

[6] It is also instructive to note that former section 811 had six categories of non-probate assets and six matching categories of persons to be held liable.

19

of the 1939 Code and Section 6324(a)(2) of the 1954 and 1986 Codes, that *Englert*

and the courts like *Johnson* which have followed it, can arrive at the conclusion

that Section 6324(a)(2) applies only to persons who "on the date of death" held or

legally received included non-probate assets.   This mistake is also the foundation

for these courts mistakenly concluding that the statute is ambiguous, and must be

therefore interpreted narrowly against the government.  *Garrett v. Comm'r*, T.C.

Memo. 1994-70, 1994 WL 52379, * 13 (U.S. Tax Ct. 1994); *Johnson*, 2013 WL

3924087 at *5.

          Second, these cases wrongly jump to the conclusion that Section 6324's

predecessor statutes are the same as Section 6324(a)(2) and that amendments by

Congress did not broaden a statute that originated as two categories of personal

liability (transferees and life insurance beneficiaries)[7] and then went to six

categories of non-probate asset inclusion and six perfectly matching categories of

persons held liable,[8] to the modern Section 6324(a)(2) that now includes nine

categories of non-probate assets combined into six categories of persons who are

personally liable.

---

[7] Former Section 315(b) of the 1926 Code.  *See Higley v. Comm'r*, 69 F. 2d 160,
162 (8th Cir. 1934)

[8] Former Section 827(d) of the 1939 Code.  *See Englert*, 32 T.C. 1008 (1959).

Although Crystal does not dispute that she received more than $900,000 in distributions from the Living Trust while the estate tax remained unpaid (Complaint at ¶¶36), she argues that the Complaint fails to state a claim against her a matter of law under Section 6324(a)(2) as a beneficiary of the Living Trust.

In making this argument she relies on the same line of wrongly decided cases. These cases incorrectly assume that the current version of Section 6324(a)(2) is ambiguous by looking back at the history of the statute, and presuming incorrectly during a time when Section 6166 deferred payouts for 15 years were not part of the Internal Revenue Code, that Congress intended to construe personal liability narrowly in light of another presumption that the government was fully protected with tax liens. *Garrett v. Comm'r*, T.C. Memo. 1994-70, 1994 WL 52379 (1994) makes many of these unfounded assumptions and presumptions. *Garrett* finds ambiguity in Section 6324(a)(2) merely by assuming without any support that Congress did not want to impose potential personal liability on <u>both</u> trustees and beneficiaries. *Id.* at *13. *Garrett* also presumed hardship on beneficiaries without any basis and without considering the fact that the liability applies only if they receive a distribution of assets. *Id*. at *13. *Garrett* also presumed protection of the government's interest with tax liens without any analysis of the ineffective nature of those tax liens – especially in cases involving deferred payments over 15 years under Section 6166 where the estate tax lien lasts

21

only 10 years from the date of death.  *Id*. at *13.  Finally, it is only by assuming ambiguity that Garret can follow *Higley* in construing the statute narrowly against the government.  *Id.* at *13.  However, ambiguity never exists when a statute like Section 6324(a)(2) is clear on its face.

Moreover, all of these cases attempted to find symmetry in the categories of non-probate assets listed in Sections 2034 through 2042 with the categories of transferees listed in Section 6324(a)(2) to reach the conclusion that the word beneficiary in Section 6324(a)(2) refers only to a beneficiary of a life insurance policy included in the gross estate under Section 2042, but not to a beneficiary of a living trust that was included in the gross estate under Section 2038.  As discussed above, the progression from former Section 315(b) of the 1926 Code with two categories, to six matching categories in former Section 827(b) of the 1939 Code, to the current mismatch of six categories and nine non-probate inclusion statutes in current 1954 and 1986 Code is far from the kind of symmetry that lends itself to inferring any sort of legislative intent.

Here it is important to note that the *Johnson* decision[9] is still pending without the opportunity for the United States to appeal that interlocutory order.

_____

[9] *United States v. Johnson*, 112 AFTR 2d 2013-5474 (D. Utah, July 29, 2013), amending 109 AFTR 2d 2012-2253 (D. Utah, May 23, 2012).

1    Furthermore, other cases from the Tax Court have upheld the government's

2    interpretation of Section 6324(a)(2) to include beneficiaries of trusts that are

3    included in the gross estate.  In *Estate of Mangiardi v. Commissioner*, T.C. Memo.

4    2011-24, 2011 WL 280925, *aff'd* 442 Fed. Appx. 526, 2011 WL 4835854 (11th

5    Cir. 2011), the court held that the IRS did not abuse its err as a matter of law in

6    rejecting an estate's offer in compromise for a smaller amount when the IRS

7    included the additional value it could recover from beneficiaries of a living trust

8    and IRA accounts.  These were not beneficiaries of life insurance policies as

9    Pickens view of the law would require.

10        Similarly, at least one district court reached a result different from *Johnson.*

11   In *United States v. Bevan*, 2008 WL 5179099 at *6-8 (E.D. Cal. 2008), *adopted*

12   2009 WL 151136 (E.D. Cal. 2009), the government brought a similar suit under 26

13   U.S.C. § 6324(a)(2) to impose personal liability for a portion of the unpaid estate

14   taxes on a trustee (Bevan) and beneficiaries (Bevan and Kimball) of a living trust

15   that had been included in the decedent's gross estate.  There, the District Court for

16   the Eastern District of California imposed personal liability on the trust's

17   beneficiaries under Section 6324(a)(2) for the value of the assets distributed to

18   them from the trust several years after the decedent's death.  The court also

19   imposed personal liability personal liability under Section 6324(a)(2) on the trustee

23

of that living trust for the value of the assets it held on the date of the decedent's death.

