JEREMY J. GRAY (SBN 150075)
*jgray@zuberlaw.com*
**ZUBER LAWLER & DEL DUCA LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California 90017
Telephone:  (213) 596-5620
Facsimile:  (213) 596-5621

Attorneys for Defendants
Vikki  E. Paulson and
Crystal L. Christensen

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 15CV2057 AJB NLS |
| Plaintiff, | [Assigned to Hon. Anthony J. Battaglia - Courtroom 3B] |
| v. | |
| JOHN MICHAEL PAULSON, as the Executor or Statutory Executor of the Estate of Allen E. Paulson, and Individually; | **DEFENDANTS VIKKI E. PAULSON AND CRYSTAL L. CHRISTENSEN'S REPLY TO UNITED STATES OF AMERICA'S RESPONSE TO MOTION TO DISMISS [FRCP 12(b)(6)]** |
| JAMES D. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson; | |
| VIKKI E. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Allen E. Paulson Living Trust, and Individually; | Date:  January 21, 2016
Time:  2:00 p.m.
Place:  Courtroom 3B
        221 West Broadway
        San Diego, California 92101 |
| CRYSTAL CHRISTENSEN, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Allen E. Paulson Living Trust, and Individually; | |
| MADELEINE PICKENS, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Marital Trust created under the Allen E. Paulson Living Trust, as Trustee of the Madeleine Anne Paulson Separate Property Trust, and Individually; | Complaint Filed: September 16, 2015 |
| Defendants. | |

## I.   PRELIMINARY STATEMENT

1   
2   The flawed leap of logic that permeates, and infects, much of the
3   Government's Response is the notion that the mere existence of unpaid estate taxes
4   necessarily means that the Government must possess a claim against Vikki Paulson
5   and Crystal Christensen ("Defendants" or "Co-Trustees").  Yet the Government
6   admits in its discussion of the "statutory scheme for collecting estate taxes" that it
7   possessed, and lost over time, a variety of tools which it could have used to collect
8   the estate taxes from the Estate of Allen E. Paulson ("Allen") ("Estate").  (Doc. 27
9   at 3-8.)  The Co-Trustees do not highlight the Government's inaction to invoke the
10  doctrine of "laches" (as the Government wrongly asserts) but rather to explain that
11  the Government's delay has left it scrambling (unsuccessfully) to find a viable
12  claim against the Co-Trustees.

13  For example, the Government argues that the creation of a "statutory
14  executor" is "*necessary* to reduce the estate tax liability to a judgment" as if this
15  assertion is enough to carry the day.  (Doc. 27 at 9:17-20 (emphasis added).)  The
16  fact that the Government believes something is "necessary" does not, itself, create a
17  viable claim.  Nor does this belief alter the fact that, under California Probate Code
18  Section 2003, Michael Paulson was "appointed" and "qualified" as the Executor for
19  the Estate of Allen E. Paulson ("Allen") and thus there is no legal basis to assign
20  anyone else the role as "statutory executor."  The Government does not, and cannot,
21  cite this Court to any authority that Michael's purported "resignation" can somehow
22  transform everyone with any of Allen's property into an executor.

23  The Government purports to assert a third party beneficiary claim against the
24  trust (via the Co-Trustees), without ever citing this Court to any authority affirming
25  the viability of this cause of action.  The Government simply ignores that trusts are
26  not traditional contracts, but rather creatures of statute which are not susceptible to
27  the common law claims that the Government seeks to assert.

28  In a similar vein, the Government attempts to defend its claim under Section

1  19001 of the California Probate Code by citing sections of the Code which assign
2  high "priority" to claims for unpaid taxes as if this is enough to create a claim
3  against the Co-Trustees *in the first instance*. (Doc. 27 at 15-16.) The only
4  provision of the Probate Code which operates to activate a claim is Section
5  19001(a) which, by its express and defined terms, ***does not create a claim against***
6  ***the property of a trust for unpaid estate taxes***. However, the statutes which speak
7  to the priority of claims do not create claims and cannot provide a basis for suit
8  against the Co-Trustees.

9      Furthermore, the Government suggests that its reading of Section 6324(a)(2)
10 is required because the Government's liens are not always "effective." (Doc. 27 at
11 6.) Again, the Government's desire to now rely upon Section 6324(a)(2) does not
12 mean that its interpretation of the Statute should be accepted or applied to the Co-
13 Trustees. And in fact, the Government's discussion of Section 6324(a)(2), and in
14 particular the effect of the placement of a "comma" within the statutory language,
15 only highlights that, at a minimum, the syntax of Section 6324(a)(2) **is ambiguous**
16 **and must be interpreted in favor of the Co-Trustees**. The Government also
17 ignores that Congress excluded the "transferred by a transferee" language from the
18 portion of Section 6324(a)(2) at issue here, which provides compelling evidence of
19 Congress' desire to limit claims to persons receiving property on the date of death.

