JEREMY J. GRAY (SBN 150075)
  *jgray@zuberlaw.com*
MICHELE M. DESOER (SBN 119667)
  *mdesoer@zuberlaw.com*
**ZUBER LAWLER & DEL DUCA LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California 90017
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendants and Cross-Defendants
Vikki E. Paulson and Crystal E. Christensen

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN MICHAEL PAULSON, as the Executor or Statutory Executor of the Estate of Allen E. Paulson, and Individually;<br><br>JAMES D. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson;<br><br>VIKKI E. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson, as Living Trust, and Individually;<br><br>CRYSTAL CHRISTENSEN, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Allen E. Paulson Living Trust, and Individually;<br><br>MADELEINE PICKENS, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Marital Trust created under the Allen E. Paulson Living Trust, as Trustee of the Madeleine Anne Paulson Separate Property Trust, and Individually;<br><br>          Defendants. | CASE NO. 15CV2057 AJB NLS<br>[Assigned to Hon. Anthony J. Battaglia - Courtroom 3B]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CROSS-CLAIM**<br><br>Date: March 24, 2016<br>Time: 2:00 P.M.<br>Place: Courtroom 3B<br><br>[Filed concurrently with Notice of Motion and Motion to Dismiss and Request for Judicial Notice]<br><br>Complaint Filed: September 16, 2015 |

1  JOHN MICHAEL PAULSON,

2      Cross-Claimant,

3      v.

4  MADELEINE PICKENS individually,
   and as the Statutory Executor of the
5  Estate of Allen E. Paulson, as the
   Trustee of the Marital Living Trust, as
6  the Trustee of the Madeleine Anne
   Paulson Separate Property Trust; THE
7  ESTATE OF ALLEN E. PAULSON;
   the ALLEN E. PAULSON LIVING
8  TRUST,

9      Cross-Defendants.

10  JOHN MICHAEL PAULSON,

11      Cross-Claimant,

12      v.

13  VIKKI E. PAULSON, individually, and
    as the Statutory Executor of the Estate
14  of Allen E. Paulson, as the Trustee of
    the Allen E. Paulson Living Trust;
15  CRYSTAL CHRISTENSEN,
    individually, and as the Statutory
16  Executor of the Estate of Allen E.
    Paulson, as the Trustee of the Allen E.
17  Paulson Living Trust; THE ESTATE
    OF ALLEN E. PAULSON; the ALLEN
18  E. PAULSON LIVING TRUST,,

19      Cross-Defendants.

20

21

22

23

24

25

26

27

28

15CV2057 AJB NLS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CROSS-CLAIM

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.     INTRODUCTION ........................................................................ 1

II.    STATEMENT OF RELEVANT FACTS ...................................... 2

III.   LEGAL ARGUMENT ................................................................ 7

     A.    A Motion To Dismiss Under Rule 12(b)(6) Is Warranted,
          And Can Be Granted Without Leave To Amend, When Any
          Amendment Would Be Futile…………………………………………..8

          1.    The Court Can Consider Documents Referenced In
                 The Cross Complaint And Documents Subject To Judicial
                 Notice In Connection With This Motion………………………..8

          2.    A Rule 12(b)(6) Motion Should Be Granted Without
                 Leave To Amend When It Would Be Futile To Amend……...... 9

     B.    The I.R.S.'s Claims Against Michael Are Based On Obligations
          He Assumed as Trustee and Executor…………………….…………...10

     C.    Michael Cannot Assert Claims Against Cross-Defendants As
          Supposed Executors Because They Are Not Executors, As A
          Matter Of Law…………………………………………….........................11

          1.    The Will Does Not Contain Any Provision Affording
                 Michael Indemnity As Executor For Obligations Owed
                 To The IRS……………………………………………………...…12

          2.    Cross-Defendants Are Not Executors Of The Estate…………..12

     D.    Cross-Defendants Have No Obligation To Indemnify Michael
          For The I.R.S.'S Claims...……………………………………………14

          1.    The Narrow Indemnity Provision Does Not Afford Michael
                 Protection With Regard To The I.R.S.'s Complaint………...…..16

IV.    CONCLUSION………………………………………………………18

1

## TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Baptiste v. Commissioner*
    29 F.3d 433 (8th Cir. 1994)............................................................................10

5

*Englert v. Commissioner*
    32 T.C. 1008 (1959) ...................................................................................11

6

*Galbraith v. County of Santa Clara*
    307 F.3d 1119 (9th Cir. 2002)........................................................................9

7

8

*Johnson v. National Steel & Shipbuilding Co.*
    759 F. Supp. 606 (S.D. Cal. 1991) ...............................................................10

9

*Kanfer v. Pharmacare US, Inc.*
    No. 15–cv–0120–H–JLB, -- F. Supp. 3d --, 2015 WL 6742201 (S.D.
    Cal. Nov. 4, 2015) .........................................................................................8

10

11

*Kest v. Kest*
    132 F.3d 39 (9th Cir. 1997)..........................................................................10

12

13

*Mendiondo v. Centinela Hospital Medical Center*
    521 F.3d 1097 (9th Cir. 2008).........................................................................8

14

*Midwest Transport, Inc. v. FCE Benefit Administrators*
    No. C 07-4408 CW, 2007 WL 4357632 (N.D. Cal. Dec. 11, 2007)..............10

