**AKERMAN LLP**
JOSHUA R. MANDELL (CA SBN 225269)
Email: joshua.mandell@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017-5433
Telephone:  (213) 688-9500
Facsimile:   (213) 627-6342

**AKERMAN LLP**
DONALD N. DAVID (CA SBN 264142)
Email: donald.david@akerman.com
666 Fifth Avenue, 20th Floor
New York, New York 10103
Telephone:  (212) 880-3800
Facsimile:   (212) 880-8965

**AKERMAN LLP**
GLEN A. STANKEE (FL SBN 331848 admitted *pro hac vice*)
Email: glen.stankee@akerman.com
JASON OLETSKY (FL SBN 009301 admitted *pro hac vice*)
Email: jason.oletsky@akerman.com
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
Facsimile:   (954) 463-2224

Attorneys for Defendant
MADELEINE PICKENS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN MICHAEL PAULSON, as the Executor of Statutory Executor of the Estate of Allen E. Paulson, and Individually;<br><br>JAMES D. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson;<br><br>VIKKI E. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Allen E. Paulson Living Trust, and Individually; | Case No. 3:15-cv-02057-AJB-NLS<br><br>Assigned to Hon. Anthony J. Battaglia Courtroom 3B<br><br>**DEFENDANT MADELEINE PICKENS' MEMORANDUM OF POINT AND AUTHORITIES IN REPLY TO THE RESPONSE IN OPPOSITION TO HER MOTION TO DISMISS DEFENDANT JOHN MICHAEL PAULSON'S CROSSCLAIM**<br><br>**Hearing Information**<br>**Date:** March 24, 2016<br>**Time:** 2:00 p.m.<br>**Ctrm:** 3B<br><br>Crossclaim Filed:   January 15, 2016 |

| | |
|---|---|
| 1  CRYSTAL CHRISTENSEN, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Allen E. Paulson Living Trust, and Individually; | Trial Date:          None |
| 2 | |
| 3 | |
| 4  MADELEINE PICKENS, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Marital Trust created under the Allen E. Paulson Living Trust, as Trustee of the Madeleine Anne Paulson Separate Property Trust, and Individually; | |
| 5 | |
| 6 | |
| 7 | |
| 8        Defendants. | |

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## MEMORANDUM OF LAW

The Crossclaim of John Michael Paulson (the "Crossclaimant") fails in whole to state a claim against Madeleine Pickens ("Ms. Pickens") for which relief can be granted.

Crossclaimant's principal argument is that the "clear", "unambiguous" and "plain" language" of Section 21 of the 2003 Settlement Agreement[1] obligates Ms. Pickens to indemnify Crossclaimant for the personal liability he incurred under §31 U.S.C. §3713 for his failure to pay the estate taxes as the executor of Decedent's estate, regardless of the fact that he had been found to have wasted Trust assets by making unwarranted expenditures contrary to the terms of the Trust for the sole benefit of himself and his wife.[2] Alternatively, he argues that the language of Section 21 is "ambiguous" and that the Court should deny Ms. Pickens' motion to dismiss and determine the parties' intentions with respect to the meaning of that section.

Both of Crossclaimant's arguments rely on the faulty contention that the distributions to Ms. Pickens under the Settlement Agreement were the reason he failed to pay the estate tax. (D.E. 48, p. 4). The undisputed facts clearly demonstrate that Crossclaimant had more than sufficient assets with which to pay the estate tax after the distributions to her, despite his waste and misuse of Trust assets. However, even if his failure to pay the estate tax could be attributed to the distributions to Ms. Pickens, no reasonable construction or interpretation of the Settlement Agreement obligates her to indemnify Crossclaimant for anything other than the increase in the liability for estate tax that resulted from the distributions to her under the Settlement Agreement. Because the distributions to Ms. Pickens all qualified for the marital deduction, they could not – and did not – result in an increase in estate tax.

---

[1] D.E. 48, p. 1, 3, 4, 5

[2] See Note 7 and accompanying text.

