1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11   UNITED STATES OF AMERICA,              Case No.:  15cv2057 AJB (NLS)

12                          Plaintiff,      **ORDER:**

13   v.
                                            **(1) GRANTING IN PART AND**
14   JOHN MICHAEL PAULSON, as the           **DENYING IN PART MADELEINE**
     Executor or Statutory Executor of the  **PICKENS' MOTION TO DISMISS**
15   Estate of Allen E. Paulson, and        **(Doc. No. 15);**
     Individually; JAMES D. PAULSON, as
16   Statutory Executor of the Estate of Allen
     E. Paulson; VIKKI E. PAULSON, as       **(2) GRANTING IN PART AND**
17   Statutory Executor of the Estate of Allen **DENYING IN PART VIKKI**
     E. Paulson, as Trustee of the Allen E.  **PAULSON AND CRYSTAL**
18   Paulson Living Trust, and Individually; **CHRISTENSEN'S MOTION TO**
     CRYSTAL CHRISTENSEN, as Statutory      **DISMISS (Doc. No. 19);**
19   Executor of the Estate of Allen E.
20   Paulson, as Trustee of the Allen E.     **(3) DENYING JAMES PAULSON'S**
     Paulson Living Trust, and Individually; **MOTION TO DISMISS (Doc. No. 36);**
21   MADELEINE PICKENS, as Statutory
     Executor of the Estate of Allen E.      **(4) DENYING MADELEINE**
22   Paulson, as Trustee of the Marital Trust **PICKENS' MOTION TO DISMISS**
23   created under the Allen E. Paulson Living **CROSS-CLAIM (Doc. No. 40); AND**
     Trust, as Trustee of the Madeleine Anne
24   Paulson Separate Property Trust, and
25   Individually,                           **(5) DENYING VIKKI PAULSON**
                                            **AND CRYSTAL CHRISTENSEN's**
26                          Defendants.      **MOTION TO DISMISS CROSS-**
                                            **CLAIM (Doc. No. 44)**
27
28

The United States of America ("Plaintiff"), seeking to recover unpaid estate taxes, penalties, and interest, filed the above action on September 16, 2015. Presently before the Court are motions to dismiss the complaint filed by Defendants Vikki Paulson, Crystal Christensen, Madeleine Pickens, and James Paulson. (Doc. No. 15, 19, and 36.) Also pending are motions to dismiss Defendant John Michael Paulson's cross-claim, (Doc. No. 38), filed by Defendants Vikki Paulson, Crystal Christensen, and Madeleine Pickens. (Doc. Nos. 40 and 50.)

For the reasons set forth below, Madeleine Pickens' motion to dismiss the complaint is **GRANTED IN PART** and **DENIED IN PART**; Vikki Paulson and Crystal Christensen's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**; and James Paulson's motion to dismiss is **DENIED**. Additionally, Madeleine Pickens' motion to dismiss John Michael Paulson's cross-claim is **DENIED**; and Vikki Paulson and Crystal Christensen's motion to dismiss the cross-claim is **DENIED**.

## I.    FACTUAL BACKGROUND

The following facts are taken from the complaint and construed as true for the limited purpose of resolving the pending motions. *See Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). On December 23, 1986, Allen Paulson ("Mr. Paulson") established the Allen E. Paulson Living Trust (hereafter referred to as "Living Trust"). (Doc. No. 1 ¶ 9.) In 1988, Mr. Paulson entered into an antenuptial agreement with Madeleine Pickens ("Ms. Pickens") in anticipation of marriage. (*Id.* ¶ 10.) The agreement defined their respective separate property and established certain gifts for Ms. Pickens in the event of Mr. Paulson's death. (*Id.*) The Living Trust was subsequently amended and restated several times in early 2000. (*Id.* ¶ 11.) On July 19, 2000, Mr. Paulson died. (*Id.* ¶ 21.)

The Living Trust provided Ms. Pickens with the power to elect between receiving property under the antenuptial agreement or under the Living Trust, but not under both. (*Id.* ¶¶ 10, 12–15.) The Living Trust also created a Marital Trust for Ms. Pickens' benefit. (*Id.* ¶¶ 13–15.) Under the terms of the Living Trust, the Marital Trust was to receive a residence and all personal property located at 14497 Emerald Lane in Rancho Sante Fe,

California. (*Id.* ¶ 13.) The Living Trust also gave Ms. Pickens the right to receive a second residence located in Del Mar, California, as well as all household furnishings, furniture, and all insurance policies related to the Del Mar property. (*Id.* ¶ 14.) Finally, the Living Trust provided that the Marital Trust was to receive 25% of the residue of the Living Trust. (*Id.* ¶ 15.) The Living Trust named Ms. Pickens, John Michael Paulson, and Edward White (or alternatively, Edward White and Nicholas Diaco), as the co-trustees of the Marital Trust. (*Id.* ¶ 16.)

At the time of Mr. Paulson's death, all of Mr. Paulson's assets were held by the Living Trust except for his shares in the Gold River Hotel & Casino Corporation. (*Id.* ¶ 24.) The Living Trust's assets, as reported at the time of Mr. Paulson's death included approximately $24,764,500 in real estate; $113,761,706 in stocks and bonds; $23,664,644 in cash and receivables, and $31,243,494 in miscellaneous assets. (*Id.*) Accordingly, the Estate's assets totaled approximately $193,434,344 at the time of Mr. Paulson's death. (*Id.*)

John Michael Paulson ("Michael Paulson") is the son of Mr. Paulson, and served as the executor of the Estate of Allen E. Paulson ("Estate") after Mr. Paulson's death on July 19, 2000. (*Id.* ¶¶ 4, 54.) Nicholas Diaco consented to act as co-trustee of the Living Trust with Michael Paulson. (*Id.* ¶ 25.) In April 2001, the Estate filed a Form 4768 with the IRS, and requested an extension of time to file its Form 706 Estate tax return until October 19, 2001. (*Id.* ¶ 26.) Additionally, the Estate requested an extension of time to pay its taxes until April 19, 2002. (*Id.*) The IRS approved the Estate's request for both extensions. (*Id.* ¶ 26.)

