# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>JOHN MICHAEL PAULSON, as the Executor or Statutory Executor of the Estate of Allen E. Paulson, and Individually; JAMES D. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson; VIKKI E. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson Living Trust, and Individually; CRYSTAL CHRISTENSEN, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Allen E. Paulson Living Trust, and Individually; MADELEINE PICKENS, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of the Marital Trust created under the Allen E. Paulson Living Trust, as Trustee of the Madeleine Anne Paulson Separate Property Trust, and Individually,<br><br>                              Defendants. | Case No.: 15cv2057-AJB-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS-DEFENDANTS VIKKI E. PAULSON AND CRYSTAL L. CHRISTENSEN'S MOTION TO DISMISS CROSS-CLAIMANT MADELEINE PICKENS'S CROSS-CLAIMS**<br><br>**(Doc. No. 63)** |

```
MADELEINE PICKENS, as Statutory
Executor of the Estate of Allen E.
Paulson, as Trustee of the Marital Trust
created under the Allen E. Paulson Living
Trust, as Trustee of the Madeleine Anne
Paulson Separate Property Trust, and
Individually,
                              Cross-claimant,
v.
JAMES D. PAULSON, as Statutory
Executor of the Estate of Allen E.
Paulson; VIKKI E. PAULSON, as
Statutory Executor of the Estate of Allen
E. Paulson, as Trustee of the Allen E.
Paulson Living Trust, and Individually;
and CRYSTAL CHRISTENSEN, as
Statutory Executor of the Estate of Allen
E. Paulson, as Trustee of the Allen E.
Paulson Living Trust, and Individually,
                              Cross-defendants.
```

On September 16, 2015, the United States of America instituted an action to recover unpaid estate taxes, penalties, and interest from the Estate of Allen E. Paulson. (Doc. No. 1.) Presently before the Court is Vikki Paulson and Crystal Christensen's motion to dismiss Madeleine Pickens's cross-claims. (Doc. No. 63.) Having reviewed the parties' arguments, the Court finds this motion suitable for determination on the papers and without oral argument in accordance with Civil Local Rule 7.1.d.1. For the reasons set forth more fully below, the Court **GRANTS** Vikki Paulson and Crystal Christensen's request for judicial notice and **GRANTS IN PART** and **DENIES IN PART** Vikki Paulson and Crystal Christensen's motion to dismiss Madeleine Pickens's cross-claims.

///
///
///

## I.    FACTUAL BACKGROUND

The following facts are taken from the complaint and construed as true for the limited purpose of resolving the pending motion. *See Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).

On December 23, 1986, Allen Paulson ("Mr. Paulson") established the Allen E. Paulson Living Trust (hereafter referred to as "the Living Trust"). (Doc. No. 55 ¶ 7.) In 1988, before their marriage, Mr. Paulson and Madeleine Pickens ("Ms. Pickens") entered into an Antenuptial Agreement. (*Id.* ¶ 8.) On July 19, 2000, Mr. Paulson died. (*Id.* ¶ 10.) Mr. Paulson was survived by several heirs, including his wife, Ms. Pickens, his three sons, Richard Paulson, James Paulson, and Michael Paulson, and a granddaughter Crystal Christensen. (*Id.* ¶ 11.)

At the time of Mr. Paulson's death, the Living Trust held all of Mr. Paulson's assets except for his shares in the Gold River Hotel & Casino Corporation (hereafter referred to as "Gold River shares"). (*Id.* ¶ 14.) The Living Trust's assets included real estate valued at $24,764,500, stocks and bonds valued at $113,761,706, cash and receivables valued at $23,664,644, and miscellaneous assets valued at $31,243,494.[1] (*Id.*)

In 2003, Ms. Pickens entered into a settlement agreement with Michael Paulson and Nicholas Diaco, co-trustees of the Living Trust, and with Michael Paulson and James D. Paulson, individually (hereafter referred to as the "2003 Settlement"). (*Id.* ¶ 17.) The 2003 Settlement was meant to resolve prolonged litigation regarding Ms. Pickens's right to certain properties pursuant to the Living Trust and the Antenuptial Agreement, which Michael Paulson refused to transfer to her. (*Id.* ¶ 15.) Specifically, the 2003 Settlement imparted to Ms. Pickens various properties whose transfers fully discharged and terminated any and all interest Ms. Pickens had in the Living Trust and Estate. (*Id.* ¶ 17.)

After Mr. Paulson's death, Michael Paulson and Edward White were appointed and served as co-executors of the Living Trust until Edward White's resignation on October 8, 2001. (*Id.* ¶ 12.) Edward White was then replaced by Nicholas Diaco. (*Id.* ¶ 16.) On March

---

[1] The value of the assets listed were valued at the time of Mr. Paulson's death. (Doc. No. 55 ¶ 14.)

