UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>JOHN MICHAEL PAULSON, as the Executor or Statutory Executor of the Estate of Allen E. Paulson, and Individually, JAMES D. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson, et al.,<br><br>          Defendants. | Case No.: 15-cv-2057 AJB (NLS)<br><br>**ORDER DENYING DEFENDANTS VIKKI E. PAULSON AND CRYSTAL CHRISTENSEN'S MOTION TO STAY**<br><br>(Doc. No. 103) |

  Pending before the Court is Defendants Vikki E. Paulson and Crystal Christensen's motion to stay the proceedings. (Doc. No. 103-1.) Plaintiff the United States and Defendants Madeleine Pickens and John Michael Paulson oppose the motion. (Doc. Nos. 127, 128, 129.) On August 3, 2018, the Court held a hearing on the motion and then submitted the matter. (Doc. No. 170.) As will be explained in great detail below, the Court **DENIES** Vikki E. Paulson and Crystal Christensen's motion to stay.

///

///

# BACKGROUND

A. Factual Background

On December 23, 1986, Allen Paulson ("Mr. Paulson") established the Allen E. Paulson Living Trust (hereafter referred to as "Living Trust"). (Doc. No. 1 ¶ 9.) In 1988, Mr. Paulson entered into an antenuptial agreement with Madeleine Pickens ("Ms. Pickens") in anticipation of marriage. (*Id.* ¶ 10.) The agreement defined their respective separate property and established certain gifts for Ms. Pickens in the event of Mr. Paulson's death. (*Id.*) The Living Trust was subsequently amended and restated several times in early 2000. (*Id.* ¶ 11.) On July 19, 2000, Mr. Paulson died. (*Id.* ¶ 21.)

The Living Trust provided Ms. Pickens with the power to elect between receiving property under the antenuptial agreement or under the Living Trust, but not under both. (*Id.* ¶¶ 10, 12–15.) The Living Trust also created a Marital Trust for Ms. Pickens' benefit. (*Id.* ¶¶ 13–15.) Under the terms of the Living Trust, the Marital Trust was to receive a residence and all personal property located at 14497 Emerald Lane in Rancho Sante Fe, California. (*Id.* ¶ 13.) The Living Trust also gave Ms. Pickens the right to receive a second residence located in Del Mar, California, as well as all household furnishings, furniture, and all insurance policies related to the Del Mar property. (*Id.* ¶ 14.) Finally, the Living Trust provided that the Marital Trust was to receive 25% of the residue of the Living Trust. (*Id.* ¶ 15.) The Living Trust named Ms. Pickens, John Michael Paulson, and Edward White (or alternatively, Edward White and Nicholas Diaco), as the co-trustees of the Marital Trust. (*Id.* ¶ 16.)

At the time of Mr. Paulson's death, all of Mr. Paulson's assets were held by the Living Trust except for his shares in the Gold River Hotel & Casino Corporation. (*Id.* ¶ 24.) The Living Trust's assets, as reported at the time of Mr. Paulson's death included approximately $24,764,500 in real estate; $113,761,706 in stocks and bonds; $23,664,644 in cash and receivables, and $31,243,494 in miscellaneous assets. (*Id.*) Accordingly, the Estate's assets totaled approximately $193,434,344 at the time of Mr. Paulson's death. (*Id.*)

John Michael Paulson ("Michael Paulson") is the son of Mr. Paulson, and served as the executor of the Estate of Allen E. Paulson ("Estate") after Mr. Paulson's death on July 19, 2000. (*Id.* ¶¶ 4, 54.) Michael Paulson also became the co-trustee of the Living Trust with Edward White until White's resignation on October 8, 2001. (*Id.* ¶ 25.) Thereafter, Nicholas V. Diaco consented to act as co-trustee of the Living Trust with Michael Paulson. (*Id.*) In April 2001, the Estate filed a Form 4768 with the IRS, and requested an extension of time to file its Form 706 Estate tax return until October 19, 2001. (*Id.* ¶ 26.) Additionally, the Estate requested an extension of time to pay its taxes until April 19, 2002. (*Id.*) The IRS approved the Estate's request for both extensions. (*Id.* ¶ 26.)