Finally, as a matter of statutory construction, it is possible that Congress intended the word "beneficiary" in Section 6324(a)(2) to mean both life insurance beneficiary and beneficiaries of trusts included in the gross estate under Section 2038 when there are 9 categories of assets referred to in Sections 2034 through 2042 and only 6 categories of recipients referred to in Section 6324(a)(2).[10] Following the Tax Court's own logic of symmetry between Sections 2034 through 2042 and the categories listed in Section 6324(a)(2), the number of the categories of transferees in Section 6324(a)(2) should be the same as the number of non-probate statutes triggering the inclusion of those assets in the decedent's gross estate.  However, symmetry does not exist and some of the categories listed in Section 6324(a)(2) must include more than one type of recipient.  For example, it is clear that the Section 6324(a)(2) includes different kinds of trustees because the parenthetical excludes trustees of 401(a) employee trusts of as one of the types of trustees that may be liable.  Under this view, the word "beneficiary" or the word "transferee" could easily include a beneficiary of a trust included in the gross estate

---

[10] The same can be said for the possibility that the word "transferee" in Section 6324(a)(2) includes more than one type of recipient.

who subsequently receives distributions from that trust while the estate tax remains

unpaid.  Additionally, as pointed out by Madeleine Pickens in her Reply on her

Rule 12(b)(6) Motion (Dkt. 25), *Mangiardi v. Commissioner*, is an example of a

court concluding that Section 6324(a)(2) can apply to a "beneficiary" of an annuity

(the IRA) which would have been included in the decedent's gross estate under

Section 2039 for annuities, but not under Section 2042 for life insurance proceeds.

(Pickens Reply, Dkt. 25 at 5-7).

If one wants symmetry, one need only look to the estate tax lien under

Section 6324(a)(1).  Congress clearly did not insulate beneficiaries who receive

assets from a trust from the special estate tax lien under Section 6324(a)(1).  That

lien is not required to be filed in the public record and provides exceptions only for

good faith purchasers and good faith lenders.  If a beneficiary of a trust receives a

distribution of trust assets that have been included in the gross estate under Section

2038, and then re-transfers them to a good faith purchaser, Section 6324(a)(1)

impose a "like lien" on all of that beneficiary's personal assets regardless of

whether they ever belonged to the decedent in the first place.  The result is

personal liability of the beneficiary that is the same, or broader, than the personal

liability the government seeks under Section 6324(a)(2).  Therefore, Section

6324(a)(1) makes it clear that Congress also intended the United States to be able

to reach the personal assets of a trust beneficiary under Section 6324(a)(2).

25

1

2    V.    <u>Conclusion</u>

3         For the reasons stated above, Vikki Paulson and Crystal Christensen's Rule

4    12(b)(6) Motion to Dismiss the United States' Complaint must be denied.

5

6                          /s/ Andrew L. Sobotka
7                          ANDREW L. SOBOTKA
8                          Texas State Bar No. 18819900
9                          MOHA P. YEPURI
10                         Texas State Bar No. 24046651
11                         Attorneys, Tax Division
12                         U.S. Department of Justice
13                         717 N. Harwood St., Suite 400
14                         Dallas, Texas 75201
15                         (214) 880-9767
16                         (214) 880-9741 (Facsimile)
17                         Attorneys for United States
18                         Andrew.L.Sobotka@usdoj.gov
19                         Moha.P.Yepuri@usdoj.gov
20
21                         ATTORNEYS FOR THE UNITED STATES
22

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on December 21, 2015, a copy of the United States' Response in Opposition to Vikki Paulson and Crystal Christensen's Rule 12(b)(6) Motion to Dismiss was served electronically on the following using the Court's ECF system:

Joshua A. Mandell
Ackerman LLP
725 South Figueroa Street, 38th Floor
Los Angeles, CA 90017-5433
Phone: (213) 688-9500
Fax: (213) 627-6342
Joshua.mandell@ackerman.com

Donald N. David
666 Fifth Avenue, 20th Floor
New York,  NY 10103
Phone: (212) 880-3800
Fax: (212) 880-8965
Donald.david@ackerman.com

Glen A. Stankee
Ackerman LLP
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
Phone: (954) 463-2700
Fax: (954) 463-2224
Glen.stankee@ackermann.com
           Attorneys for Madeleine Pickens

Jeremy Gray
Zuber Lawler & Del Duca LLP
777 S. Figueroa Street • 37th Floor
Los Angeles, CA 90017
Phone: (213) 596-5620
Fax: (213) 596-5621
jgray@zuberlaw.com
www.zuberlaw.com
           Attorneys for Vikki Paulson and Crystal Christensen

27

And by mailing a copy to the following parties whose time to answer or appear has not yet expired:

LEIGHTON R. KOEHLER
FabianVanCott
601 South Tenth Street, Suite 204
Las Vegas, NV  89101
Phone: (801) 323-2244
lkoehler@fabianvancott.com
www.fabianvancott.com

Attorney for John Michael Paulson


Jeff Greenwald
Greenwald & Greenwald
23901 Calabasas Rd Suite 2013
Calabasas, CA 91302
Phone: (818) 876-1800
jeff@greenwaldlaw.org

Attorney for James D. Paulson

/s/ Andrew Sobotka
Andrew Sobotka

28