20 **II.    THE COMPLAINT FAILS TO STATE ANY CAUSE OF ACTION**
21      **A.    *Defendants Are Not Statutory Executors***
22      The Government's bare allegation that Michael purported to "resign" as the
23 executor cannot, as a matter of law, trigger the application of Probate Code Section
24 2203 to somehow transform others into "statutory executors." 26 U.S.C. 2203. The
25 Government concedes, as it must, that Michael Paulson was "appointed" and
26 "qualified" as the Executor of Allen's estate. (Doc. 1 at ¶ 23.) This admission, as
27 discussed below, forecloses any claim against the Co-Trustees under Section 2203.
28

## 1.   *The Government Misreads Section 2203.*

The Government suggest, without citing a single case, that Section 2203 means that when an "appointed and qualified" executor resigns that anyone in possession of decedent's property is suddenly burdened with the fiduciary obligations of an executor (including the duty to pay estate taxes). (Doc. 27 at 9-12.) This reading of the Section 2203 is inconsistent with its plain language, and with the responsibilities of an executor within the Government's own statutory scheme. (Doc. 27 at 3-7.)

By the *plain language* of Section 2203, a "statutory executor" can only be created if there is "no executor or administrator appointed, qualified and acting within the United States." 26 U.S.C. § 2203.  The Government admits that Michael was "appointed" as the Executor. (Doc. 1 at ¶ 23.)  The Government cannot now dispute that Michael was "qualified" insofar as the Government alleges Michael filed the tax return on behalf of the Estate, negotiated and litigated against the Government over the amount owed, and paid several million dollars in taxes. (*See, e.g.,* Doc. 1 at ¶¶ 23, 26, 27, 29, 32, & 33.)  There is also no question that Michael was "acting within the United States."  The word "acting" in Section 2203 does not stand alone, but rather modifies the phrase "within the United States."  *United States v. Sinclair*, 347 F. Supp. 1129 (D. Del. 1972) (discussing whether a Canadian domiciliary executor was "acting within the United States.").  Thus, the Government cannot claim that Michael's purported and ineffective "resignation" somehow triggers Section 2203 because he has stopped "acting."  Because Michael was "appointed" and "qualified" as the Executor, there is no statutory basis to invoke the language in Section 2203 which creates a "statutory executor."

The Government's reading of Section 2203 also flies in the face of its own description of the "statutory scheme" for collecting estate taxes. (Doc. 27 at 3-7); *Unites States v. Fiorillo*, 186 F.3d 1136, 1146 (9th Cir. 1999) (a statute must be read in a manner consistent with the scheme in which it resides).  According to the

1  Government's description of this statutory scheme, the Executor files the estate tax
2  return and is rendered "primarily liable" for the payment of the estate taxes.  (Doc.
3  27 at 6:8-14.)  Section 2002 flatly provides "[t]he tax imposed by this chapter shall
4  be paid by the executor."  26 U.S.C. § 2202.  Within the context of these laws, the
5  Government admits that the "executor of the probate estate" is "primarily liable to
6  pay the estate tax."  (Doc. 27 at 6:8-14.)

7        The Government's reading of Section 2203 turns this statutory scheme on its
8  head.  According to the Government, an executor's mere announcement that he is
9  resigning absolves him of his "primary" responsibility to pay the estate taxes and
10  shifts it to a variety of other individuals who become "statutory executors" and who
11  would otherwise would only possess such liability if they met the specific
12  requirements of Section 6324(a)(2).  The Government's suggestion that an
13  executor's announced resignation can absolve him of his obligations, and transfer
14  them to others, is inconsistent with Section 2202's requirement that an appointed
15  and qualified executor must pay the estate taxes, and remains primarily liable to do
16  so.  The imposition of "statutory executor" responsibilities on individuals, years
17  after they acquired property of the decedent, is inconsistent with Section 6324(a)(2)
18  which provides that, in only certain, defined, circumstances, limited obligations to
19  pay estate taxes may be imposed upon recipients of property from the estate.  26
20  U.S.C. 6324(a)(2).