15

16

*Partington v. Bugliosi*
    56 F.3d 1147 (9th Cir. 1995).........................................................................10

17

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
    442 F.3d 741 (9th Cir. 2006)...........................................................................9

18

19

*Sanford v. Memberworks, Inc.*
    No. 02CV0601-LAB (JFS), 2008 WL 4482159 (S.D. Cal. Sept. 30,
    2008)...............................................................................................................8

20

21

*Schaeffer v. Gregory Village Partners, L.P.*
    105 F. Supp. 3d 951 (N.D. Cal. 2015) ...........................................................9

22

*Shalaby v. Bernzomatic*,
    No. 11cv68 AJB (POR), 2011 WL 4024800 (S.D. Cal. Sept. 9, 2011)..........10

23

24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*.
    551 U.S. 308 (2007) ..................................................................................8, 9

25

*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003)...........................................................................9

26

27

28

# FEDERAL STATUTES

26 U.S.C. § 2203 …………………………………………………………..14

26 U.S.C. § 2204(a)…………………………………………………………2,..10

26 U.S.C. § 6324(a)(2) ...................................................................10, 11, 16

31 U.S.C. § 3713...........................................................................................16

# FEDERAL RULES

Rule 12(b)(6)…………………………………………………..............8

Fed. R. Evid. 201(b)(2).................................................................................10

# CALIFORNIA STATUTES

Cal. Prob. Code § 8100...............................................................................13

Cal. Prob. Code §§ 8400, et seq…………………………………………13

Cal. Prob. Code § 8522(b) .........................................................................13

Cal. Prob. Code § 8525(b) .........................................................................13

Cal. Prob. Code § 10952.............................................................................13

Cal. Prob. Code §15684 .............................................................................14

Cal. Prob. Code § 15642(b)(1) & (5).………………………………...……17

# OTHER AUTHORITIES

Rest. (Third) Trusts §38……………………………………………………14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CROSS-CLAIM

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Former Trustee of the Allen E. Paulson Trust (the "Trust") and Executor of Allen E. Paulson's Estate (the "Estate"), Michael Paulson ("Michael"),[1] through this Cross-Complaint seeks indemnity from the Trust's *current* trustees, Vikki Paulson ("Vikki") and Crystal Christensen ("Crystal" and, collectively with Vikki, "Cross-Defendants"), for *his* failure to pay estate taxes.  *His* mismanagement of the Trust resulted in asset depletion and created illiquidity leaving the Trust unable to meet its financial obligations to the Internal Revenue Service ("I.R.S.") and the Trust's beneficiaries.  This failure, in turn, resulted in acceleration of the Estate's tax payments as well as the accrual of massive interest and penalties.

Michael's requests for indemnity are not well taken for several reasons.

First, his claims against Cross-Defendants as supposed executors of the Estate are misplaced because they are *not* executors of the Estate.  They have never sought appointment and have not been so appointed by any court.  To the contrary, *Michael* remains the sole appointed and approved executor of the Estate.  He never completed his resignation as Executor, as a matter of law.  Thus, Cross-Defendants are not appropriate parties from whom he can seek indemnity from the Estate.

Second, to the extent that Michael ever had a right to indemnity from Cross-Defendants in their capacity as Trustees, in a 2013 Settlement Agreement he released any and all "claims, property, rights, debts, liabilities, demands, obligations, losses, damages, penalties, contracts, covenants, fees, costs, expenses" that he might have against them in their individual and representative capacities. *See* Cross-Defendants' Request for Judicial Notice and Incorporation of Documents by Reference filed herewith ("RJN")), Exh. A, p.11, ¶13.]  When the parties put the

---

[1]      Cross-Defendants use first names not out of lack of respect, but due to ease confusion resulting from some of the parties' identical last names.

terms of the settlement on the record before the Probate Court, they *explicitly confirmed* that the parties would be "on their own" with regard to any claims by the I.R.S., and Michael agreed *on the record* that he understood those terms. *See, infra*, pp.4-5.

Third, the only exception to this broad release, is the extremely narrow language in paragraph 15 that Michael cites in his pleading, but from which he omits some crucial language; specifically, this provision *only* required Cross-Defendants to indemnify him for claims brought by the IRS "*solely arising from this settlement and the terms of this Agreement* including transfer to Michael of" specific entities *and* specifically excepts claims arising out of Michael's wrongful conduct. [DOC. 38, p.23, ¶5; RJN, Exh. A, p.12, ¶15.]

Simply put, Michael has no right to indemnity from Cross-Defendants under any theory. Accordingly, Cross-Defendants seek dismissal of his claims against them under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  And, because any attempt to amend would be futile, they respectfully request that their Motion be granted without leave to amend.

## II.  STATEMENT OF RELEVANT FACTS

From Allen Paulson's death on July 19, 2000, through his removal by the Court in March 2009, Michael served as the Trustee of the Trust.  [DOC. 38, ¶2.] On or about August 11, 2000, the Probate Court appointed Michael as an Executor of the Estate. *Id.*, p.8, ¶23; *see also* DOC.1, ¶23.