Section 21 of the Settlement Agreement requires Ms. Pickens to indemnify the Co-trustees of Decedent's Trust for the "[t]he liability for any estate tax or gift tax . . . payable *as a result* of any distribution made to Madeleine pursuant to this Agreement". (emphasis supplied). Section 4. a. (vi) of the Settlement Agreement makes it clear that this obligation is limited to the "increase in Death Taxes" payable by reason of the distributions to Ms. Pickens under the Settlement Agreement, over and above the estate taxes that would have been payable in the absence of the Settlement Agreement.[3] Crossclaimant does not, and cannot, deny that every property distributed to Ms. Pickens under the Settlement Agreement qualified for the marital deduction and that none of those distributions resulted in an increase in the liability for estate tax. Indeed, Crossclaimant concedes that "[Ms.] Pickens is not required to indemnify him as a result of an increase in estate taxes."[4] Crossclaimant's principal argument relies entirely upon his contention that the "clear", "unambiguous" and "plain" meaning of the phrase "liability for any estate tax" refers to the personal liability that Crossclaimant incurred under 31 U.S.C. §3713[5] for mismanaging the Trust assets. His argument is without basis in law or fact.

The complete phrase contained in the Settlement Agreement is "liability for any estate tax or gift tax . . . payable as a result of any distribution made to Madeleine pursuant to this Agreement." If the liability is not for estate tax that is payable as the result of any distribution to Ms. Pickens under the Settlement Agreement, Ms. Pickens has no duty to indemnify it. The liability for which Crossclaimant seeks

---

[3] Section 4. a. (vi) of the Settlement Agreement generally imposes the obligation on the Co-Trustees to indemnify Ms. Pickens for any liability she incurs "excepting only any increase in Death Taxes for which Madeline is liable pursuant to the terms of this Agreement."

[4] See, D.E. 48, p. 7, in which Crossclaimant concedes that he never claimed in his Crossclaim that Ms. Pickens was required to indemnify him as the result of an increase in estate tax.

[5] 31 U.S.C. §3713 provides that "[a] representative of a person or an estate . . .paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."

indemnification is not a liability for estate tax. It is the personal liability imposed on Crossclaimant under 31 U.S.C. §3713 for choosing to indulge his own excesses[6] rather than pay the estate tax. Furthermore, it is not payable as the result of the distributions to Ms. Pickens under the Settlement Agreement. It is payable because Crossclaimant blatantly violated his duties as the executor, which led to his ultimate removal as Co-Trustee of Decedent's Trust. No reasonable construction or interpretation of the Settlement Agreement obligates Ms. Pickens to indemnify the Co-trustee for the personal liability he incurs under 31 U.S.C. §3713 for his own misconduct and mismanagement of the Trust property.

In any event, the distributions to Ms. Pickens were clearly not the cause for Crossclaimant's failure to pay the estate taxes. As explained in the probate court's order of March 24, 2009, in which Crossclaimant was removed as the Trustee of Decedent's Trust, a copy of which is attached as Appendix **"I"** to Ms. Pickens' motion to dismiss the Complaint (D.E. 15), Crossclaimant's failure to pay the estate tax was due entirely to his own misconduct and gross mismanagement of the Trust property years after Ms. Pickens' interest in the Decedent's Trust and Estate had terminated.[7] The court specifically found that:

---

[6] See Note 7, *infra*, and accompanying text.

[7] Under the terms of the Trust, as amended, Crossclaimant was forbidden to invest more than $20 million of the Trust's assets in Supersonic Aerospace International, LLC, a Lockheed Martin Supersonic Business Jet Project. He wrongfully invested $28.5 million of the Trust's assets in that project. Crossclaimant was also required to sell the Decedent's race horses as soon after the Decedent's death as possible. Instead, he purchased more horses at a cost of approximately $4 million. While Crossclaimant served as Trustee, the value of the race horses plummeted from nearly $40 million to approximately $11 million. In addition, Crossclaimant paid himself more than $3 million in Trustee's fees and traveled (by private aircraft) to horse races (including some in Ireland) and national and international air shows, all at the Trust's expense. Similarly, he paid personal expenses, such as massages for his wife while attending racing events, from Trust assets – further depleting the Estate. He caused the Trust to retain ownership of its shares in Full House Resorts, Inc. so that he could continue to draw his personal compensation as a director of that company.

[t]he only reason the estate taxes and other debts have not been paid is because Michael[8] has chosen, for improper reasons, not to pay them. The remaining estate taxes, estimated to amount to approximately $10 million . . . could be paid at any time if Michael would sell the horses . . . as directed by the trust instrument. . . . Michael has treated the trust and its assets, to a significant degree, as his own personal estate to do with as he pleases.