On October 23, 2001, the IRS received the Estate's Form 706 Estate tax return, which was signed by Michael Paulson, as co-executor of the Estate. (*Id.* ¶ 27.) In completing the tax return, the Estate elected to use an alternate valuation date of January 19, 2001, under 26 U.S.C. § 2032(a). (*Id.*) The Estate reported a total gross estate of $187,729,626, a net taxable estate of $9,234,172, and an estate tax liability of $4,459.051. (*Id.* ¶¶ 27–28.) On November 26, 2001, the IRS assessed the originally reported tax of

$4,459,051. (*Id.* ¶ 28.) The Estate elected to pay part of its taxes and defer the other portion under a fifteen-year payment plan pursuant to 26 U.S.C. § 6166 of the Internal Revenue Code.[1] (*Id.* ¶ 29.) Accordingly, the Estate paid $706,296 as the amount unqualified for deferral under § 6166, leaving a deferred balance of $3,752,755 to be paid under the installment election. (*Id.*) On November 15, 2001, the IRS selected the Estate tax return for examination. (*Id.* ¶ 31.)

While the Estate's tax return was under review, several personal disputes arose between Michael Paulson, Ms. Pickens, and the other beneficiaries of the Living Trust. (*Id.* ¶ 32.) On February 2, 2003, the parties reached a settlement agreement, which the California Probate Court approved on March 14, 2003 ("2003 Settlement"). (Doc. No. 1 ¶ 33); (Doc. No. 15-5.) Under the 2003 Settlement, Ms. Pickens forewent property under both the antenuptial agreement and the Living Trust, instead choosing to receive direct distributions from the Living Trust. (*Id.* ¶¶ 33–34.) The 2003 Settlement resulted in Ms. Pickens receiving the Rancho Sante Fe residence, the Del Mar residence, and the stock in the Del Mar County Club, Inc. (*Id.* ¶ 33.) As approved by the Probate Court, these distributions were made directly to Ms. Pickens as trustee of the Madeleine Anne Paulson Separate Property Trust. (*Id.* ¶ 35.) During 2004, Michael Paulson, acting as trustee of the Living Trust, distributed approximately $5,921,887 in trust assets to various individuals. (*Id.* ¶ 36.)

On January 15, 2005, the IRS issued a notice of deficiency to Michael Paulson as executor of the estate, which proposed a $37,801,245 deficiency in the estate tax reported on the return. (*Id.* ¶ 38.) Michael Paulson petitioned the United States Tax Court challenging the additional estate tax proposed by the IRS. (*Id.* ¶ 39.) On December 2, 2005, pursuant to the parties' stipulation, the Tax Court determined that the Estate owed $6,669,477 in additional estate taxes. (*Id.* ¶ 40.) The Estate elected to pay this additional

---

[1] 26 U.S.C. § 6166(a)(1) provides a deferral and payment plan for the value of the tax imposed by a closely held business on the adjusted gross estate, under 26 U.S.C. § 2001.

tax amount under the same fifteen-year installment period permitted by 26 U.S.C. § 6166. (*Id.*)

During 2006, Michael Paulson, acting as trustee of the Living Trust distributed an additional $1,250,000 from the Living Trust. (*Id.* ¶ 43.) In March 2009, the Probate Court removed Michael Paulson as trustee for misconduct. (*Id.* ¶ 44.) Vikki Paulson and James Paulson were appointed as co-trustees. (*Id.* ¶ 44.) In August 2011, Vikki Paulson and James Paulson reported that the Living Trust had assets worth $13,738,727. (*Id.* ¶ 44.)

On May 7, 2010, in response to one or more missed installment payments, the IRS issued the Estate a notice of final determination stating that the extension of time for payment under § 6166 no longer applied to the Estate's tax obligations. (*Id.* ¶ 46.) On June 10, 2010, the Probate Court removed James Paulson as a co-trustee for breach of court orders. (*Id.*) Accordingly, Vikki remained as the sole trustee of the Living Trust. (*Id.*)

On August 5, 2010, the Estate filed a petition in United States Tax Court challenging the IRS's proposed termination of the Estate's § 6166 installment payment election. (*Id.* ¶ 47.) On February 28, 2011, Crystal Christensen ("Ms. Christensen") was appointed as co-trustee of the Living Trust. (*Id.* ¶ 48.) At that time, the Living Trust held assets worth approximately $8,802,034. (*Id.*) In May 2011, the Tax Court entered a stipulated decision sustaining the IRS's decision to terminate the Estate's installment payment election. (*Id.* ¶ 49.)

Between June 28, 2011, and July 7, 2011, the United States recorded notices of federal tax liens against the Estate in the property records of San Diego and Los Angeles Counties. (*Id.* ¶ 50.) On April 16, 2012, Vikki Paulson and Ms. Christensen, as successor co-trustees of the Living Trust filed a petition for review of the Estate's collection due process rights with the United States Tax Court. (*Id.* ¶ 51.) The Tax Court dismissed the petition on April 18, 2013, for lack of jurisdiction because Michael Paulson, who was the court-appointed executor at the time the petition was filed, had not signed the petition. (*Id.*)

From approximately 2007 through 2013, several disputes arose between Michael Paulson, Vikki Paulson, Ms. Christensen, James Paulson, and other interested parties in the Living Trust. (*Id.* ¶ 52.) The parties eventually settled the disputes, and on June 3, 2013, the California Superior Court formalized the settlement through issuance of an order and a general release ("2013 Settlement"). (*Id.*)

As part of the 2013 Settlement, Michael Paulson obtained the Living Trust's ownership interest in Supersonic Aerospace International, LLC, as well as its ownership interests in the Gold River Hotel & Casino Corporation and the Gold River Operation Corporation. (*Id.* ¶ 53.) Additionally, as part of the 2013 Settlement, Michael Paulson resigned as executor of the Estate, effective January 15, 2013. (*Id.* ¶ 54.)