24, 2009, the Probate Court removed Michael Paulson as co-trustee of the Living Trust for misconduct and gross mismanagement of the Living Trust's assets. (*Id.* ¶ 24.) The court then appointed Vikki Paulson and James D. Paulson as co-trustees. (*Id.* ¶ 25.) In April of 2009, the net value of the assets of the Living Trust totaled $13,738,727. (*Id.*) On June 10, 2010, James D. Paulson was removed as co-trustee for breach of court orders. (*Id.* ¶ 26.) Vikki E. Paulson thus served as the sole trustee of the Living Trust until February 28, 2011, when Crystal Christensen was appointed to serve as co-trustee with her. (*Id.*) The net value of the assets of the Living Trust in 2011 totaled $8,802,034. (*Id.*)

On January 15, 2013, Vikki Paulson and Crystal Christensen, as co-trustees of the Living Trust, entered into a settlement agreement with Michael Paulson to which they distributed substantially all of the remaining assets of the Living Trust to Michael Paulson free of any encumbrances. (*Id.* ¶ 27.) The assets included the Trust's $28.5 million investment in Supersonic Aerospace International, LLC, and the stock in the Gold River shares, which the IRS valued at $5,380,000. (*Id.*)

On January 16, 2005, the IRS determined there existed a deficiency in estate tax in the amount of $37,801,245. (*Id.* ¶ 21.) Mr. Paulson's taxable estate, net of the property distributed to Ms. Pickens, totaled $77,963,709. (*Id.*) On December 2, 2005, the IRS and Michael Paulson agreed upon an estate tax deficiency in the amount of $6,699,477. (*Id.* ¶ 22.) According to the Tax Court decision, all of the transfers to Ms. Pickens qualified for the marital deduction under 26 U.S.C. § 2056.[2] (*Id.*) In 2015, the United States then filed a complaint seeking a judgment against the Estate of Allen E. Paulson for $10,621,217 in unpaid estate taxes, penalties, and interest. (Doc. No. 1 at 1.)

In sum, Ms. Pickens alleges that pursuant to California Probate Code §§ 16000-16015, James Paulson, Vikki Paulson, and Crystal Christensen had a duty to administer the Living Trust according to its terms, to act impartially in investing, to refrain from using or dealing with the property of the Living Trust for his or her own profit, and to take

---

[2] Section 2056 states that the value of the taxable estate under the marital deduction shall "be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." 28 U.S.C. § 2056.

reasonable steps to control and preserve the property of the Living Trust for the benefit of all beneficiaries. (Doc. No. 55 ¶ 29.) However, Ms. Pickens contends that James and Vikki Paulson, and Crystal Christensen breached their fiduciary duty to Ms. Pickens by failing to apply the assets of the Living Trust to discharge the estate tax liabilities due to the United States as agreed upon in the 2003 Settlement. (*Id.* at 7-10.)

## II.   PROCEDURAL BACKGROUND

On September 16, 2015, the United States of America filed a complaint against John Michael Paulson, James D. Paulson, Vikki E. Paulson, Crystal Christensen, and Madeleine Pickens for unpaid taxes. (*See generally* Doc. No. 1.) On November 13, 2015, Madeleine Pickens filed a motion to dismiss. (Doc. No. 15.) On December 7, 2015, Crystal Christensen, and Vikki E. Paulson filed another motion to dismiss. (Doc. No. 19.) On January 13, 2016, James D. Paulson also filed a motion to dismiss. (Doc. No. 36.) On February 8, 2016, Crystal Christensen and Vikki E. Paulson filed a motion to dismiss Michael Paulson's cross-claim. (Doc. No. 44.) On September 6, 2016, the Court granted in part and denied in part Madeleine Pickens's motion to dismiss, granted in part and denied in part Vikki Paulson and Crystal Christensen's motion to dismiss, denied James Paulson's motion to dismiss, denied Madeleine Pickens's motion to dismiss, and denied Vikki Paulson and Crystal Christensen's motion to dismiss Michael Paulson's cross-claim. (Doc. No. 54.) On September 20, 2016, Ms. Pickens filed a cross-claim against Crystal Christensen, James Paulson, and Vikki Paulson. (Doc. No. 55.) The present action by Crystal Christensen and Vikki Paulson (collectively referred to as "Cross-defendants") was filed on October 14, 2016.[3] (Doc. No. 63.) Ms. Pickens opposes the motion. (Doc. No. 65.)

## III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack

---

[3] Though the cross-claim by Ms. Pickens was against Crystal Christensen, Vikki Paulson, and James Paulson. The Court notes that James Paulson is not a party to the present motion to dismiss.

5

of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.,* 88 F.3d 780, 783 (9th Cir. 1996) (citations omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.,* 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679.