On October 23, 2001, the IRS received the Estate's Form 706 Estate tax return, which was signed by Michael Paulson, as co-executor of the Estate. (*Id.* ¶ 27.) In completing the tax return, the Estate elected to use an alternate valuation date of January 19, 2001, under 26 U.S.C. § 2032(a). (*Id.*) The Estate reported a total gross estate of $187,729,626, a net taxable estate of $9,234,172, and an estate tax liability of $4,459,051. (*Id.* ¶¶ 27–28.) On November 26, 2001, the IRS assessed the originally reported tax of $4,459,051. (*Id.* ¶ 28.) The Estate elected to pay part of its taxes and defer the other portion under a fifteen-year payment plan pursuant to 26 U.S.C. § 6166 of the Internal Revenue Code.[1] (*Id.* ¶ 29.) Accordingly, the Estate paid $706,296 as the amount unqualified for deferral under § 6166, leaving a deferred balance of $3,752,755 to be paid under the installment election. (*Id.*) On November 15, 2001, the IRS selected the Estate tax return for examination. (*Id.* ¶ 31.)

While the Estate's tax return was under review, several personal disputes arose between Michael Paulson, Ms. Pickens, and the other beneficiaries of the Living Trust. (*Id.* ¶ 32.) On February 2, 2003, the parties reached a settlement agreement, which the California Probate Court approved on March 14, 2003 ("2003 Settlement"). (*Id.* ¶ 33; Doc.

---

[1] 26 U.S.C. § 6166(a)(1) provides a deferral and payment plan for the value of the tax imposed by a closely held business on the adjusted gross estate, under 26 U.S.C. § 2001.

No. 15-5.) Under the 2003 Settlement, Ms. Pickens forewent property under both the antenuptial agreement and the Living Trust, instead choosing to receive direct distributions from the Living Trust. (Doc. No. 1 ¶¶ 33–34.) The 2003 Settlement resulted in Ms. Pickens receiving the Emerald Lane Residence, Ocean Front Residence, and the stock in the Del Mar Country Club, Inc. (*Id.* ¶ 33.) As approved by the Probate Court, these distributions were made directly to Ms. Pickens as trustee of the Madeleine Anne Paulson Separate Property Trust. (*Id.* ¶ 35.) During 2004, Michael Paulson, acting as trustee of the Living Trust, distributed approximately $5,921,887 in trust assets to various individuals. (*Id.* ¶ 36.)

On January 16, 2005, the IRS issued a notice of deficiency to Michael Paulson as executor of the estate, which proposed a $37,801,245 deficiency in the estate tax reported on the return. (*Id.* ¶ 38.) Michael Paulson petitioned Plaintiff's Tax Court challenging the additional estate tax proposed by the IRS. (*Id.* ¶ 39.) On December 2, 2005, pursuant to the parties' stipulation, the Tax Court determined that the Estate owed $6,669,477 in additional estate taxes. (*Id.* ¶ 40.) The Estate elected to pay this additional tax amount under the same fifteen-year installment period permitted by 26 U.S.C. § 6166. (*Id.*)

During 2006, Michael Paulson, acting as trustee of the Living Trust distributed an additional $1,250,000 from the Living Trust. (*Id.* ¶ 43.) In March 2009, the Probate Court removed Michael Paulson as trustee for misconduct. (*Id.* ¶ 44.) Vikki Paulson and James Paulson were then appointed as co-trustees. (*Id.* ¶ 44.) In August 2009, Vikki Paulson and James Paulson reported that the Living Trust had assets worth $13,738,727. (*Id.*)