21        The more rational and consistent reading of Section 2203 is that the concept
22  of a "statutory executor" is only intended where, in the first instance, there is no
23  executor ever appointed or qualified.  Notably, the Government does not cite any
24  case where Section 2203 has been invoked upon the resignation of an "appointed
25  and qualified" executor.  And the Co-Trustees have only found cases invoking
26  Section 2203 when no executor was ever appointed in the first instance.  *See, e.g.,*
27  *DeNiro v. United States*, 561 F.2d 653, 657 (6th Cir. 1977) (imposing "statutory
28  executor" status on the sons of a decedent, who received property from an estate

1  when no executor had ever been appointed.)

2      **2.   *The Government Has Not Alleged That Michael Resigned.***

3      The Government does not even address, much less refute Co-Trustees'
4  argument that under California law an executor cannot be absolved of his or her
5  responsibilities unless they have provided the Probate Court with an accounting.
6  (Doc. 19-1 at 7 citing Cal. Prob. Code § 8525(b).)  Thus, the Government does not,
7  and cannot, allege that Michael has been absolved of his position as an "appointed"
8  and "qualified" executor.  In this regard, Co-Trustee join in Madeleine Pickens'
9  Request for Judicial Notice of the probate record *In re the Matter of the Estate of*
10 *Allen E. Paulson.*  (Doc. 25 at 3-4). The docket reveals no record of any attempt by
11 Michael to resign, to provide the required "accounting", much less reveal an Order
12 by the Court removing Michael as the "appointed" and "qualified" executor.

13     Even if this Court accepts the Government's reading of Section 2203, the
14 Government has not alleged that Michael is no longer appointed, or qualified as the
15 Executor.

16     **B.   *The Government Is Not A Third Party Beneficiary.***

17     The Government does not cite this Court to a single case where the
18 Government has been permitted to proceed to collect estate taxes from a ***trust*** based
19 on the theory that it is a third party beneficiary.  (Doc. 27 at 12-13 citing *Martinez v.*
20 *Socoma Co., Inc.*, 11 Cal. 3d 394, 400-401 (1974) (case involving a garden variety
21 contract and not a trust); *Outdoor Servs., Inc. v. Pabagold, Inc.*, 185 Cal. App. 3d
22 676, 681 (1986) (same); and the Restatement (Second) of Contracts (same).)  It is
23 true that California once described a trust as a "contract" in former Civil Code
24 section 2218 but that statute was repealed in 1986.  *McArthur v. McArthur*, 224 Cal.
25 App. 4th 651, 662, 168 Cal. Rptr. 3d 785 (2014) (noting that the court in *Estate of*
26 *Bodger* 130 Cal. App. 2d 416, 425, 279 P. 2d 61 (1955) had described a trust as a
27 "third party beneficiary" contract relying on California Civ. Code § 2218; such
28 reasoning was no longer good law because Section 2218 was repealed in 1986.)

1    Trusts in California are creatures of statute and are governed by much

2  different laws, regulations and decisions than are garden variety contracts. *See e.g.*,

3  Cal. Prob. Code, §§ 16401, 16420, 16421, 17000, & 17200. The Government,

4  itself, highlights the unique nature of claims against trusts when it cites California

5  Probate Code Section 19001 which identifies which creditors, holding what claims,

6  may proceed against a trust. Cal. Prob. Code §§ 19000 et seq.

7    The rules governing the respective rights of action of trustees, beneficiaries

8  and other third parties regarding trusts are not the same as those generally

9  applicable to promises and third party beneficiaries. 4 Witkin, Cal.Procedure,

10  Pleading, § 117, at p. 153. The California Supreme Court has stated that "Section

11  1559 of the Civil Code, providing that a contract made expressly for the benefit of a

12  third person may be enforced by him at any time before the parties thereto rescind

13  it, has no application to [a] case where a trust has been created in favor of such third

14  person. Such trust is governed by the provisions of the code with reference to

15  trusts." *National Bank v. Exchange Nat. Bank* 186 Cal. 172, 180, 199 P. 1(1921).

16  Moreover, the general right of a third party beneficiary to sue on a contract made

17  expressly for his or her benefit has no application where a trust has been created in

18  favor of that party, and the contract in question is between the trustee and an agent

19  of the trustee. *National Bank*, 186 Cal. at 180.  To the contrary, the Probate Code

20  clearly manifests the Legislature's intent to vest the exclusive subject matter

21  jurisdiction for all proceedings concerning the internal affairs of trusts in the

22  probate department, and establishes the specific remedies and procedures for trust

23  beneficiaries. Cal. Prob. Code, §§ 16401, 16420, 16421, 17000, 17200.  To permit

24  a third party beneficiary cause of action against the Co-Trustees in this action,

25  parallel to the comprehensive remedies and procedures established by the Probate

26  Code, would run counter to the clear legislative intent to make the Probate Code and

27  the probate department the exclusive arbiter of these kinds of trust disputes. *Saks v.*

28  *Damon Raike & Co.*, 7 Cal. App 4th 419, 431, 8 Cal. Rptr. 2d 869 (1992).