On October 23, 2001, as Co-Executor, Michael filed the Estate's Tax Return that reported gross assets of $187,729,626.00, a net taxable estate of $9,234,172.00, and an estate tax liability of $4,459,051.00.  [DOC. 1, pp.9-10, ¶¶27-28.]  When he filed the return, Michael invoked the provisions of Section 6166 of the Internal Revenue Code to pay the estate tax over time, deferring $3,752,755 to be paid over 15 years.  [*Id.*, p.10, ¶29.]  Although Michael also *attempted* to seek protection under 26 U.S.C. § 2204(a) to discharge his personal liability as Executor for any

additional estate tax deficiency, he did not do so correctly, and the discharge was not afforded to him.  [*Id.*, pp.10-11, ¶30.]

Shortly after Michael filed the Estate's tax return, the Internal Revenue Service ("I.R.S.") selected it for review.  [*Id.*, p.11, ¶31.]  While the review was pending, and prior to any resolution of the Trust's actual tax liability, in March 2003, Michael entered into a settlement agreement with Madeleine Pickens fka Madeleine Paulson ("Madeleine"), Mr. Paulson's widow, in connection with her distribution and claims she had asserted against the Estate and Michael Paulson in his official capacities; under the terms of the Settlement Agreement, the Trust distributed property to her.  [DOC. 1, pp.11-12, ¶¶32-35; DOC. 38, p.21, ¶¶1-2; *see also* RJN, Exh. B.]

On January 16, 2005, the I.R.S. issued a Notice of Deficiency to the Estate in the amount of $37,801,245.  [DOC. 1, p.13, ¶38.]  Following a petition to the United States Tax Court challenging the assessment, the parties stipulated that the Trust would pay an *additional* $6,669,477 in estate taxes.  [*Id.*, p.13, ¶¶39-40.]

In addition to the distributions to Madeleine, both before and after the final determination of the Trust's tax liability, Michael caused the Trust to distribute Trust property.  [*Id.*, p.12-13, ¶36 & p.14, ¶43.]  On March 24, 2009, The Probate Court removed Michael as Trustee of the Trust for misconduct.  [*Id.*, p.14, ¶44.]  Among the various reasons for his removal were his abuse of the Trust assets for his personal use and the resulting illiquidity that affected the Trust's ability to pay the estate taxes as well as the specific gifts provided for in the Trust.  [RJN, Exh. C.]

On May 7, 2010, as a result of missed installment payments in 2007, 2008, 2009, and 2010, the I.R.S. issued a Notice of Final Determination and terminated the Section 6166 agreement with the Trust that had extended its time for the payment of taxes.  [DOC. 1, p.14, ¶47; *see also* RJN, Exh. D at p.7, ll. 16-22.]  Although Vikki and, later, Vikki and Crystal, filed Petitions with the U.S. Tax Court challenging the determination, the court dismissed their final petition on April 18, 2013, for lack of

1  jurisdiction because Michael remained the Executor of the Estate.  [DOC. 1, p.15,

2  ¶¶47, 49, 51.]

3  　　　Starting in 2007, Michael, the Cross-Defendants, and other interested parties

4  were involved in several disputes concerning Michael's management of the Trust.

5  [*Id.*, p.16, ¶52.]   Michael and the Cross-Defendants entered into a Settlement

6  Agreement that was approved by the Probate Court in open court on January 15,

7  2013 [DOC. 38, p.22, ¶1; RJN, Exh. E], a complete copy of which is submitted

8  herewith.  [RJN, Exh. A.]

9  　　　In fact, on January 15, 2013, before its formal documentation, the parties read

10  the terms of the Settlement Agreement onto the record before the Probate Court.

11  With regard to claims against the parties by the I.R.S., the following exchange

12  occurred:

13  　　　　　　MR. GRAY (for Co-Defendants herein):   Point No. 3,
　　　　　　*Michael Paulson will agree that he will make no further*

14  　　　　　　*claims against the trust, representatives, et cetera, and in*
　　　　　　*effect, there will be a global release*; . . .

15  　　　　　　. . .

16  　　　　　　Point number 4, *with respect to the Internal Revenue*

17  　　　　　　*Service, the parties agree that they are all on their own*
　　　　　　with – with one exception, and *that is the exception that*

18  　　　　　　*the trust will indemnify and have the right to defend*
　　　　　　*Michael Paulson relating to any IRS actions arising out*

19  　　　　　　*of specifically this transaction, meaning this settlement*.

20  　　　　　　MR. PALMER (for Michael):   On the issue of the

21  　　　　　　release, if I could chime back in on that for a second, this
　　　　　　release involves all the parties that are currently in this

22  　　　　　　litigation.  *Each party releases the other party from any*
　　　　　　*claims associated with the issues that we've been dealing*

23  　　　　　　*with today forever.*

24  　　　　　　MR. GRAY:  I agree with that.

25  RJN, Exh. E, p.4, ll.14-17 & p.5, ll.2-17 (emphasis added).

26  　　　Not only was this representation concerning the parties' being "on their own"

27  with regard to claims by the I.R.S. unequivocal, but Michael's attorney later

28  inquired of him under oath with regard to his understanding and acceptance of the

1  agreement:

2                    BY MR. PALMER:

3            Q:      Mr. Paulson, we had long discussions today about the –

4            trying to settle this case, right?

5            A       [Michael]:   Yes.

6            Q:      *And you listened to the agreement that myself and Mr.*

7                    *Gray told the court that we had come to today*?

8            A.      *Yes.*

9            Q.      *Did you understand all the terms of that agreement*?

10           A.      *Yes.*

11           Q.      Do you feel like we had enough time today that you were

12                   able to consider the terms of this agreement?