Indeed, it is established by the Tax Court decision to which Crossclaimant stipulated that, after the distribution to Ms. Pickens, Crossclaimant still had approximately $21 million in net assets with which to pay the taxes.[9] A year after the distributions were made to Ms. Pickens, Crossclaimant made distributions to other beneficiaries of the Trust totaling $5,921,887. (D.E. 1, ¶36). In 2006, he distributed $1,250,000 to another beneficiary. (D.E. 1, ¶43). As of April 11, 2009 (more than 6 years after Ms. Pickens' interest in the Trust terminated), Vikki Paulson and James D. Paulson, who replaced Crossclaimant after he was removed as Trustee, reported that the net value of the Trust's assets totaled $13,738,727. (D.E. 1, ¶44). On February 28, 2011, Vikki Paulson and Crystal Christensen, who was appointed to serve as Co-trustee after James D. Paulson was removed (8 years after Ms. Pickens' interest in the Trust terminated), reported the net value of the Trust's assets to be $8,802,034. (D.E. 1, ¶48). On January 15, 2013, (nearly 10 years after Ms. Pickens' interest in the Trust terminated), Vikki Paulson and Crystal Christensen, as Co-trustees of the Trust, distributed substantially all of the remaining Trust assets to Crossclaimant, which

---

[8] References to "Michael" are to John Michael Paulson, the Decedent's son and Crossclaimant.

[9] According to the stipulated Tax Court decision, the total estate tax liability was $11,158,528 ($4,459,051 reported on the estate tax return, plus the $6,699,477 deficiency). Because the marginal estate tax rate under 26 U.S.C. §2001 was 55% in 2000, the taxable estate (after a marital deduction of $19,040,654) was $20,963,233 ($11,128,528 / .55 + $675,000 (the "applicable exclusion amount" of the $220,000 unified credit that was in effect under 26 U.S.C. §2010(c) in 2000)).

included the Trust's $28.5 million investment in Supersonic Aerospace International, LLC and the stock in Gold River Hotel & Casino Corporation, which the IRS valued at $5,380,000, free and clear of any encumbrances. (D.E. 1, ¶53).

Since there is no merit to the claims that (i) Section 21 of the Settlement Agreement obligates Ms. Pickens to indemnify Crossclaimant for the personal liability he incurred under 31 U.S.C. §3713 for his own misconduct and mismanagement of the Trust property, or (ii) the distributions to Ms. Pickens were the cause of Crossclaimant's failure to pay the estate taxes, the Crossclaim fails to state a cause of action against Ms. Pickens for which relief can be granted.  Moreover, because these defects in the Crossclaim cannot be cured by amendment, the Crossclaim against Ms. Pickens should be dismissed with prejudice.

Crossclaimant's alternative argument, that Section 21 of the Settlement Agreement is "ambiguous",  relies on the definition of the term "liability". Based on the dictionary definition of "liability", Crossclaimant asks the Court to interpret Section 24 as obligating Ms. Pickens to indemnify Crossclaimant for every amount he owes, including his personal liability under 37 U.S.C. §3713, without regard to the context in which the term is used. The Settlement Agreement clearly limits Ms. Pickens' obligation to the increase in "[t]he liability for any estate tax or gift tax . . . payable as a result of any distribution made to Madeleine pursuant to this Agreement". No reasonable construction or interpretation of the Settlement Agreement obligates Ms. Pickens to indemnify Crossclaimant for anything more, especially self-created liabilities that are the product of his own misconduct. Accordingly, the Crossclaim fails to state a claim against Ms. Pickens for which relief can be granted.  Because these defects in the Crossclaim cannot be cured by amendment, the Crossclaim against Ms. Pickens should be dismissed with prejudice.

**WHEREFORE,** for each and all the reasons set forth above, Defendant, Madeleine Pickens, respectfully requests that the Court dismiss the Crossclaim of

John Michael Paulson against her in its entirety with prejudice and that the Court grant such other and further relief deemed just and proper.

Dated: February 17, 2016    **AKERMAN LLP**

By: */s/ Joshua R. Mandell*
  Joshua R. Mandell
  Donald N. David
Attorneys for Defendant
MADELEINE PICKENS