As of July 10, 2015, the Estate had an unpaid estate tax liability of $10,261,217. (*Id.* ¶ 55.) On September 16, 2016, the United States filed a complaint seeking judgment against the Estate for the unpaid estate taxes, penalties, and interest. (Doc. No. 1.) The United States seeks judgment against the defendants in either their representative or individual capacities, or both, for unpaid estate taxes. Several defendants named in the complaint have filed motions to dismiss. (*See* Doc. Nos. 13, 19, 36.) Michael Paulson filed an answer to the complaint, in addition to cross-claims for indemnification against Ms. Pickens, Vikki Paulson, and Ms. Christensen. (Doc. No. 38.) Ms. Pickens, Vikki Paulson, and Ms. Christensen then moved to dismiss the cross-claims. (Doc. Nos. 40, 44.) Following briefing on all pending motions, the Court determined the motions were suitable for determination on the papers.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "A court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (internal citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A "motion to dismiss is not the appropriate procedural vehicle to test the merits of Plaintiff's complaint." *Walker v. City of Fresno*, No. 1:09cv1667, 2010 WL 3341861, at *4 (E.D. Cal. Aug. 23, 2010) (citing *Navarro*, 250 F.3d at 732).

## III.   DISCUSSION

### A.   Judicial Notice

As an initial matter, the parties moving to dismiss the complaint attach numerous documents to their respective motions. (*See, e.g.*, Doc. Nos. 15-2–15-14; 19-2–19-7.) Only Vikki Paulson and Ms. Christensen formally request the Court take judicial notice of certain documents attached, (Doc. No. 19-2), although Ms. Pickens similarly argues consideration of the attached documents is appropriate. (*See* Doc. No. 25, n.3.)

In opposition, Plaintiff argues that consideration of documents extrinsic to the complaint is improper on a motion to dismiss, and converts a motion to dismiss into one for summary judgment. (Doc. Nos. 21 at 11–13; 27 at 15.) Plaintiff requests the Court permit a reasonable time for discovery prior to ruling on the present motion if the Court is inclined to consider the attached materials. (*Id.*) Plaintiff also contests whether the documents attached to Ms. Pickens, Vikki Paulson, and Ms. Christensen's motions are

the most recent versions of, and amendments to, relevant Trust documents. (Doc. No. 21 at 11) (arguing Ms. Pickens failed to attach amendments to the Living Trust that are "critical to her status as trustee of the Marital Trust").

Federal Rule of Evidence 201 allows a court to take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Hohu v. Hatch*, 940 F. Supp. 2d 1161, 1166 (N.D. Cal. 2013). The court may take judicial notice of documents that are matters of public record. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (noting a district court may take "judicial notice of matters of public record outside the pleadings" when determining whether a complaint fails to state a claim); *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) ("Matters of public record are generally proper subjects of judicial notice.").

Judicial notice of the Probate Court documents is appropriate, as documents publicly available and not subject to reasonable dispute. *See In re Tower Park Properties, LLC*, 803 F.3d 450, 452 (9th Cir. 2015) (taking judicial notice of documents filed in probate court proceedings); *Gillette v. Wilson Sonsini Grp. Welfare Ben. Plan*, No. 3:14CV00222, 2014 WL 5511337, at *2 (D. Or. Oct. 31, 2014) (taking judicial notice of various documents filed in probate court); *In re Tower Park Properties, LLC*, No. CV 13-1518, 2013 WL 3791462, at *1 (C.D. Cal. July 18, 2013) (same). Accordingly, the Court will take judicial notice of the Probate Court documents attached to the present motions to dismiss.[2] However, for the reasons detailed below, the Court declines to interpret or

---

[2]  Documents properly the subject of judicial notice include Appendix C, the Estate's Tax Return dated October 19, 2001, (Doc. No. 15-4); Appendix E-1, the Grant Deed to the Del Mar Residence, (Doc. No. 15-6); Appendix E-2, the Grant Deed to the Rancho Sante Fe Residence; (Doc. No. 15-7); Appendix G, the IRS Tax Audit dated October 13, 2004, (Doc. No. 15-9); Appendix H, the tax court decision reflecting the stipulated additional tax liability in excess of six million dollars, (Doc. No. 15-10); Appendix I, the memorandum decision removing Michael Paulson as trustee, (Doc. No. 15-11); and

otherwise determine the applicability or validity of those documents in the context of a motion to dismiss. The remaining formal or informal requests for judicial notice are therefore **DENIED**.[3]

B.     Ms. Pickens' Motion to Dismiss

Ms. Pickens asserts several grounds in support of dismissal, the majority of which are directed at the merits of Plaintiff's claims. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (citing *Iqbal*, 555 U.S. at 664.) Additionally, all reasonable inferences must be drawn in favor of the nonmoving party. *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). As such, "[t]he issue is not whether the plaintiff ultimately will prevail, but whether he is entitled to offer evidence to support his claim." *Usher*, 828 F.2d at 561 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Accordingly, challenges to whether a party may ultimately be held liable or whether Plaintiff will succeed in establishing liability under various theories of recovery are not appropriate at this stage in the

---

Appendix L, the tax court order reflecting Michael's role as court appointed executor, (Doc. No. 15-14).

[3] These documents include Appendix A, Amendment to and Complete Restatement of Declaration of Trust, Allen E. Paulson Living Trust, (Doc. No. 15-2); Appendix B, Amendment to Declaration of Trust, Allen E. Paulson Living Trust, (Doc. No. 15-3); Appendix D, the 2003 Settlement and Release to the extent the parties dispute the application and meaning of provisions contained therein, (Doc. No. 15-5); Appendix F, Amended and Restated Declaration of Trust of the Madeleine Anne Paulson Separate Property Trust, (Doc. No. 15-8); Appendix J, the 2013 Settlement Agreement to the extent the parties dispute the application and meaning of the provisions contained therein, (Doc. No. 15-12); and Appendix K, the stipulation and release reflecting the 2013 Settlement, (Doc. No. 15-13). Vikki Paulson and Crystal Christensen's request for judicial notice of the reporter's transcript of March 21, 2011, proceeding is similarly **DENIED**. The transcript supports the contention that Plaintiff delayed in seeking a tax lien against Defendants, but is otherwise irrelevant to resolution of the pending motions.