## IV.   DISCUSSION

### A.   Judicial Notice

As an initial matter, Cross-defendants ask the Court to take judicial notice of the 2003 Settlement in support of their motion to dismiss. (Doc. No. 63-2.) Federal Rule of Evidence 201 allows a court to take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." Fed. R. Evid. 201(b)(2); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The court may also take judicial notice of documents that are matters of public record. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (noting a district court may take "judicial notice of matters of public record outside the pleadings" when determining whether a complaint fails to state a claim).

Cross-defendants contend that Ms. Pickens's cross-claim relies upon the 2003 Settlement, thus the Court may consider it. (Doc. No. 63-1 at 10.) A court may take judicial notice of a document on a motion to dismiss pursuant to Rule 12(b)(6), if the unattached

document is "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). The Court finds the 2003 Settlement central to the instant action. This is evident by Ms. Pickens's repeated use of portions of the 2003 Settlement throughout her cross-claim. Furthermore, neither party disputes the authenticity or opposes the use of the 2003 Settlement. As a result, the Court **GRANTS** Cross-defendants' request for judicial notice.

### B. Cross-defendants' Motion to Dismiss

Cross-defendants argue two main contentions in support of their motion to dismiss: (1) that they do not owe, and have never owed, Ms. Pickens any fiduciary duty; and (2) that Ms. Pickens's claims for indemnity should be dismissed to the extent they are alleged against Cross-defendants in their personal capacity. (Doc. No. 63-1 at 11-14.)

#### 1. The Alleged Breach of Fiduciary Duty

Cross-defendants contend that Ms. Pickens is no longer a beneficiary to the trust as pursuant to the 2003 Settlement, the various properties transferred to Ms. Pickens "fully discharged and terminated any and all interest she had in the Living Trust and Estate." (*Id.* at 11-12.) As a result, Ms. Pickens lacks standing to challenge the alleged acts of Cross-defendants. (*Id.* at 12.) In opposition, Ms. Pickens contends that pursuant to Section 21 of the 2003 Settlement, all estate taxes are the obligation of the co-trustees of the Living Trust. (Doc. No. 55 ¶ 18.)

Section 21 of the 2003 Settlement states:

> Except as otherwise provided in this Paragraph 21, the Parties acknowledge and agree that [Ms. Pickens] shall have no liability for the payment of Death Taxes, or gift taxes attributable to gifts made by [Mr. Paulson] during his lifetime, and that all such taxes shall be paid by the Co-Trustees, and, in furtherance of such obligation, the Co-Trustees agree to indemnify, defend and hold harmless [Ms. Pickens] from and against any such liability. The

7

>liability for any estate tax or gift tax . . . payable as a result of any distribution made to [Ms. Pickens] pursuant to this Agreement shall be borne entirely by [Ms. Pickens].

(Doc. No. 63-3 at 36.)

Here, even taking the allegations in the cross-claim as true, Ms. Pickens has failed to sufficiently state a claim for breach of fiduciary duty.[4] In her cross-claim, Ms. Pickens summarily concludes that Cross-defendants breached their fiduciary duty to her by failing to apply the assets of the Living Trust to discharge the estate tax liability. (Doc. No. 55 ¶¶ 42, 54.) However, the Court highlights that Ms. Pickens also repeatedly states throughout her cross-claim that the transfer of properties under the 2003 Settlement "fully discharged and terminated any and all interest she had in the Living Trust and Estate." (*Id.* ¶¶ 17, 21, 24, 27.) Accordingly, it is unclear to the Court how Ms. Pickens can be owed a fiduciary duty when the 2003 Settlement ended her rights as a beneficiary. *See* Cal. Prob. Code § 16464(a) ("[A] beneficiary may be precluded from holding the trustee liable for a breach of trust by the beneficiary's release or contract effective to discharge the trustee's liability to the beneficiary for that breach.").

Thus, the Court finds that the cross-claim lacks factual allegations to properly plead a claim for which relief may be granted. Specifically, the cross-claim does not plead how Ms. Pickens is still owed a fiduciary duty or how she may bring this action against Cross-defendants when the distributions made under the 2003 Settlement discharged her interest in the Living Trust. Additionally, even if Ms. Pickens was successful in pleading the first two elements of a claim for breach of fiduciary duty, the Court is unable to determine from her cross-claim any evidence of damages as no liability for the estate taxes at issue has been determined.

The Court does note that Ms. Pickens argues in her Opposition that Cross-defendants are liable for their predecessors' breach because they knew that their predecessors had not

---

[4] The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1137 (2003).

paid the estate taxes, permitted the non-payment to continue, and that their fiduciary duty to her is not "discharged until her property is no longer subject to claims for estate tax." (citing *Mims-Brown v. Brown*, 428 S.W. 3d 366, 375 (Tex. App. 2014)) (Doc. No. 65 at 4.)[5] However, the Court is unwilling to assume facts that are not alleged in the complaint. *See Associated Gen. Contractors of Cal., Inc.,* 459 U.S. at 526. As a result, as currently configured, Ms. Pickens has not properly pled a cause of action for breach of fiduciary duty. Accordingly, Ms. Pickens's claim is **DISMISSED**.