On May 7, 2010, in response to one or more missed installment payments, the IRS issued the Estate a notice of final determination stating that the extension of time for payment under § 6166 no longer applied to the Estate's tax obligations. (*Id.* ¶ 45.) On June 10, 2010, the Probate Court removed James Paulson as a co-trustee for breach of court orders. (*Id.* ¶ 46.) Accordingly, Vikki remained as the sole trustee of the Living Trust. (*Id.*)

On August 5, 2010, the Estate filed a petition in United States Tax Court challenging the IRS's proposed termination of the Estate's § 6166 installment payment election. (*Id.* ¶

47.) On February 28, 2011, Crystal Christensen ("Ms. Christensen") was appointed as co-trustee of the Living Trust. (*Id.* ¶ 48.) At that time, the Living Trust held assets worth approximately $8,802,034. (*Id.*) In May 2011, the Tax Court entered a stipulated decision sustaining the IRS's decision to terminate the Estate's installment payment election. (*Id.* ¶ 49.)

Between June 28, 2011, and July 7, 2011, Plaintiff recorded notices of federal tax liens against the Estate in the property records of San Diego and Los Angeles Counties. (*Id.* ¶ 50.) On April 16, 2012, Vikki Paulson and Ms. Christensen, as successor co-trustees of the Living Trust filed a petition for review of the Estate's collection due process rights with the United States Tax Court. (*Id.* ¶ 51.) The Tax Court dismissed the petition on April 18, 2013, for lack of jurisdiction because Michael Paulson, who was the court-appointed executor at the time the petition was filed, had not signed the petition. (*Id.*)

From approximately 2007 through 2013, several disputes arose between Michael Paulson, Vikki Paulson, Ms. Christensen, James Paulson, and other interested parties in the Living Trust. (*Id.* ¶ 52.) The parties eventually settled the disputes, and on June 3, 2013, the California Superior Court formalized the settlement through issuance of an order and a general release ("2013 Settlement"). (*Id.*)

As part of the 2013 Settlement, Michael Paulson obtained the Living Trust's ownership interest in Supersonic Aerospace International, LLC, as well as its ownership interests in the Gold River Hotel & Casino Corporation and the Gold River Operation Corporation. (*Id.* ¶ 53.)

As of July 10, 2015, the Estate had an unpaid estate tax liability of $10,261,217. (*Id.* ¶ 55.) On September 16, 2015, Plaintiff filed a complaint seeking judgment against the Estate for the unpaid estate taxes, penalties, and interest. (Doc. No. 1.) Plaintiff seeks judgment against Defendants in either their representative or individual capacities, or both, for unpaid estate taxes. (*Id.*)

///

///

B.   Procedural Background

On September 16, 2015, Plaintiff filed a complaint against John Michael Paulson, James D. Paulson, Vicki Paulson, Crystal Christensen, and Madeleine Pickens for unpaid taxes. (*See generally* Doc. No. 1.) On September 20, 2016, Ms. Pickens filed a cross-claim against James Paulson, Vicki Paulson, and Crystal Christensen. (Doc. No. 55.) On January 18, 2017, Ms. Pickens filed her first amended cross-claim. (Doc. No. 76.)

Currently, there are several motions for summary judgment ("MSJ") that are on the eve of decision. Ms. Pickens' MSJ against Plaintiff, (Doc. No. 98), Plaintiff's MSJ against Michael Paulson, (Doc. No. 111), Plaintiff's cross-motion for summary judgment against Ms. Pickens, (Doc. No. 114), Plaintiff's MSJ against James D. Paulson,[2] (Doc. No. 118), Michael Paulson's MSJ against Plaintiff, (Doc. No. 119), Michael Paulson's MSJ against Ms. Pickens, (Doc. No. 121), Michael Paulson's MSJ against Vikki Paulson and Crystal Christensen, (Doc. No. 122), and Plaintiff's MSJ against Vikki E. Paulson and Crystal Christensen, (Doc. No. 123). There are also two motions to strike. (Doc. Nos. 143, 153.)