**C.    Section 19001 Does Not Apply To The Government's Claims.**

The Government concedes that it sued the Co-Trustees under Section 190001, that this statute only uses the word "claims," and that the word "claims" is limited to pre-death tax obligations. (Doc. 27 at 13-14). The Government's attempts to salvage this claim should all be rejected.

**1.    Estate Taxes Are Not An "Expense of Administration"**

The Government attempts to resuscitate this claim by suggesting that estate taxes are encompassed by the phrase "expenses of administration" within Section 19001. (Doc. 27 at 13.) However, as a matter of statute, and history, "expenses of administration" and "estate taxes" are, and have, been viewed as two separate items.

As a matter of statutory construction, for example, the California probate code, in defining "debt" distinguishes between an "expense of administration" and "taxes". Cal. Prob. Code § 11401 (a)-(c). If, as the Government suggests, the "expenses of administration" included "taxes" there would have been no need for the California legislature to create separate categories (b) and (c).

California distinguishes between estate taxes and expenses of administration. When California had a state inheritance tax, the Probate Code contained separate sections to define and account for estate taxes, debts of the decedent, and expenses of administration. In *Estate of Fabris*, the court observed that "[f]rom the very beginning of the Inheritance Tax Acts to date, estate taxes have been considered separately from ordinary expenses of administration." *Estate of Fabris*, 200 Cal. App. 2d 408, 416, 19 Cal. Rptr. 397 (1962).

This distinction is consistent with the description of administration expenses in Federal case law, the Internal Revenue Code and the Treasury Regulations. "[E]state, succession, legacy, or inheritance taxes" are specifically excluded from the definition of administration expenses under 26 U.S.C. 2053(c)(1)(B). The corresponding Treasury Regulations define administration expenses as "(1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses" and

1 explicitly distinguish between expenses of administration and taxes ("Expenses for
2 selling property of the estate are deductible to the extent permitted by § 20.2053-1 if
3 the sale is necessary in order to pay the decedent's debts, expenses of
4 administration, or taxes, to preserve the estate, or to effect distribution."). 26 C.F.R.
5 § 20.2053-3(a),(d)(2) (emphasis added).
6      Accordingly, the expenses of administration are not estate taxes.
7           **2.    *The Government's "Priority Of Claims" Arguments Fail.***
8      The Government ignores that this Motion challenges that Government can
9 assert any claim against the Co-Trustees under Section 19001 in the first instance.
10 Instead, the Government directs this Court to California Probate Code provisions
11 which address the priority of viable claims.  (Doc. 27 at 14-15 (citing Cal. Prob.
12 Code § 11420.))  However, the only statute cited by the Government, *which creates*
13 *a claim against the trust corpus*, is Section 19001 which provides in sub-part (a)
14 "[u]pon the death of a settlor, the property of the deceased settlor that was subject to
15 the power of revocation at the time of the settlor's death *is subject to* the claims of
16 creditors of the deceased settlor's estate . . .."  Cal. Prob. Code § 19001 (emphasis
17 added).  "Claims" is a defined term which does not include estate taxes.  Cal. Prob.
18 Code § 19000(a)(2).
19      None of the other provisions of the California Probate Code cited by the
20 Government, which concern the priority of claims against a trust, actually provide
21 the basis for a claim.  The fact that the Probate Code says that a particular species of
22 claim has "priority," does not create a viable claim in the first instance.   Because
23 estate taxes are excluded from the only Probate statute cited by the Government that
24 potentially creates a claim, this cause of action should be dismissed.
25      **D.    *The Defendants Are Not Liable Under Section 6324(a)(2).***
26      The Government's discussion of the nuances of Section 6324(a)(2) -- and
27 especially whether the placement of a comma effects its meaning -- serves only to
28 highlight that, at minimum, the statute is ambiguous and must be read in favor of

1  the Co-Trustees. (Doc. 27:16-25.) *Miller v. Standard Nut Margarine Co.*, 284 U.S.

2  498, 508 (1932) ("It is elementary that tax laws are to be interpreted liberally in

3  favor of taxpayers and that words defining things to be taxed may not be extended

4  beyond their clear import. ***Doubts must be resolved against the Government and***

5  ***in favor of the taxpayer***." (emphasis added).)