13           A.      Yes.

14           Q.      *Are you asking the Court today to make this agreement*

15                   *an Order?*

16           A.      *Yes.*

17                   . . .

18           Q.      *. . . do you have any questions about what we've put on*

19                   *the record today*?

20           A.      *No.*

21           Q.      Except for the boilerplate?

22           A.      Correct.

23           Q.      *And you feel comfortable telling the court that you agree*

24                   *to this today*?

25           A.      *Yes.*

26  Id., p.15, l.7 – p.16, l.12 (emphasis added).

27          The 2013 Settlement Agreement documented and confirmed this broad

28  mutual release between and amongst the parties:

> Mutual General Release of Claims. Except as otherwise may be provided for in this Agreement, the Parties, and each of them, on behalf of their fiduciary roles and obligations, themselves and their respective spouses, heirs, beneficiaries. Executors, administrators, partners, predecessors, successors, assigns, attorneys, agents, representatives, servants, employees, officers, directors, and all other persons acting by, with, or through them (collectively the "Releasing Parties"). hereby release each and every one of the other Parties, as well as all of their heirs, spouses, beneficiaries, Executors, administrators, partners, predecessors, successors, assigns, attorneys, agents, representatives, servants, employees, officers. directors, and all other persons acting by. with, or through them (collectively the "Released Parties") from any and all claims, property, rights. debts, liabilities, demands, obligations, losses, damages, penalties, contracts, covenants, fees, costs, expenses, including legal fees, actions and causes of action of every nature, character, and description, including but not limited to those claims asserted in the Petitions, whether known or unknown, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, asserted or unasserted, fixed or contingent, from the beginning of time to the Settlement Date of this Agreement (i.e., claims arising from the breach of this Agreement or arising from any wrongful actions, willful misconduct or omissions occurring after the Settlement Date are not released) ("Released Claims").

[RJN, Exh. A, p.11, ¶13.]

It also documented the narrow indemnity provision that reads, in its entirety, including language omitted from Michael's Cross-Complaint:

> Co-Trustees Indemnity Re: Claims against Michael by IRS or any other party resulting from the Agreement. *Except for* the matters for which liability is assigned to or indemnity is to be provided by Michael under this Agreement and *any claim arising in whole or in part from Michael's own legally determined Wrongful actions or wrongful conduct*, from and after the Settlement Date, the *Co-Trustees shall indemnify, defend* (including the payment or reasonable attorneys fees) and hold Michael harmless from, against, or with respect to any and all *claims filed, made, asserted, brought, or prosecuted by the IRS,* **solely arising from this settlement and the terms of this Agreement**, *including transfer to Michael of the entities noted in paragraph two.*

[*Id.*, p.12, ¶15 (emphasis added).]

Concurrently, Michael agreed to resign as Executor of the Estate.  However,

1   Michael never undertook the acts required to effectuate his resignation; to the
2   contrary, to this day, he remains the sole court-appointed Executor of the Estate.
3   [RJN, Exh. F, *passim*.]   Conversely, neither Vikki nor Crystal has ever been
4   appointed as Executors of the Estate.   *Id.*

5   On September 16, 2015, the United States of America, at the request of the
6   Secretary of the Treasury (the "I.R.S."), filed its lawsuit against Michael, Vikki,
7   Crystal, James D. Paulson, and Madeleine seeking payment of taxes owed by the
8   Estate, along with interest and penalties, as well as a 10% surcharge.   [DOC. 1,
9   *passim*.]   The Complaint seeks compensation from Michael as an individual and in
10  his roles as Trustee of the Trust at the time of Alan Paulson's death and Executor,[2]
11  arising out of the non-payment of the Trust's Estate Tax liability at times when the
12  Trust had the ability to do so, and challenges Michael's distribution of Trust assets
13  prior to making the tax payments.   [DOC. 1, *passim*.]   Michael now urges this Court
14  to order that Cross-Defendants indemnify him for those liabilities.   [DOC. 38,
15  pp.21-23, *passim*.]

16  **III.   LEGAL ARGUMENT**

17  Michael's attempts to hold Cross-Defendants responsible for *his* obligations
18  incurred in his capacity as Trustee and Executor are misplaced.   While the parties
19  mutually released *each other* for liability to one another, nothing in the 2013
20  Settlement Agreement absolved Michael from responsibility from his personal

21  _____

22  [2]      The I.R.S.'s Count III against Michael is somewhat ambiguous with regard to
23  the role(s) under which it seeks to hold him liable, *i.e.* whether it is as Executor
   and/or Trustee and/or individual.   *See* DOC. 1, pp.20-21, ¶¶68-69.   The Complaint's
24  caption describes him as "Executor or Statutory Executor of the Estate of Allen E.
   Paulson, and Individually."   *Id.,* p.1.   The Complaint further specified that he was
25  "the last known Executor" of the Estate, and that he is also being sued "in his
   individual capacity . . . for amounts he held as Trustee . . . on the date of Mr.
26  Paulson's death.   *Id.*, pp.3-4, ¶4.   Finally, he also appears to be sued with regard to
27  actions taken in connection with the Settlement Agreement with Madeleine in 2003.
   *Id.*
28

obligations to third parties, including the I.R.S.; to the contrary, counsel for both parties explicitly confirmed that, as a result of the 2013 Settlement Agreement, all parties were "on their own" with regard to claims by the I.R.S.  Cross-Defendants released Michael from claims asserted on behalf of the Trust for his wrongdoing in connection with the mismanagement of the Trust; they did not release him from – or indemnify him in connection with – third party claims other than in extremely limited, and inapposite, circumstances.