proceedings. Accordingly, what Defendants cite to as "uncontested facts" throughout their moving papers are not dispositive of Plaintiff's claims. *Cf.*, Fed. R. Civ. P. 12(b)(6) *with* Fed. R. Civ. P. 56. As noted below, the Court will refrain from adjudicating the merits of Plaintiff's claims in resolving the pending motions.[4]

As a further preliminary matter, Plaintiff's opposition to Ms. Pickens' motion narrows the issues raised in the motion to dismiss. For example, Ms. Pickens argues that the Government's claim as to tax assessed in November 2001 is time barred by the applicable ten-year statute of limitations. (Doc. No. 15 at 22–25.) In opposition, Plaintiff argues that it is not seeking to collect any of the estate tax initially assessed in November 2001. (Doc. No. 21 at 31) (noting the complaint "makes no claim against any Defendant for th[e] original tax assessed on November 26, 2001"). Instead, Plaintiff acknowledges that the original tax and related interest were paid through previous partial payments made by the Estate and the Living Trust. (*Id.*) Plaintiff's present claim stems from the additional estate tax assessed on January 30, 2006, in the amount of $6,669,477. (*Id.*) Since the Plaintiff's action is not based on the estate tax assessed in 2001, Ms. Pickens' request to dismiss Plaintiff's claims as untimely is **DENIED**.

Ms. Pickens also argues she is not personally liable for the estate tax under 31 U.S.C. § 3713. (Doc. No. 15-1 at 14.) In response, Plaintiff indicates it is not presently pursuing a claim against Ms. Pickens for personal liability under § 3713. Accordingly, to the extent the complaint can be read as stating a claim against Ms. Pickens under § 3713, that claim is **DISMISSED**.

///

///

---

[4] Plaintiff concedes the scope of liability established is likely to decrease following discovery and resolution of factual disputes. (*See* Doc. No. 27 at 16) (noting the "United States does not care which of the Defendants is deemed to be the executor or administrator so long as someone appears in this case as a representative of the Estate of Allen E. Paulson so that a judgment can be sought and entered against the Estate").

Having addressed the correct scope of review in resolving the present motions, as well as those issues rendered moot through the parties' briefing, the Court now turns to Ms. Pickens' remaining arguments advanced in support of dismissal.

### 1.   26 U.S.C. § 2002

Ms. Pickens argues that she is not liable for estate tax under 26 U.S.C. § 2002 in her capacity as a "statutory executor" of Mr. Paulson's Estate because she was never appointed, and never served as the executor of the Estate. (Doc. No. 15-1 at 13.) As support for this position, Ms. Pickens notes that Michael Paulson was the court-appointed executor and the 2013 decision of the tax court rejected Vikki Paulson and Ms. Christensen's claim that they were "executors" under § 2203. (*Id.*)

In opposition, Plaintiff argues that Michael Paulson was the court-appointed executor, but resigned from that position as of January 15, 2013. (Doc. No. 21 at 13); (*see also* Doc. No. Doc. No. 1 ¶¶ 53, 54) (noting that as part of the 2013 Settlement Michael Paulson resigned as executor of the estate, effective January 15, 2013).

26 U.S.C. § 2001 imposes tax liability on the executor of an estate in that individual's representative capacity. Section 2203 defines the term "executor" as "the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent."

Here, the complaint alleges that although Michael Paulson was once the court-appointed executor of the Estate, he resigned in 2013, with his resignation effective January 15, 2013. (Doc. No. 1 ¶¶ 53, 54.) Additionally, the complaint alleges that Ms. Pickens currently possesses property that belonged to Mr. Paulson. (*Id.* ¶¶ 87–92.) Ms. Pickens' reliance on the 2013 tax court order noting that Michael Paulson was the court-appointed executor was based on Michael Paulson's status as the executor at the time the

petition was filed.[5] Following Michael Paulson's resignation, there was no court-appointed executor, thus making "any person in actual or constructive possession of any property of the decedent" the "executor" for the purposes of imposing representative liability under § 2002.

In reply, Ms. Pickens argues the position advanced by Plaintiff would render every beneficiary of an estate the "statutory executor" when the appointed, qualified, and acting executor resigns. (Doc. No. 25 at 5.) Ms. Pickens also contends that Michael Paulson never resigned and that Plaintiff fails to allege that Michael Paulson resigned. (*Id.*)

Considering the allegations in the complaint, including that Michael Paulson resigned as the court-appointed executor, and that Ms. Pickens received property from Mr. Paulson's estate, Plaintiff has sufficiently stated a claim under § 2002. Ms. Pickens' assertion that Michael Paulson never actually resigned as the court-appointed executor is contrary to the allegations in the complaint, which are entitled to a presumption of truth at this stage in the proceedings.[6] Accordingly, Ms. Pickens' request that the § 2002 claim against her in her representative capacity as statutory executor be dismissed is **DENIED**.

### 2.      *26 U.S.C. § 6324(a)(2)*

Ms. Pickens next argues that she is not liable for estate tax under 26 U.S.C. § 6324(a)(2) as a trustee of the Marital Trust. (Doc. No. 15-1 at 15.) Ms. Pickens contends that it is undisputed that although she was nominated to serve as co-trustee of the Marital Trust, she never accepted that nomination. (*Id.*) Additionally, because Ms. Pickens chose

---

[5] Vikki Paulson and Ms. Christensen filed the petition on April 16, 2012, nearly eight months before Michael Paulson's January 2013, effective date of resignation. (*See* Doc. No. 1 ¶¶ 51, 54.)