2. Indemnification

Ms. Pickens next argues that under Section 21 and 41 of the 2003 Settlement that co-trustees agreed to indemnify her for any estate tax liability and for reasonable attorney's fees. (Doc. No. 55 ¶¶ 46-51, 58-63.) In opposition, Cross-defendants first argue that Section 41 only refers to litigation between the "Parties" to the 2003 Settlement. (Doc. No. 63-1 at 14-15.) Thus, as Cross-defendants were not "parties" to the agreement as defined by the 2003 Settlement, Ms. Pickens has no legal basis to hold them liable. (*Id.*) Second, Cross-defendants argue that under Section 18000 of the California Probate Code that a trustee is not personally liable for obligations incurred in administration of a trust. (*Id.* at 13.)

Section 41 of the 2003 Settlement states that "[i]n the event of any litigation between the Parties to enforce any of the provisions of this Agreement or any right of any Party arising out of this Agreement, the unsuccessful party to such litigation agrees to pay to the prevailing Party all costs and expenses, including reasonable attorney's fees incurred by the prevailing Party . . . ." (Doc. No. 63-3 at 51.) "Party" or "Parties" is defined by the 2003 Settlement as a "party or the parties to this Agreement." (*Id.* at 7.) "Co-Trustees" is defined as either "(1) Michael J. Paulson, or his successor, serving as the sole Trustee, or (2) J. Michael Paulson, or his successor, and such other person as may be appointed to serve as a co-trustee . . . ." (*Id.* at 5.)

---

[5] The Court also notes that it finds this case from Texas not only unpersuasive, but also inapplicable to the present matter as *Mims-Brown* involves the right of survivorship in a joint tenancy. *Mims-Brown*, 428 S.W. at 369.

Here, Ms. Pickens precipitously states that under Section 41 of the 2003 Settlement that she is entitled to recover from the co-trustees i.e. Cross-defendants for any expenses in litigating portions of the 2003 Settlement. (Doc. No. 55 ¶¶ 51, 63.) However, this bare assertion not only misstates the phrasing of Section 41, but also lacks plausible legal and factual allegations to show how Cross-defendants as "co-trustees" are also "parties" to the 2003 Settlement. As stated above, the 2003 Settlement clearly provides two separate definitions for "parties" and "co-trustee." In addition, as noted by Cross-defendants in their motion to dismiss, the opening paragraphs of the 2003 Settlement identify several persons as "parties" to the 2003 Settlement, including Michael Paulson and Nicholas Diaco, but makes no reference to either of the Cross-defendants or any future co-trustee of the Living Trust. (Doc. No. 63-1 at 15.) In short, Ms. Pickens's cross-claim jumbles and misstates the actual terms of Section 41. Thus, having failed to plead sufficient facts to support her argument, Ms. Pickens's claim under Section 41 of the 2003 Settlement is **DISMISSED**.

Next, as to Cross-defendants' second contention, Cross-defendants argue that Section 21 provides no support to impose personal liability on successor trustees. (Doc. No. 63-1 at 14.) Thus, if Ms. Pickens wishes to assert personal liability against Cross-defendants, the Court should grant the motion to dismiss. (*Id.* at 13-15.) The Court finds that Ms. Pickens has not responded to this argument by Cross-defendants. Moreover, it is unclear from the phrasing of the cross-claim as to whether Ms. Pickens wishes to pursue her claim of indemnity against Cross-defendants personally or in their fiduciary capacity. Accordingly, in the limited context in ruling on a motion to dismiss, the Court declines to make a finding as to whether Ms. Pickens is indemnified under Section 21 of the 2003 Settlement. As a result, Cross-defendants' motion to dismiss as to this claim is **DENIED**.

## V.   CONCLUSION

For the reasons set forth more fully above, the Court **GRANTS** Cross-defendants' request for judicial notice and **GRANTS IN PART** and **DENIES IN PART** Cross-defendants' motion to dismiss Ms. Pickens's cross-claim. Additionally, finding that amendment would not be futile or prejudicial, the Court will allow Ms. Pickens leave to amend. Thus, if Ms. Pickens may plausibly allege additional facts to cure the deficiencies

noted herein, she may file an amended cross-claim within fourteen (14) days of the date of this order. Cross-defendants are otherwise ordered to file an answer to the cross-claim, as applicable, within fourteen (14) days of the date of this order or within fourteen (14) days of an amended cross-claim being filed, whichever is later.

**IT IS SO ORDERED**.

Dated: January 4, 2017

Hon. Anthony J. Battaglia
United States District Judge