## **LEGAL STANDARD**

A court's power to stay proceedings is incidental to the inherent power to control the disposition of its cases in the interests of efficiency and fairness to the court, counsel, and litigants. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007). A stay may be granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979). Discretion to stay a case is appropriately exercised when the resolution of another matter will have a direct impact on the issues before the court, thereby substantially simplifying the issues presented. *See Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

///

---

[2] James D. Paulson is not represented by counsel.

## DISCUSSION

Defendants Vikki E. Paulson and Crystal Christensen (herein referred to as "MTS Defendants") request that this Court stay this matter while the California Probate Court hears their petition. (*See generally* Doc. No. 103-1.) The Petition was filed in the Superior Court on February 13, 2018. (Doc. No. 103-3 at 1.) In response, Plaintiff the United States and Defendants Madeleine Pickens and Michael Paulson oppose the motion. (Doc. Nos. 127, 128, 129.)

In determining whether a stay is appropriate, a district court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. "[I]f there is even a fair possibility that the stay…will work damage to someone else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864.

In determining whether to grant a stay, courts consider three factors: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). An additional factor which may affect the granting or refusal of a stay is the stage of the proceeding. *See Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (citation omitted).

### *i. MTS Defendants Will Not Suffer Undue Hardship if this Action is Not Stayed*

MTS Defendants argue that if this action is not stayed, they face the risk of de facto personal liability for the remaining administrative expenses of the Trust. (Doc. No. 103-1 at 6, 10–11.) Plaintiff retorts that under the circumstances of the instant matter, there is no

hardship in requiring the MTS Defendants to pay their own legal fees especially in relation to something that will only benefit them personally. (Doc. No. 127 at 22.) Neither Michael Paulson nor Madeleine Pickens explicitly respond to this factor. (*See generally* Doc. Nos. 128, 129.)

MTS Defendants cite to various provisions of the California Probate Code to argue that they are entitled to reimbursement for their expenditures in connection with the Trust's administrative expenses. (Doc. No. 103-1 at 11 (citing Cal. Prob. Code § 15684).) Moreover, they cite to California Probate Code § 18001 to argue that they cannot be held personally liable for their predecessor's wrongdoings without showing that they are personally at fault. (*Id.*)

As a whole, the Court finds MTS Defendants' arguments meritless. MTS Defendants' undue hardship contentions are based on the faulty premise that they cannot be personally liable for the administration of the Trust because they have acted as good stewards of the Living Trust. (Doc. No. 103-1 at 11.) Thus, as they were handed an "impossible situation" from their predecessors, they should not be forced to pay for any Trust fees related to this action. (*Id.*) However, the MTS Defendants are reminded that the determination of their good stewardship has not yet been made by this Court. In fact, the liability of MTS Defendants is the subject of one of Plaintiff's summary judgment motions. (Doc. No. 123-1.)

In sum, this factor weighs against staying the action.

### ii. *Plaintiff Would be Prejudiced if a Stay were Granted*

MTS Defendants assert that the California Probate Court is capable of protecting Plaintiff's interests as well as addressing all claims to the Trust's current assets. (Doc. No. 103-1 at 13.) Thus, no party will be prejudiced by a stay. (*Id.*) The Court disagrees.

As emphasized by Plaintiff, this case was first filed in September of 2015. (Doc. No. 1.) Accordingly, Plaintiff as well as each Defendant has already spent a considerable amount of time and effort litigating this case in this Court. Three years later, choosing to stay this case in favor of the California Probate Court would cause the parties to re-litigate

8

issues already dealt with by this Court, and thus accrue more expenses. Moreover, the Court notes that several of the major issues such as liability are ripe for decisions in this case in this Court as evidenced by the eight summary judgment motions filed by the parties. Thus, a stay would prejudice Plaintiff and Defendants' interests in "prompt adjudication." *See Seufert v. Merck Sharp & Dohme Corp.*, No. 13cv2169 AJB (MDD), 2016 WL 9503735, at *3 (S.D. Cal. Mar. 9, 2016) (holding that the defendants had a "continued interest in expeditiously resolving the claims pending against them").