6        Moreover, the Government does not even address, much less refute, the fact

7  that, in part two of the statute Congress expressly applied the law to persons who

8  *receive* property after the date of death by using the language "transferred by a

9  transferee." (Doc. 19-1 at 12-13.) 26 U.S.C. § 6324(a)(2). If Congress intended

10  Section 26 U.S.C. 6324(a)(2) to apply to persons receiving property after the date of

11  death, as the Government contends, surely Congress would have simply used the

12  same "transferred by a transferee" language which appears later in the same statute.

13  The absence of the "transferred by a transferee" language from the first part of

14  Section 6324(a)(2) is the most reliable indication that Congress intended to limit the

15  scope of the first half of the statute to persons receiving property on the date of

16  death. *See, e.g., In Re Wi*, 71 F. Supp. 2d 1052, 1055 (D. Hawaii 1999) ("A rule of

17  statutory construction provides that the expression of one or more items of a class

18  indicates an intent to exclude all items of the same class which are not expressed.")

19  The fact that Congress expressly excluded "transferees of transferees" from the

20  portion of Section 6324(a)(2) at issue here is powerful evidence of an intent to limit

21  the scope of the rule to those receiving property on the date of death.

22        The lynchpin of Government's reading of Section 6324(a)(2) is its assertion

23  that the inclusion of life insurance beneficiaries in the enumerated categories of

24  persons means that Section 6324(a)(2) cannot be limited to the date of death

25  because such proceeds are paid by insurance companies later in time. (Doc. 27 at

26  18.) Of course the Government ignores the fact that the property rights in the

27  proceeds of life insurance vest immediately upon the date of death. *Pimentel v.*

28  *Conselho Supremo De Uniao Portugueza Do Estado Da California*, 6 Cal. 2d 182,

186, 57 P. 2d 131 (1936).  Accordingly, the inclusion of "insurance beneficiaries" in Section 6324(a)(2) is fully consistent with the Co-Trustees' interpretation of the statute.

The Government's remaining arguments repeat those made in its Response to Madeleine Pickens, and the Co-Trustees join in the arguments made by Ms. Pickens in her Reply.  (Doc. 25 at 5-7.)

## III.  CONCLUSION

For the reasons discussed above, all claims against Vikki and Crystal should be dismissed.

Dated: December 28, 2015          Respectfully submitted:

**ZUBER LAWLER & DEL DUCA LLP**
JEREMY J. GRAY


By: /s/ *Jeremy J. Gray*
Attorneys for Defendants Vikki  E. Paulson
and Crystal L. Christensen

1    <u>PROOF OF SERVICE</u>

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3          At the time of service, I was over 18 years of age and **not a party to this action.**  I am
employed in the County of Los Angeles, State of California.  My business address is 777 S.
4    Figueroa Street, 37th Floor, Los Angeles, California 90017   USA.

5          On December 28, 2015, I served true copies of the following document(s) described as  on
the interested parties in this action as follows:
6

7                       **SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I caused said document(s) to be served
8    by means of this Court's electronic transmission of the Notice of Electronic Filing through the
Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set
9    forth in the service list obtained from this Court.

10         I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct and that I am employed in the office of a member of the bar of this
11   Court at whose direction the service was made.

12         Executed on December 28, 2015, at Los Angeles, California.

13

14                                                       _____
15                                                       Yvonne Shawver

16

17

18

19

20

21

22

23

24

25

26

27

28

1856-1009 / 439969.1

1

## SERVICE LIST

2 | Andrew L. Sobotka
Moha P. Yepuri
3 | U.S. Department of Justice
717 N. Harwood Street, Suite 400
4 | Dallas, TX 75201
Tel: 880-9736/9767
5 | Fax: 880-9741
Email: Andrew.L.Sobotka@usdoj.gov
6 | Moha.P.Yepuri@usdoj.gov
Attorneys for Plaintiff United States of
7 | America

Joshua R. Mandell
Akerman LLP
725 South Figueroa Street, 38th Floor
Los Angeles, CA 90017
Tel: 213-688-9500
Fax: 213-627-6342
Email: joshua.mandell@akerman.com
Attorneys for Defendant Madeleine Pickens

8 | Donald N. David
Akerman LLP
9 | 666 Fifth Avenue, 20th Floor
New York, NY 10103
10 | Tel: 212-880-3800
Fax: 212-880-8965
11 | Email: donald.david@akerman.com
Attorneys for Defendant Madeleine Pickens

Glen A. Stankee
Jason Oletsky
Akerman LLP
350 East Las Olas Boulevard, Suite 1600
Ft. Lauderdale, Fl Suite 1600
Ft. Lauderdale, FL 33301
Tel: 954-463-2700
Fax: 954-463-2224
Email: glen.stankee@akerman.com
jason.oletsky@akerman.com
Attorneys for Defendant Madeleine Pickens

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1856-1009 / 439969.1