Michael's discussion in his Cross-Complaint of the limited indemnity in the 2013 Settlement Agreement is misleading because it omits critical language and does not mention the broad released he signed.  As discussed, below, it does not obligate Cross-Defendants to indemnify for the claims in the U.S.'s Complaint.

### A.   A Motion To Dismiss Under Rule 12(b)(6) Is Warranted, And Can Be Granted Without Leave To Amend, When Any Amendment Would Be Futile.

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Sanford v. Memberworks, Inc.*, No. 02CV0601-LAB (JFS), 2008 WL 4482159, at *1 (S.D. Cal. Sept. 30, 2008) (citation omitted).  Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hospital Medical Center,* 521 F.3d 1097, 1104 (9th Cir. 2008).

#### 1.   The Court Can Consider Documents Referenced In The Cross Complaint And Documents Subject To Judicial Notice In Connection With This Motion.

In evaluating a Motion to Dismiss "[c]ourts may . . . consider documents incorporated into the complaint by reference *and* items that are proper subjects of judicial notice." *Kanfer v. Pharmacare US, Inc.*, No. 15–cv–0120–H–JLB, -- F. Supp. 3d --, 2015 WL 6742201, at *4 (S.D. Cal. Nov. 4, 2015) (emphasis added) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323 (2007).  With

regard to documents discussed in, but not physically attached to, the complaint courts "consider them under the doctrine of incorporation by reference. 'Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'"  *Kanfer*, 2015 WL 6742201, at *4 (*citing United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003); *see Galbraith v. County of Santa Clara* 307 F.3d 1119 (9th Cir. 2002) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered").  Accordingly, the Trust, Will, and 2013 Settlement Agreement referenced in Michael's Cross-Complaint are properly considered and submitted herewith because Michael discusses and relies on them as the basis of his claims against Co-Defendants.  The same is true with regard to the 2003 Settlement Agreement with Madeleine.

Among those items properly the subject of judicial notice are documents that are "matters of public record," such as court records.  Fed. R. Evid. 201(b)(2); *see, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) taking judicial notice court files in another matter); *Schaeffer v. Gregory Village Partners, L.P.,* 105 F. Supp. 3d 951, 960 (N.D. Cal. 2015) (taking judicial notice of orders of the California Regional Water Quality Control Board in the public record); *Shalaby v. Bernzomatic*, No. 11cv68 AJB (POR), 2011 WL 4024800, at *4 (S.D. Cal. Sept. 9, 2011) Battaglia, J.) (granting judicial notice in connection with Rule 12(b)(6) motion of "documents in the Prior Federal Action, the subsequent Appeal, and records related to the state court action").  Accordingly, the documents in Cross-Defendants' Request for Judicial Notice that are contained in other courts' records are the proper subjects of judicial notice.

### 2.     A Rule 12(b)(6) Motion Should Be Granted Without Leave To Amend When It Would Be Futile To Amend.

"Although . . . there is a policy that favors allowing parties to amend their

pleadings [citation omitted], a district court may properly deny such a motion if it would be futile to do so." *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995) (concluding that district court did not abuse its discretion in denying leave to amend); *see* also *Kest v Kest*, 132 F. 3d 39 (9th Cir. 1997) (leave to amend was futile where cross-defendant did not have a right to equitable indemnity as a matter of law; *Johnson v. National Steel & Shipbuilding Co.*, 759 F. Supp. 606, 612 (S.D. Cal. 1991) (denying leave to amend where the claims for indemnity were not viable as a matter of law); *Midwest Transport, Inc. v. FCE Benefit Administrators*, No. C 07-4408 CW, 2007 WL 4357632, at *3 (N.D. Cal. Dec. 11, 2007) (leave to amend denied because it was futile where there was no legal basis for claim of indemnity).

The facts upon which Cross-Defendants base their Motion are uncontestable: Michael released them for the very claims he seeks to assert against them.  As discussed below, because Michael has no right to indemnity *under any theory*, and because this legal lack of right cannot be cured, dismissal is appropriate without leave to amend.

## B.   The I.R.S.'s Claims Against Michael Are Based On Obligations He Assumed as Trustee and Executor.

The I.R.S. seeks compensation from Michael, *inter alia*, under 26 U.S.C. § 6324(a)(2) ("Section 6324(a)(2)") in his individual capacity and his role as the Trustee of the Trust who received, at the time of Mr. Paulson's death, the trust *corpus*. [DOC. 1, pp.20-21, ¶¶69-72.][3]  Under this section, "if an estate tax is not paid when due, then certain beneficiaries of the estate are personally liable for the tax to the extent of the value, at the time of the decedent's death, of any property they received from the estate." *Baptiste v. Commissioner*, 29 F.3d 433, 434 (8th Cir.

---

[3]     The Complaint also alleges that Michael failed to properly perfect a discharge of his personal liability for the taxes as an executor under 26 U.S.C. § 2204. [DOC.1, ¶30.]