[6] Presumably, Ms. Pickens takes issue with Michael Paulson's alleged failure to provide an accounting as required when a court-appointed executor resigns. (*See* Doc. No. 44-1 at 18) (Vikki Paulson and Ms. Christensen's motion to dismiss arguing Michael Paulson's resignation was never completed because he failed to provide an accounting as required by California Probate Code section 10952). However, such challenges are more appropriately considered following the opportunity for discovery, and at a time when the Court is not required to assume the truth of Plaintiff's factual allegations.

to bypass the Marital Trust altogether, the Marital Trust was never funded. (*Id.*) Accordingly, Ms. Pickens asserts that Plaintiff has failed to state a claim against her in her capacity as the trustee of the Marital Trust. (*Id.*)

Plaintiff argues the complaint alleges that the Living Trust "names" Ms. Pickens as a co-trustee of the Marital Trust and that the version of the Living Trust attached to Ms. Pickens' motion supports this contention. (Doc. No. 21 at 17–18.) Plaintiff also argues that the Living Trust does not require Ms. Pickens to formally accept her nomination as co-trustee of the Marital Trust. (*Id.*)

Although Plaintiff and Ms. Pickens dispute the terms of the Living Trust as related to the creation and designation of trustee(s) for the Marital Trust, as alleged in the complaint, the Marital Trust was never funded. Accordingly, it is unclear how Plaintiff can plausibly articulate a claim for relief against Ms. Pickens based on a role that she never assumed by virtue of the Marital Trust never being funded.[7] Thus, Plaintiff has failed to state a claim against Ms. Pickens based on her role as the trustee of the Marital Trust. Accordingly, that claim is **DISMISSED**.

Next, Ms. Pickens asserts that she is not liable under § 6324(a)(2) as a beneficiary of the Living Trust. (Doc. No. 15-1 at 16.) Ms. Pickens contends that governing law is well-settled, and trust beneficiaries are not liable for estate taxes under § 6324(a)(2). (Doc. No. 15 at 16.) In support of this position, Ms. Pickens cites cases finding that trust beneficiaries are not "transferees" or "beneficiaries" as those terms are defined by § 6324(a)(2). (*Id.*) Plaintiff argues § 6324 encompasses beneficiaries of trusts that are included in the gross estate, and disagrees with the line of authority cited by Ms. Pickens. (Doc. No. 21 at 22–26.)

///

_____

[7] The Court notes that the parties disagree about what was required of Ms. Pickens to become the trustee of the Marital Trust. However, because that Trust was never funded, the Court need not interpret her obligations under the Living Trust with respect to her role as trustee of the Marital Trust.

26 U.S.C. § 6324(a)(2) imputes personal liability for federal estate taxes to certain individuals who receive property from an estate at the time of a decedent's death. Under § 6324(a)(2), "if the estate tax. . . is not paid when due, then the spouse, transferee, trustee. . . person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate" is personally liable for the tax "to the extent of the value, at the time of the decedent's death, of such property[.]" To establish personal liability under § 6324, a plaintiff must demonstrate that the estate tax was not paid when due, and the person against whom liability is asserted is one described in the section. *See Garrett v. C.I.R.*, T.C. Memo. 1994-70, 1994 WL 52379 at *12; *Groetzinger v. Commissioner*, 69 T.C. 309, 316 (1977). Definitions for the enumerated categories are not provided in the statute, so federal courts have developed a body of federal law for analyzing liability under § 6324(a)(2). *U.S. v. Johnson*, Case 2:11cv00087, 2013 WL 3925078, at *5 (D. Utah, July 29, 2013) (quoting *Schuster v. C.I.R.*, 312 F.2d 311, 315 (9th Cir. 1962)).

The complaint alleges that Ms. Pickens is a either trustee or beneficiary. A trustee is understood to be the trustee of a trust, within the common use of the term. *Johnson*, 2013 WL 3925087 at *5 (defining trustee as the person who received the estate's property and held legal title, control, or possession of such property). The term "beneficiary" within the meaning of § 6324, however, has been more narrowly construed to include only the beneficiary of a life insurance policy. *See id.* at *8 (citing *Garrett v. C.I.R.*, T.C., 1994 WL 52379 at *12–14 (examining the legislative history and case law of § 6324(a)(2) to conclude "beneficiary" identifies the beneficiary of a life insurance policy). Plaintiff disputes this definition, providing its own analysis of the statutory text (Doc. No. 21 at 23–26); (Doc. No. 27 at 31–32.)

Despite the arguments advanced by Plaintiff, the Court finds *Johnson* persuasive and declines to depart from the reasoning articulated therein. Although Plaintiff argues that *Johnson* is incorrectly decided and contrary to Congressional intent, there is little

authority supporting Plaintiff's position. (*See* Doc. No. 21 at 24) (citing *United States v. Bevan*, Case No 07cv1944, 2008 WL 5179299 (E.D. Cal. Dec. 10, 2008)). However, the position advanced by Ms. Pickens is consistent with other court's interpretations of a "beneficiary" under § 6324. *See Baptiste v. C.I.R.*, 63 T.C.M. (CCH) 2649 (T.C. 1992), *aff'd*, 29 F.3d 1533 (11th Cir. 1994); *Schuster v. Commissioner*, 312 F.2d 311 (9th Cir. 1962).

The complaint does not allege that Ms. Pickens is a beneficiary of a life insurance policy, or any insurance policy, at the time of Mr. Paulson's death. The bare assertion of Ms. Pickens is a "beneficiary" is insufficient in light of authority defining who constitutes a beneficiary under § 6324. For these reasons, the arguments advanced by Plaintiff regarding statutory construction, numerical symmetry within the statute and congressional intent are unpersuasive. (*See* Doc. No. 21 at 24–26.) Accordingly, Plaintiff has failed to allege facts sufficient to state a claim against Ms. Pickens as a beneficiary under § 6324.

The same is true with respect to any allegation that Ms. Pickens is liable as a trustee under § 6324. (*Id.* at 24–25 n.8) (arguing that if Ms. Pickens is not a beneficiary of the trust, "the trustee will always be personally liable under Section 6324(a)(2) for the date of death value of the trust assets held on the date of the decedent's death or received later by such trustee"). To the extent Plaintiff argues Ms. Pickens is a trustee of the Living Trust, the complaint lacks plausible factual allegation to support such a theory. (*See* Doc. No. 15-1 at 16 n.13.) Accordingly, Plaintiff's claims for liability against Ms. Pickens based on her role as a beneficiary or trustee of the Living Trust are **DISMISSED**.