Furthermore, MTS Defendants make this request nearly three years after Plaintiff first filed this action and provide no indication of when the probate court could resolve the issues in the instant matter. As there is a "general policy favoring stays of short, or at least reasonable, duration," *Dependable Highway Exp.*, 498 F.3d at 1067, a stay is inappropriate when it is not "likely the other proceeding will be concluded within a reasonable time[,]" *Id.* at 1066 (citation omitted).

On a final note, Defendants may also be prejudiced by the stay as the sole purpose of the Living Trust was to create a non-probate, revocable living trust for the purpose of transferring assets at Mr. Paulson's death outside of any state probate court's control. (Doc. No. 127 at 7.)

Consequently, this factor weighs against granting a stay.

### iii. *The California Probate Petition Will Not Simplify the Issues Before this Court*

MTS Defendants assert that the California Probate Petition has the "potential" to entirely resolve or drastically simplify this case with respect to their claims as well as the other creditors. (Doc. No. 103-1 at 14–16.) In opposition, Plaintiff argues that MTS Defendants overlook the fact that the relief it seeks invokes a federal question regarding Plaintiff's priority to payment under 31 U.S.C. § 3713. (Doc. No. 127 at 23–24.) Thus, if this case is stayed, Plaintiff would be entitled to remove the matter and litigate its right to priority under federal law in a different federal case. (*Id.*) The Court agrees with Plaintiff.

Pursuant to § 3713 a claim of the United States Government must be paid first when:

> **(A)** a person indebted to the Government is insolvent and-
> **(i)** the debtor without enough property to pay all debts makes a voluntary assignment of property;
> (**ii**) property of the debtor, if absent, is attached; or
> **(iii)** an act of bankruptcy is committed; or
> **(B)** the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all the debts of the debtor.

31 U.S.C. § 3713(a)(1). Thus, in this case, Plaintiff is to be paid first from what is an insolvent trust. If the Co-Trustees fail to do so, they can be held personally liable. *See id.* at (b) ("A representative of a person or an estate . . . paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.").

This statute works in correlation with the fact that Plaintiff brought this case pursuant to Section 7402 of the Internal Revenue Code, which provides that district courts have jurisdiction to hear matters related to the enforcement of the internal revenue laws, and Section 7404 of Title 26 that provides authority to the United States to commence a civil action for estate taxes in a court having jurisdiction to subject the property of the decedent to be sold under the judgment or decree of the court. 26 U.S.C. §§ 7402, 7404.

Thus, the Court disagrees with MTS Defendants' belief that halting this action in preference of the California Probate Court would simplify the issues. Instead, as this case invokes a federal question, as well as issues that this Court has been dealing with since 2015, staying the case would be unconstructive. *See Gonzalez v. Tagged, Inc.*, No. 16-cv-00574-YGR, 2016 WL 3257734, at *2 (N.D. Cal. June 14, 2016) (explaining that a stay would not simplify the issues as the court "need not await the determination of another proceeding to enter judgment[.]").

MTS Defendants contend that their motion is not a challenge to this Court's jurisdiction. (Doc. No. 131 at 7.) Therefore, Plaintiff's arguments revolving around federal question jurisdiction are meritless. (*Id.*) The Court clarifies that this Order highlights jurisdiction to demonstrate that in balancing the competing interests, staying this case and awaiting the probate court's final determination would only complicate as well as prolong

the litigation. *See Landis*, 299 U.S. at 254 (noting that the power to stay a case is left up to the power of the court to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Thus, this factor also disfavors a stay.

In sum, all three factors weigh against MTS Defendants' motion to stay.

## CONCLUSION

As delineated above, the Court **DENIES** Crystal Christensen and Vikki Paulson's motion to stay this case. (Doc. No. 103.)

**IT IS SO ORDERED**.

Dated: August 22, 2018

Hon. Anthony J. Battaglia
United States District Judge