1994).  Among those persons identified are those who hold the decedent's property in trust as a function of the decedent's death.  26 U.S.C. § 6324(a)(2) ("If the estate tax . . . is not paid when due, then the . . . transferee, trustee, . . . who receives, or has on the date of the decedent's death, property included in the gross estate . . . , to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax.").  "[T]he 'trustee' of the [Trust] who 'on the date of the decedent's death' held the property in question" is a person *personally liable* for unpaid estate taxes."  *Englert v. Commissioner*, 32 T.C. 1008, 1015-16 (1959).  "Congress used the words 'receives' to take care of property received by persons solely because of the decedent's death."  *Id.* at 1016.

The Complaint does not challenge the 2013 Settlement Agreement or any of the transfers pursuant to that agreement.  *See* DOC. 1, Count III, *passim.*  To the contrary, while the I.R.S.'s Complaint seeks judgments against *other* parties based on distributions the trust made to *them*, it contains no such allegations against Michael.  *Compare* DOC. 1 at Counts V (against Crystal for $990,125.00 distribution) and Count VII (against Madeleine based on distributions made to her) *with* Count III (against Michael, based only on liability under Section 6324(a)(2)).[4]

In the instant Motion, Cross-Defendants do not opine on the validity or timeliness of the I.R.S.'s claims vis-à-vis Michael.  They merely note the specific bases under which the government asserts that he has liability.

## C.   <u>Michael Cannot Assert Claims Against Cross-Defendants As Supposed Executors Because They Are *Not* Executors, As A Matter Of Law</u>.

Michael purports to assert claims against Cross-Defendants in their supposed

---

[4]   Reference to these counts against Crystal and Madeleine should not be deemed to suggest that Cross-Defendants consider that there is merit to the I.R.S.'s position in connection with them.

capacities as executors of the Estate, based on his assertion that "he is entitled to under the terms of the Last Will and Testament (the "Will") to indemnification as a Co-Executor." [DOC. 38, p.23, ¶7.] However, there is no basis for him to seek indemnification from Cross-Defendants because (a) there is no right to indemnification in the Will, and (b) more fundamentally, Cross-Defendants are not executors of the Will.

### 1. The Will Does Not Contain *Any* Provision Affording Michael Indemnity As Executor For Obligations Owed To The I.R.S.

As an initial matter, despite Michael's bald assertion that the Will provides that he is entitled to indemnification for the I.R.S.'s claims, the actual Will contains no such provision. [*See* Will and Codicil, *passim*, RJN Exhs. G & H.] The Will directs the Executor and Trustee to pay all estate taxes from the Estate and Trust, and that "the property to which beneficiaries of the trusts under my Living Trust are entitled shall be determined *after the payment of all such taxes.*" [RJN, Exh. G, p.3 Art. VI.] The I.R.S.'s Complaint alleges that, contrary to the Will's express terms, Michael made various distributions to beneficiaries *before* paying the estate taxes, as required under the Will. [DOC. 1 at pp.11-12, 14, ¶¶32-36, 43.]

Article VII of the Will, as modified by the Codicil, appoints Michael and others as Co-Executors of the Estate and enumerates other powers. [RJN, Exh. G, p.3, Art. VII & Exh. H, p.1, Art. II.] However, the Will is devoid of any provision that would indemnify Michael for his failure to pay the taxes when the Trust had ample funds to do so, or for his failure to make timely payments to the I.R.S. pursuant to the Section 6166 extension.

### 2. Cross-Defendants Are Not Executors Of The Estate.

Even assuming, *arguendo*, that the Will indemnified Michael in connection with the I.R.S.'s claims, Cross-Defendants are not parties who could be held liable for such indemnification *because they are not executors of the Estate*.

After the filing of the Will on August 11, 2000, the court appointed Michael

as Co-Executor of the Estate along with Edward White and, after Mr. White's resignation as the Co-Executor on October 8, 2001, Michael remained as the sole Executor.  [DOC. 1, p.8, ¶23.]  In an Order dated December 4, 2012, the United States Tax Court specifically held that Vikki and Crystal were *not* Executors of the Estate.  [RJN, Exh. I (dismissing case filed by Vikki and Crystal on behalf of the Estate for lack of jurisdiction because they were not executors).]

Although Michael executed a document in which he resigned as Executor as of January 15, 2013, he never finalized his resignation.  In order to do so effectively he needed to "file an account not later than 60 days after termination of [his] authority."  Cal. Prob. Code § 10952.  In fact, while a resigned personal representative's office remains vacant, his liability "*continues until settlement of the accounts* of the personal representative and delivery of all the estate of the decedent *to the successor personal representative or other person appointed by the court to receive it*."  Cal. Prob. Code § 8525(b) (emphasis added).  Thus, because Michael (a) never filed an accounting, and (b) never delivered the estate to a successor personal representative, he remains liable as executor.