Finally, with respect to alleged liability under § 6324(a)(2), Ms. Pickens argues that she is not liable as the trustee of the Madeleine Anne Paulson Separate Property Trust. (Doc. No. 15-1 at 20.) Ms. Pickens contends property from the Estate was transferred to her in her capacity as a creditor or beneficiary of the Madeleine Anne Paulson Separate Property Trust. (*Id.*) Thereafter, Ms. Pickens relies on the same

arguments set forth above predicated on her contention that she is neither a "transferee" nor a "beneficiary" as those terms are defined by § 6324. (*Id.*)

Plaintiff argues that Ms. Pickens received assets that were transferred from the Living Trust to the Madeleine Anne Paulson Separate Property Trust. (Doc. No. 21 at 20.) As the trustee of that Trust, Plaintiff contends Ms. Pickens is liable in her individual capacity for the value of the transferred assets. (*Id.*)

The complaint clearly alleges that Ms. Pickens was the trustee of the Madeleine Anne Paulson Separate Property Trust, and that she received assets from the Living Trust. (*See* Doc. No. 1 ¶¶ 33–35.) This is sufficient to state a claim against Ms. Pickens based on her alleged role as the trustee of the Madeleine Anne Paulson Separate Property Trust. As such, Ms. Pickens request for dismissal of the § 6324(a)(2) claim based on her receipt of assets from the Living Trust as the trustee of her separate property trust is **DENIED**.

### 3. *Indemnification*

Ms. Pickens also moves to dismiss Plaintiff's claim for indemnification, arguing that she is not liable to the Estate for any estate taxes based on the indemnification provision of the 2003 Settlement. (Doc. No. 15-1 at 21.) Additionally, Ms. Pickens argues that Plaintiff is not a third-party beneficiary to the 2003 Settlement and Plaintiff's claim for breach of that agreement necessarily fails. (*Id.* at 21–22.) Plaintiff argues Ms. Pickens' interpretation of the 2003 Settlement is self-serving and insufficient to conclude, as a matter of law, that Plaintiff is not a third party beneficiary. (Doc. No. 21 at 27.) As support for its position, Plaintiff cites portions of the 2003 Settlement, under which Ms. Pickens is responsible for payment of estate taxes stemming from the distribution of assets to her from the Living Trust. (*Id.* at 28.)

As alleged in the complaint, and assumed as true for the purposes of this motion, Plaintiff has stated a claim for indemnification against Ms. Pickens, either directly under the 2003 Settlement or through a third-party beneficiary theory. The Court will not engage in the contractual interpretation and determination of the merits as urged by the

parties. *See Gardner v. RSM & A Foreclosure Servs., LLC*, No. 12CV2666, 2013 WL 1129392, at *3 (E.D. Cal. Mar. 18, 2013) ("It is inappropriate at the motion to dismiss stage for this Court to interpret the parties' contract and evaluate the viability of Plaintiff's claims based on the terms of the contract."). For these reasons, Ms. Pickens' motion to dismiss the claims for indemnification in the complaint is **DENIED**.

### 4.    *Interest*

Lastly, Ms. Pickens argues that she is not liable for prejudgment and post-judgment interest under 26 U.S.C. §§ 6901, 6601, and 6621. (Doc. No. 15-1 at 22.) This argument is predicated on Ms. Pickens' contention that she has no liability for estate tax under 26 U.S.C. § 6324(a)(2). (*Id.*) Because the Court has not yet adjudicated whether Ms. Pickens is liable for the estate tax, it would be premature to dismiss Plaintiff's claims for interest. Accordingly, Ms. Pickens' request to dismiss the claims for prejudgment and post-judgment interest is **DENIED**.

For the reasons detailed above, Ms. Pickens' motion to dismiss is **GRANTED** as to any purported claim under § 3713, as well as any claim under § 6234(a)(2) stemming from Ms. Pickens' role as trustee of the Marital Trust, as beneficiary of the Living Trust, or as transferee of the Living Trust. As to all other asserted grounds, the motion to dismiss is **DENIED**.

### C.    Vikki Paulson and Ms. Christensen's Motion to Dismiss

Vikki Paulson and Ms. Christensen assert several of the same arguments as Ms. Pickens in support of dismissal. (*See generally* Doc. No. 19-1.) Plaintiff similarly opposes dismissal. (Doc. No. 27.) To the extent the parties' arguments with respect to this motion mirror those presented above, they are incorporated by reference as if fully restated herein.

### 1.    *26 U.S.C. § 2002*

Vikki Paulson and Ms. Christensen argue they were never "statutory executors" of the Estate and cannot be held liable under § 2002. (*See* Doc. No. 19-1 at 10–11.) Having already concluded the complaint sufficiently alleges Michael Paulson resigned as

executor of the Estate, and for the reasons set forth more full above, this argument is rejected. Accordingly, Vikki Paulson and Ms. Christensen's request to dismiss the § 2002 claim is **DENIED**.

### 2.    28 U.S.C. § 6324(a)(2)

Vikki Paulson and Ms. Christensen argue that they are not liable for estate taxes as either transferees or trustees because they did not have or receive any property of the Estate on the date of Mr. Paulson's death. (Doc. No. 19-1 at 13.) Vikki Paulson and Ms. Christensen similarly rely on *Johnson*, but focus on the requirement that a transferee or trustee be in possession of the Estate property or receive Estate property "on the date of the decedent's death." (*Id.* at 14.) Plaintiff argues the clear language of § 6324 does not require that a transferee receive property on the date of the decedent's death under the statute. (Doc. No. 27 at 24–25.)

The Court similarly finds *Johnson* and the reasoning set forth therein persuasive with respect to whether Plaintiff must allege that the transferee received property immediately upon the date of decedent's death. *See Johnson*, 2013 WL 3925078, at *5 ("Because section 6324(a)(2) may be interpreted in multiple ways, it is ambiguous and must be interpreted in favor of the Heirs. The court concludes that in order for a person to be a transferee under section 6324(a)(2), the person must have or receive property from the gross estate immediately upon the date of decedent's death rather than at some point thereafter."); *see also Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 508 (1932) (noting that ambiguities as to the meaning of a tax statute are interpreted in favor of the taxpayer). The complaint does not allege that Vikki Paulson or Ms. Christensen were in possession of Estate property or received such property immediately after Ms. Paulson's death. For these reasons, Plaintiff has failed to state a claim against Vikki Paulson or Ms. Christensen as trustees or transferees under § 6234(a)(2). Accordingly, those claims are **DISMISSED**.