Moreover, *even if* Michael had completed his resignation, another problem remains:  the Probate Court has never appointed Cross-Defendants as executors of the Estate.  [RJN, Exh. F, *passim*.]  California's Probate Code contains statutory prerequisites before someone is deemed personal representative of an estate.  *See, e.g.,* Cal. Prob. Code § 8522(b) (procedures required for appointment of successor personal representative including hearing following notice under Cal. Prob. Code § 8100); *see generally* Cal. Prob. Code §§ 8400, *et seq.*

Accordingly, Michael cannot sue Cross-Defendants as Executors of the Estate because neither of them holds that role.[5]

------------------------------

[5]   In their Motion to Dismiss the I.R.S.'s Complaint, Cross-Defendants also challenge the I.R.S.' efforts to sue them as so-called "Statutory Executors" under 26 (footnote continued)

**D.** **Cross-Defendants Have No Obligation To Indemnify Michael For The I.R.S.'s Claims.**

Even assuming, *arguendo*, that the Trust, at some point, owed Michael a right to indemnity for the type of claims brought against him by the I.R.S., he waived and relinquished his right to indemnity.[6]

As of early January 2013, several of the Trust's beneficiaries and its current trustees had filed multiple claims against Michael alleging wrongdoing in connection with his management of the Trust and Estate that, among other things, sought to surcharge him. [RJN Exh. A, pp.6-7, ¶J(1)-(8).] On January 15, 2013, Michael and the Cross-Defendants reached a settlement and put the terms of that agreement on the record in open court. [RJN, Exh. E, *passim*.] The parties subsequently executed a Settlement Agreement under which the Cross-Defendants, *inter alia,* dismissed and withdrew the surcharge petition against Michael. [RJN, Exh. A, p.7, ¶1.] The Trustees transferred certain Trust property to Michael and he, in turn, waived his right to amounts personally loaned to the Trust and sums he claimed he was owed from the Trust for his compensation as Trustee. *Id.*, pp.7-11, ¶¶2-12.

As part of this 2013 Settlement Agreement Michael and the Cross-Defendants

---

U.S.C. § 2203 ("Section 2203"). [DOC. 19-1, pp.10-11 & DOC. 29, pp.2-6.] However, even assuming, *arguendo*, that Cross-Defendants do not prevail in their position vis-à-vis the I.R.S., this would not save Michael's claims because this provision concerns only proceedings on behalf of the I.R.S. under Title 26, the Internal Revenue Code.

[6] For example, even if Michael might otherwise be entitled to reimbursement for any tax payments under California Probate Code section 15684, as discussed, *infra*, he waived his rights to reimbursement in the 2013 Settlement Agreement. *See* Rest. (Third) Trusts §38 comment g ("*Waiver*. A trustee may voluntarily forgo any claim to compensation or indemnification."). The Trust and its Amendments are located at RJN, Exhs. J through M, inclusive.

1   executed a broad mutual release.  [RJN , Exh. E, p.4, ll.14-17 & p.5, ll.3-17; Exh. A,
2   at p.11, ¶13.]   The Parties entered into the release "*on behalf of their fiduciary roles*
3   *and obligations*, themselves and their respective spouses, . . ."  [RJN, Exh. A, p.11,
4   ¶13 (emphasis added).]   Thus, Michael's release was not only for himself as an
5   individual, but also in his fiduciary roles as Trustee and Executor.

6       The persons he released included "each and every one of the other Parties."
7   *Id.*  The "Parties" to the 2013 Settlement Agreement included Crystal and Vikki, as
8   individuals, beneficiaries, *and as Co-Trustees of the Trust.  Id.* at p.1, ¶¶B & C.  In
9   other words, Michael, *individually and in his roles as Trustee and Executor*,
10  released Cross-Defendants *individually, and in their roles as Co-Trustees*.

11      The scope of the broad release included "*any and all claims*, property rights,
12  debts, liabilities, demands, *obligations*, losses, damages, penalties, contracts,
13  covenants, fees, costs, expenses, including legal fees, actions and *causes of action of*
14  *every nature, character, and description*, . . . whether known or unknown, foreseen
15  or unforeseen, accrued or unaccured, suspected or unsuspected, *asserted or*
16  *unasserted*, fixed or contingent, *from the beginning of time to the Settlement Date of*
17  *this Agreement.*"  *Id.*, p.11, ¶13 (emphasis added).  For purposes of clarification, the
18  2013 Settlement Agreement explained, "claims arising *from the breach of this*
19  *Agreement* or arising from any wrongful actions, willful misconduct or omissions
20  *occurring after the Settlement Date are not released.*"  *Id.* (emphasis added).
21  Counsel for Cross-Defendants and Michael explicitly confirmed these broad terms
22  and that, henceforth, each of the parties would be "on their own" with regard to
23  claims brought against them by the I.R.S. other than those arising out of the terms of
24  the 2013 Settlement Agreement.  [RJN, Exh. E, p.5, ll.3-17.]  Michael confirmed
25  that he understood and agreed to these terms.  *Id.*, p.15, l.7 – p.16, l.12.

26      The I.R.S.'s claims against Michael in the Complaint do *not* arise out of the
27  2013 Settlement Agreement, and they do not arise of any actions taken by him – or
28  Cross-Defendants – occurring after the date of the 2013 Settlement Agreement.

They all emanate from his roles – including his actions and inaction – as Trustee and Executor prior to that time.  Accordingly, even though they had not been asserted, any right by Michael to indemnification for the current claims by the I.R.S. are encompassed within the broad terms of the Mutual Release.

> ### 1.    The Narrow Indemnity Provision Does Not Afford Michael Protection With Regard To The I.R.S.'s Complaint.

Michael hinges his indemnity claim on the narrow provisions of paragraph 15 of the 2013 Settlement Agreement captioned "Co-Trustees' Indemnity Re: Claims against Michael *by IRS* or any other party *resulting from the Settlement Agreement*." [RJN, Exh. A, p.12, ¶15.]  This is *not* a broad indemnification for *all* claims against Michael by the I.R.S.