///

///

### 3.     *California Probate Code § 19001*

Vikki Paulson and Ms. Christensen move to dismiss Plaintiff's claim predicated on California Probate Code section 19001. (Doc. No. 19-1 at 19.) In support of dismissal, Vikki Paulson and Ms. Christensen argue that § 19001(a) does not apply to estate taxes, and therefore cannot serve as a basis for liability for unpaid estate taxes incurred after a settlor's death. (*Id.* at 19–20.) Plaintiff argues that it has stated a claim because § 19001 includes "expenses of administration of the estate" as well as "all other proper charges against the trust estate, including taxes." (Doc. No. 27 at 21) (quoting Cal. Prob. C. § 19001(f), (b).) Lastly, Plaintiff cites California Probate Code Section 11420, which states the priority to be assigned to debts, claims, and costs of administration to argue the estate taxes owed are entitled to the highest preference in order of payment. (*Id.* at 22.)

California Probate Code section 19001(a) states, "Upon the death of a settlor, the property of the deceased settlor . . . is subject to the claims of creditors of the deceased settlor's probate estate and to the expenses of administration of the probate estate to the extent that the deceased settlor's probate estate is inadequate to satisfy those claims and expenses." The portion of statutory text relied upon by Vikki Paulson and Ms. Christensen, Section 19000(a)(2) defines a "claim" as "a demand for payment for . . . [l]iability for taxes incurred before the deceased settlor's death, whether assessed before or after the deceased settlor's death[.]"

Considering the cited statutory text and the allegations in the complaint, the Court concludes Plaintiff has adequately stated a claim under § 19001. (*See* Doc. No. 1 ¶¶ 7, 18, 66.) Whether the estate tax constitutes an expense of administration, a debt, or a claim as encompassed by section 19001, can be appropriately determined when the Court is not bound by the allegations in the complaint. Therefore the request to dismiss the claims based on California Probate Code § 19001 is **DENIED**.

### 4.     *Third-Party Contractual Claims*

Vikki Paulson and Ms. Christensen lastly move to dismiss the claim that they are liable for breach of a third party contract. (Doc. No 19-1 at 20.) Vikki Paulson and Ms.

Christensen contend the complaint alleges that they breached an unspecified third party contract, but lacks factual allegations to support that theory of liability. (*Id.*)

Plaintiff's opposition clarifies that the third party beneficiary theory stems from Vikki Paulson and Ms. Christensen's roles as the current trustees of the Living Trust. (Doc. No. 27 at 19.) Plaintiff cites the terms of the Living Trust, which obligate the trustees to pay all estate taxes owed by the Estate as support for its position. (*Id.*)

Considering the allegations in the complaint as a whole, including the allegations that Vikki Paulson and Ms. Christensen are the current co-trustees of the Living Trust, Plaintiff has stated a claim under a third party beneficiary theory. Accordingly, the motion to dismiss is **DENIED** as to this claim.

D.   James Paulson's Motion to Dismiss

Defendant James Paulson is proceeding pro se in this litigation, and has similarly moved to dismiss the complaint. (*See* Doc. No. 36.) James Paulson challenges the propriety of the deferred payment election pursuant to § 6166, as well as the timeliness of Plaintiff's actions to collect the estate taxes owed.[8] (*Id.*) James Paulson also argues there is no evidence that he was ever the executor of the Estate. (*Id.* at 7.)

Like the other defendants, the complaint asserts a claim against James Paulson in his representative capacity as a potential statutory executor of the Estate under 26 U.S.C. § 2203. In opposition to James Paulson's motion, Plaintiff acknowledges that it "merely seeks to obtain a judgment against the Estate by naming its executor or administrator in a representative capacity" to "reduce the estate tax liability to a judgment under 26 U.S.C. § 7402, and to extend the statute of limitations for collection of that tax under 26 U.S.C. § 6502." (Doc. No. 42 at 5) Plaintiff also acknowledges that the defendant deemed to be the

---

[8] Whether the § 6166 election was proper is not appropriate for consideration in the instant context as it is not a challenge to the adequacy of the factual allegations in the complaint. Additionally to the extent James Paulson's motion challenges the truth of the factual allegations underlying Plaintiff's complaint, those arguments are premature for consideration in the instant context.

actual executive or administrator is of little consequence, so long as someone appears in the case as a representative of the Estate. (*Id.* at 6.)

As with the other defendants, the Court finds there are sufficient facts alleged, when taken as true, to state a plausible claim for relief against James Paulson as the statutory executor of the Estate. In addition to alleging Michael Paulson resigned as the court-appointed executor, the complaint alleges James Paulson acted as a co-trustee of the Living Trust. (Doc. No. 1 ¶ 44.) These allegations are sufficient to state a claim against James Paulson as a statutory executor.

Plaintiff also asserts a claim against James Paulson for personal liability under § 6324(a)(2), because he served as a co-trustee of the Living Trust and received assets that were included in the gross estate. (Doc. No. 1 ¶¶ 73–77); (Doc. No. 42 at 7.)[9] Upon review, the Court finds the claim for personal liability under § 6324(a)(2) based on James Paulson's role as a co-trustee of the Estate is sufficiently alleged.

For these reasons, James Paulson's motion to dismiss is **DENIED**.