Specifically, it provides:

> *Except for . . . any claim arising in whole or in part from Michael's own legally determined wrongful actions or wrongful conduct,* from and after the Settlement Date, the Co-Trustees shall indemnify, defend (including the payment of reasonable attorneys fees) and hold Michael harmless for, against, or with respect to any and all claims filed, made, asserted, brought, or prosecuted *by the IRS,* **solely arising from this Settlement Agreement,** *including the transfer to Michael of the entities noted in paragraph two.*

*Id.* (emphasis added).

The I.R.S.'s Complaint does not trigger this limited indemnity because its allegations do not arise out of the 2013 Settlement Agreement, let alone "solely out of" it.  To the contrary, the I.R.S.'s sole count against Michael seeks to hold him personally liable, not because of anything related to the 2013 Settlement Agreement, but under Section 6324(a)(2) and 31 U.S.C. § 3713 ("Section 3713").  [DOC. 1, ¶4 & ¶¶68-72.]  Section 6324(a)(2) imposes *personal liability* for estate taxes on any person or trustee "who receives, or has *on the date of the decedent's death*, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death."  (Emphasis added.)    The claims under Section 3713 relate to the transfer of assets to Madeleine in connection with

1  the 2003 Settlement Agreement she entered into with Trust.

2     This sole cause of action makes no mention of the 2013 Settlement

3  Agreement.  It does not seek to hold Michael liable for *anything* related to it, let

4  alone the transfer of properties to him pursuant under its terms.

5     Furthermore, actions taken by Michael during his tenure as Trustee rendered

6  the trust illiquid, and unable to pay its annual installments on the estate taxes.

7  [DOC. 1, ¶¶32-36 & 43.]  In fact, the Probate Court removed Michael as Trustee

8  pursuant to California Probate Code sections 15642(b)(1) & (5) in order "to preserve

9  the trust assets."  [RJN, Exh. C, p.2]  The Probate Court concluded that Michael

10    is using trust assets for his own personal benefit and pleasures,
      including purchases of race horses, attending horse races in the United
11    States and abroad, payment of substantial trustee fees, the use of trust
      assets for international travel and other questionable activities.

12

13  *Id.*  The court further determined that "[t]he only reason the estate taxes and other

14  debts have not been paid *is because Michael has chosen, for improper reasons, not*

15  *to pay them*."  *Id.*, p.15 (emphasis added); *see also id.*, p.16 (detailing payments

16  made to, and on behalf of Michael, while he claimed the 6166 Election prevented

17  him from paying smaller gifts Trust obligations).  Finally, the Probate Court

18  observed that "*the only reason the trust may have had liquidity problems is because*

19  *Michael has, for his own improper purposes, declined to sell trust assets from which*

20  *he derives personal benefit or pleasure*, such as the race horses and this Full House

21  Resort stock."  *Id.*, p. 18 (emphasis added).

22     As a result, Michael's personal liability for the Estate's taxes arises, in no

23  small part, "*from Michael's own legally determined wrongful actions or wrongful*

24  *conduct*," an express exemption to the indemnity provision in paragraph 15 of the

25  2013 Settlement Agreement.

26     Accordingly, by its plain terms, Cross-Defendants are not required to

27  indemnify Michael under paragraph 15 of the 2013 Settlement Agreement because

28  the I.R.S.'s claims do not arise out of the terms of the agreement and because they

1   arise out of Michael's wrongful actions or conduct.

2   **IV.**   **CONCLUSION**

3       Michael has always retained his liability as trustee, executor, and transferee

4   under Section 6324(a)(2) for the estate's income taxes as he held the estate's

5   property at the time of Allen Paulson's death.  He released any and all claims

6   against the Cross-Defendants in their individual and representative capacities when

7   he executed the 2013 Settlement Agreement.  The I.R.S's Complaint did not trigger

8   Paragraph 15's limited indemnity.  Accordingly, he has no claim against Cross-

9   Defendants, as a matter of law.

10       Moreover, any effort to amend would be futile as the necessary facts are

11   before this Court and indisputable.[7]  The claims for which Michael seeks indemnity

12   are before this Court [DOC. 1] as are the Will, the Trust, and the 2013 Settlement

13   Agreement in which he waived any claims against Cross-Defendants subject to a

14   narrow and inapplicable indemnity provision.  [RJN, Exhs. A, G-M.] Accordingly,

15   Cross-Defendants respectfully request that this Court dismiss Michael's Cross-

16   Complaint against them without leave to amend.

17   Dated: February 8, 2016         Respectfully submitted:

18

19                   **ZUBER LAWLER & DEL DUCA LLP**
                        JEREMY J. GRAY

20                         MICHELE M. DESOER

21

22            By:  *s/Michele M. Desoer*

23                  Attorneys for  Defendants and Cross-
                  DefendantsVikki  E. Paulson and Crystal

24                  L. Christensen

25

26   [7]  In fact, upon dismissal of Michael's claims, Cross-Defendants will seek their

27   attorney fees for the defense of this action pursuant to the terms of the 2013

28   Settlement Agreement.  *See* RJN, Exh. A, pp.15-16 ¶27.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CROSS-CLAIM