E.   Ms. Pickens' Motion to Dismiss Cross-Claim

Defendant Michael Paulson did not move to dismiss the claims asserted in the complaint, instead filing an answer and cross-claim. (Doc. No. 38.) Michael Paulson asserts he is entitled to indemnification from Ms. Pickens based on a provision in 2003 Settlement agreement. (*Id.* at 21.)[10] Ms. Pickens has moved to dismiss the cross-claim citing various sections of the 2003 Settlement, arguing that any indemnification by Ms. Pickens relates only to estate tax payable because of distributions made pursuant to the 2003 Settlement. (Doc. No. 40-1 at 3.) Ms. Pickens contends that Michael Paulson's cross-claim fails to state a claim because there has been no estate tax liability assessed because of distributions made to Ms. Pickens, as all distributions qualified for the marital

---

[9] James Paulson does not address this claim in his motion to dismiss, but Plaintiff addresses it in opposition. (*See* Doc. No. 42 at 10.)

[10] Additionally, Michael Paulson asserts he is entitled to indemnity as trustee of the Living Trust and as co-executor of the Estate. (*Id.*)

deduction. (*Id.* at 4.) In opposition, Michael Paulson urges the Court not to dismiss the cross-claim until liability for the estate taxes at issue has been determined.

The Court agrees that dismissal of Michael Paulson's cross-claim for indemnification would be premature at this stage. Additionally, the parties rely on different provisions of the 2003 Settlement agreement as support for their respective positions regarding indemnification. For example, Ms. Pickens relies on paragraph 21 of the 2003 Settlement, while Michael Paulson suggests indemnification is appropriate under paragraph 4.[11] In the limited context of ruling on a motion to dismiss, the Court declines to decide which provision governs. For these reasons, Ms. Pickens' motion to dismiss the cross-claim is **DENIED**.

F.   Vikki Paulson and Ms. Christensen's Motion to Dismiss Cross-Claim

Michael Paulson similarly asserts a cross-claim against Vikki Paulson and Ms. Christensen for indemnification stemming from the 2013 Settlement. (Doc. No. 38 at 21.) In opposition, Michael Paulson similarly requests the Court decline to dismiss the claim for indemnification until liability has been established. (Doc. No. 51 at 5.)

Vikki Paulson and Ms. Christensen assert several grounds for dismissal, including that they are not executors of the Estate, that Michael Paulson released any claim for indemnification as part of the 2013 Settlement, and that the portion of the Settlement relied upon by Michael Paulson omits crucial language. (Doc. No. 44 at 7.) Vikki Paulson and Ms. Christensen also filed a second request for judicial notice with their motion to dismiss the cross-claim and seek judicial notice of several documents pursuant to Rule 201 or the doctrine of incorporation by reference. (Doc. No. 44-2.) The arguments in support of dismissing Michael Paulson's claim for indemnification rely largely on

---

[11] Michael Paulson alternatively argues paragraph 21 of the 2003 Settlement is ambiguous and cannot be interpreted as a matter of law to preclude his claim for indemnification.

testimony before the Probate Court regarding the 2013 Settlement and the terms of the agreement itself. (*See, e.g.*, Doc. No. 44-1 at 9–11.)

For many of the same reasons articulated above, the Court declines to dismiss Michael Paulson's claim for indemnification against Vikki Paulson and Ms. Christensen at this time. First, Michael Paulson objects to the request for judicial notice, arguing the documents are irrelevant in ruling on the motion to dismiss. (Doc. No. 51 at 6 n.4.) Michael Paulson also argues that the Probate Court transcript has been highly edited in an attempt to demonstrate that Michael Paulson knew he was releasing any claim for indemnification. (*Id.*) Although the Court could properly consider the transcript in its entirety, it declines to do so where the meaning and effect of 2013 Settlement agreement is disputed. As noted in opposition, "it is unclear whether any of the [Plaintiff's] claims against Michael Paulson arise out of the 2013 Settlement Agreement." (*Id.*) If liability is determined, then a claim for indemnification could possibly arise based on the facts alleged in the cross-claim. Dismissal of the claim when the underlying grounds for liability have not yet been adjudicated is premature.

Additionally, Vikki Paulson and Ms. Christensen rely on the argument that they are not statutory executors of the Estate in support of dismissal. As set forth above, the complaint states plausible grounds for finding they were executors of the Estate following Mr. Paulson's resignation. With respect to resignation, Vikki Paulson and Ms. Christensen now assert Michael Paulson never completed his resignation because he did not file an accounting or deliver the Estate to a successor personal representative. (Doc. No. 44-1 at 18.) Again, factual allegations contrary to those in the complaint and that are directed at the merits of a claim are not appropriate for consideration. For these reasons, the Court declines to dismiss Michael Paulson's cross-claim, and Vikki Paulson and Ms. Christensen's motion is therefore **DENIED**. Because the Court will not consider the documents attached to the request for judicial notice to the extent suggested by the parties, the request for judicial notice is also **DENIED**.

///

## IV.   CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.    Ms. Pickens' motion to dismiss the complaint, (Doc. No. 15), is **GRANTED** as to any claim under § 3713, and as to any claim based on her role as the trustee of the Marital Trust. The motion is **DENIED** on all other grounds.

2.    Vikki Paulson and Ms. Christensen's motion to dismiss the complaint, (Doc. No. 19), is **GRANTED IN PART** and **DENIED IN PART**. The request for judicial notice filed in connection with the motion to dismiss the complaint, (Doc. No. 19-2), is **GRANTED IN PART** and **DENIED IN PART**.

3.    James Paulson's motion to dismiss, (Doc. No. 36), is **DENIED**.

4.    Ms. Pickens' motion to dismiss the cross-claim, (Doc. No. 40), is **DENIED**.

5.    Vikki Paulson and Ms. Christensen's motion to dismiss the cross-claim, (Doc. No. 44), is **DENIED**. The request for judicial notice filed with the motion to dismiss the cross-claim, (Doc. No. 44-2), is also **DENIED**.

If Plaintiff may plausibly allege additional facts to cure the deficiencies noted herein, Plaintiff may file an amended complaint only as to the dismissed claims within fourteen (14) days of the date of this order. Defendants are otherwise ordered to file an answer to the complaint or cross-claim, as applicable, within fourteen (14) days of the date of this order or within fourteen (14) days of an amended complaint being filed, whichever is later.

**IT IS SO ORDERED**.

Dated:  September 6, 2016

Hon. Anthony J. Battaglia
United States District Judge