UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>JOHN MICHAEL PAULSON, as the Executor or Statutory Executor of the Estate of Allen E. Paulson, and Individually; JAMES D. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson; VIKKI E. PAULSON, as Statutory Executor of the Estate of Allen E. Paulson, as Trustee of Allen E. Paulson Living Trust, and Individually; et al.,<br><br>                                    Defendants.<br><br>AND RELATED ACTIONS | Case No.:  15cv2057-AJB-NLS<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT PICKENS' MOTION FOR SUMMARY JUDGMENT;**<br><br>**(2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JOHN MICHAEL PAULSON;**<br><br>**(3) DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AGAINST MS. PICKENS;**<br><br>**(4) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JAMES D. PAULSON;** |

**(5) DENYING JOHN MICHAEL PAULSON'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF;**

**(6) GRANTING IN PART AND DENYING IN PART DEFENDANT JOHN MICHAEL PAULSON'S MOTION FOR SUMMARY JUDGMENT AGAINST MADELEINE PICKENS;**

**(7) DENYING JOHN MICHAEL PAULSON'S MOTION FOR SUMMARY JUDGMENT AGAINST CO-TRUSTEES;**

**(8) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST VIKKI PAULSON AND CRYSTAL CHRISTENSEN;**

**(9) DENYING DEFENDANT JOHN MICHAEL PAULSON'S MOTION TO STRIKE;**

**(10) DENYING DEFENDANT VIKKI PAULSON'S MOTION TO STRIKE**

(Doc. Nos. 98, 111, 114 118, 119, 121, 122, 123, 143, 153)

Pending before the Court are eight motions for summary judgment. (Doc. Nos. 98, 111, 114, 118, 119, 121, 122, 123.) Additionally, Defendants John Michael Paulson and Vikki E. Paulson and Crystal Christensen filed two motions to strike. (Doc. Nos. 143, 153.) On August 3, 2018, the Court held a hearing on the motions and then submitted the

2

matters.[1] (Doc. No. 170.) As will be explained in greater detail below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment against Michael Paulson, (Doc. No. 111), **DENIES** John Michael Paulson's cross-motion for summary judgment, (Doc. No. 119), **GRANTS IN PART AND DENIES IN PART** Ms. Pickens' motion for summary judgment against Plaintiff, (Doc. No. 98), **DENIES** Plaintiff's cross-motion for summary judgment against Ms. Pickens, (Doc. No. 114), **DENIES** Plaintiff's motion for summary judgment against James Paulson, (Doc. No. 118), **GRANTS IN PART AND DENIES IN PART** John Michael Paulson's summary judgment motion against Ms. Pickens, (Doc. No. 121), **DENIES** John Michael Paulson's motion for summary judgment against Vikki Paulson and Crystal Christensen, (Doc. No. 122), and **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment against Vikki Paulson and Crystal Christensen, (Doc. No. 123). Additionally, the Court **DENIES** both motions to strike. (Doc. Nos. 143, 153.)

## BACKGROUND

A.     Factual Background

On December 23, 1986, Allen Paulson ("Mr. Paulson") established the Allen E. Paulson Living Trust (hereafter referred to as "Living Trust"). (Doc. No. 1 ¶ 9.) In 1988, Mr. Paulson entered into an antenuptial agreement with Madeleine Pickens ("Ms. Pickens") in anticipation of marriage. (*Id.* ¶ 10.) The agreement defined their respective separate property and established certain gifts for Ms. Pickens in the event of Mr. Paulson's death. (*Id.*) The Living Trust was subsequently amended and restated several times in early 2000. (*Id.* ¶ 11.) On July 19, 2000, Mr. Paulson died. (*Id.* ¶ 21.) Mr. Paulson was survived by several heirs, including his third wife Ms. Pickens, his three sons from a prior marriage, Richard Paulson, James Paulson, and Michael Paulson, and a granddaughter Crystal Christensen. (Doc. No. 111-1 at 9.)

---

[1] Defendant James. D. Paulson, who is not represented by counsel, did not appear at the motion hearing.

The Living Trust provided Ms. Pickens with the power to elect between receiving property under the antenuptial agreement or under the Living Trust, but not under both. (Doc. No. 1 ¶¶ 10, 12–15.) The Living Trust also created a Marital Trust for Ms. Pickens' benefit. (*Id.* ¶¶ 13–15.) Under the terms of the Living Trust, the Marital Trust was to receive a residence and all personal property located at 14497 Emerald Lane in Rancho Sante Fe, California. (*Id.* ¶ 13.) The Living Trust also gave Ms. Pickens the right to receive a second residence located in Del Mar, California, as well as all household furnishings, furniture, and all insurance policies related to the Del Mar property. (*Id.* ¶ 14.) Finally, the Living Trust provided that the Marital Trust was to receive 25% of the residue of the Living Trust. (*Id.* ¶ 15.) The Living Trust named Ms. Pickens, John Michael Paulson, and Edward White (or alternatively, Edward White and Nicholas Diaco), as the co-trustees of the Marital Trust. (*Id.* ¶ 16.) The Marital Trust created by the Living Trust was never funded. (Doc. No. 98-51 at 2.)

At the time of Mr. Paulson's death, all of Mr. Paulson's assets were held by the Living Trust except for his shares in the Gold River Hotel & Casino Corporation. (Doc. No. 1 ¶ 24.) The Living Trust's assets, as reported at the time of Mr. Paulson's death included approximately $24,764,500 in real estate, $113,761,706 in stocks and bonds, $23,664,644 in cash and receivables, and $31,243,494 in miscellaneous assets. (*Id.*) Accordingly, the Estate's assets totaled approximately $193,434,344 at the time of Mr. Paulson's death. (*Id.*)

John Michael Paulson ("Michael Paulson") is the son of Mr. Paulson, and served as the executor of the Estate of Allen E. Paulson ("Estate") until his purported resignation on January 15, 2013. (*Id.* ¶¶ 4, 54.) Michael Paulson also served as a co-trustee of the Living Trust with Edward White until White's resignation on October 8, 2001. (*Id.* ¶ 25.) Shortly thereafter, Nicholas Diaco consented to act as co-trustee of the Living Trust with Michael Paulson. (*Id.*) In April 2001, the Estate filed a Form 4768 with the IRS, and requested an extension of time to file its Form 706 Estate tax return until October 19, 2001. (*Id.* ¶ 26.)

4

Additionally, the Estate requested an extension of time to pay its taxes until April 19, 2002. (*Id.*) The IRS approved both of the Estate's extension requests. (*Id.*)

On October 23, 2001, the IRS received the Estate's Form 706 Estate tax return, which was signed by Michael Paulson as co-executor of the Estate. (*Id.* ¶ 27.) In completing the tax return, the Estate elected to use an alternate valuation date of January 19, 2001, under 26 U.S.C. § 2032(a). (*Id.*) The Estate reported a total gross estate of $187,729,626, a net taxable estate of $9,234,172, and an estate tax liability of $4,459,051. (*Id.* ¶¶ 27–28.) On November 26, 2001, the IRS assessed the originally reported tax of $4,459,051. (*Id.* ¶ 28.) The Estate elected to pay part of its taxes and defer the other portion under a fifteen-year payment plan pursuant to 26 U.S.C. § 6166 of the Internal Revenue Code.[2] (*Id.* ¶ 29.) Accordingly, the Estate paid $706,296 as the amount unqualified for deferral under § 6166, leaving a deferred balance of $3,752,755 to be paid under the installment election. (*Id.*) On November 15, 2001, the IRS selected the Estate tax return for examination. (*Id.* ¶ 31.)

While the Estate's tax return was under review, several personal disputes arose between Michael Paulson, Ms. Pickens, and the other beneficiaries of the Living Trust. (*Id.* ¶ 32.) On February 2, 2003, the parties reached a settlement agreement, which the California Probate Court approved on March 14, 2003 ("2003 Settlement"). (*Id.* ¶¶ 33, 34; Doc. No. 15-5.) Under the 2003 Settlement, Ms. Pickens forewent property under both the antenuptial agreement and the Living Trust, instead choosing to receive direct distributions from the Living Trust. (Doc. No. 1 ¶¶ 33–34.) The 2003 Settlement resulted in Ms. Pickens receiving the Emerald Lane Residence, the Ocean Front Residence, and the stock in the Del Mar County Club, Inc. (*Id.* ¶ 33.) As approved by the Probate Court, these distributions were made directly to Ms. Pickens as trustee of the Madeleine Anne Paulson Separate Property Trust. (*Id.* ¶ 35.) During 2004, Michael Paulson, acting as trustee of the Living

---

[2] 26 U.S.C. § 6166(a)(1) provides a deferral and payment plan for the value of the tax imposed by a closely held business on the adjusted gross estate, under 26 U.S.C. § 2001.

Trust, distributed approximately $5,921,887 in trust assets to various individuals. (*Id.* ¶ 36.)

On January 16, 2005, the IRS issued a notice of deficiency to Michael Paulson as executor of the estate, which proposed a $37,801,245 deficiency in the estate tax reported on the return. (*Id.* ¶ 38.) Michael Paulson petitioned Plaintiff's Tax Court challenging the additional estate tax proposed by the IRS. (*Id.* ¶ 39.) On December 2, 2005, pursuant to the parties' stipulation, the Tax Court determined that the Estate owed $6,669,477 in additional estate taxes. (*Id.* ¶ 40.) The Estate elected to pay this additional tax amount under the same fifteen-year installment period permitted by 26 U.S.C. § 6166. (*Id.*)

During 2006, Michael Paulson, acting as trustee of the Living Trust distributed an additional $1,250,000 from the Living Trust. (*Id.* ¶ 43.) In March of 2009, the Probate Court removed Michael Paulson as trustee for misconduct. (*Id.* ¶ 44.) Vikki Paulson and James Paulson were then appointed as co-trustees. (*Id.*) In August 2009, Vikki Paulson and James Paulson reported that the Living Trust had assets worth $13,738,727. (*Id.*)

On May 7, 2010, in response to one or more missed installment payments, the IRS issued the Estate a notice of final determination stating that the extension of time for payment under § 6166 no longer applied to the Estate's tax obligations. (*Id.* ¶ 45.) On June 10, 2010, the Probate Court removed James Paulson as a co-trustee for breach of court orders. (*Id.* ¶ 46.) Accordingly, Vikki remained as the sole trustee of the Living Trust. (*Id.*)

On August 5, 2010, the Estate filed a petition in United States Tax Court challenging the IRS's proposed termination of the Estate's § 6166 installment payment election. (*Id.* ¶ 47.) On February 28, 2011, Crystal Christensen was appointed as co-trustee of the Living Trust. (*Id.* ¶ 48.) At that time, the Living Trust held assets worth approximately $8,802,034. (*Id.*) In May 2011, the Tax Court entered a stipulated decision sustaining the IRS's decision to terminate the Estate's installment payment election. (*Id.* ¶ 49.)

Between June 28, 2011 and July 7, 2011, Plaintiff recorded notices of federal tax liens against the Estate in the property records of San Diego and Los Angeles Counties. (*Id.* ¶ 50.) On April 16, 2012, Vikki Paulson and Crystal Christensen (herein referred to as

"Co-Trustees"), as successor co-trustees of the Living Trust, filed a petition for review of the Estate's collection due process rights with the United States Tax Court. (*Id.* ¶ 51.) The Tax Court dismissed the petition on April 18, 2013, for lack of jurisdiction because Michael Paulson, who was the court-appointed executor at the time the petition was filed, had not signed the petition. (*Id.*)

From approximately 2007 through 2013, several disputes arose between Michael Paulson, Vikki Paulson, Crystal Christensen, James Paulson, and other interested parties in the Living Trust. (*Id.* ¶ 52.) The parties eventually settled the disputes, and on June 3, 2013, the California Superior Court formalized the settlement through issuance of an order and a general release ("2013 Settlement"). (*Id.*)

As part of the 2013 Settlement, Michael Paulson obtained the Living Trust's ownership interest in Supersonic Aerospace International, LLC, as well as its ownership interests in the Gold River Hotel & Casino Corporation and the Gold River Operation Corporation. (*Id.* ¶ 53.) Additionally, as part of the 2013 Settlement, Michael Paulson attempted to resign as executor of the Estate. (*Id.* ¶ 54.) As of July 10, 2015, the Estate had an unpaid estate tax liability of $10,261,217. (*Id.* ¶ 55.)

B.    Factual Backgrounds as Presented in the Cross-Claims

### a. Michael Paulson's Cross-Claim

Michael Paulson filed a cross-claim against Ms. Pickens on January 15, 2016. (*See generally* Doc. No. 38.) Michael Paulson states that pursuant to the 2003 Settlement Agreement, Ms. Pickens agreed that liability for any estate tax or gift tax payable to her as a result of any distribution pursuant to the Agreement would be borne entirely by her. (*Id.* at 21.) Thus, Michael Paulson asserts that should he be subject to liability for estate tax, he is entitled to judgment against Ms. Pickens. (*Id.*)

Additionally, Michael Paulson filed a cross-claim against Vikki Paulson and Crystal Christensen. (*Id.* at 22.) Michael Paulson argues that pursuant to the 2013 Settlement Agreement, Co-Trustees agreed to indemnify and hold him harmless for any claims filed or brought by the IRS arising from the settlement. (*Id.* at 23.) Accordingly, should Michael

7

Paulson be subject to liability for estate tax, "solely arising from [the 2013 Settlement] and the terms of the Agreement," he argues that he is entitled to judgment against Co-Trustees. (*Id.*)

On September 6, 2016, the Court denied both Ms. Pickens and Co-Trustees' motions to dismiss Michael Paulson's cross-claim. (Doc. No. 54 at 21–23.)

### b. Ms. Pickens' Cross-Claim Against Michael Paulson

Ms. Pickens asserts that pursuant to section 41 of the 2003 Settlement Agreement, Michael Paulson is liable to her for all costs and expenses, including reasonable attorney's fees, she incurs in connection with any litigation relating to the settlement in which she prevails. (Doc. No. 57 at 6.) Further, Ms. Pickens argues that the actions of Michael Paulson, including his refusal to pay the estate tax liability from the assets of the Living Trust, his choice to distribute $1,250,000 to another beneficiary, paying himself more than $ 3 million in trustee's fees, and his imprudent investment of $ 28.5 million of the Living Trust's assets in Supersonic Aerospace International, LLC, are actions that breached his fiduciary duties to the Estate, including Ms. Pickens. (*Id.* at 7–8.) Thus, if Ms. Pickens is ultimately held liable for unpaid estate taxes, it will have been due to Michael Paulson's misconduct and breach of fiduciary duties to her. (*Id.* at 11.) Ms. Pickens also claims that she is not liable for any estate tax under the indemnity provision because none of the estate tax resulted from distributions to her under the 2003 Settlement Agreement. (*Id.*)

### c. Ms. Pickens' Cross-Claim Against Co-Trustees[3]

Ms. Pickens argues that the 2003 Settlement was meant to resolve prolonged litigation regarding her right to certain properties pursuant to the Living Trust and the Antenuptial Agreement, which Michael Paulson refused to transfer to her.[4] (Doc. No. 76

_____

[3] The allegations from Ms. Pickens' cross-claim are taken from her first amended cross-claim. (Doc. No. 76.) Ms. Pickens' original cross-claim was against Co-Trustees and James D. Paulson. (Doc. No. 55.)

[4] According to the tax court decision, all of the transfers to Ms. Pickens qualified for the marital deduction. (*Id.* ¶ 29.)

8

¶¶ 19, 20.) Specifically, the 2003 Settlement provides that Ms. Pickens is entitled to receive those trust properties free and clear of any liabilities for estate tax. (*Id.* ¶ 21.) Furthermore, Ms. Pickens alleges that until she receives all of the trust property to which she is entitled under the 2003 Agreement free of any estate taxes, her interest in the Living Trust continues. (*Id.* ¶ 41.)

On January 15, 2013, Vikki E. Paulson and Crystal Christensen as co-trustees of the Living Trust, entered into a settlement agreement with Michael Paulson to which they distributed substantially all of the remaining assets of the Living Trust to Michael Paulson free of any encumbrances. (*Id.* ¶ 37.) Ms. Pickens claims that the Living Trust still has properties that could be applied to reduce the outstanding balance of the estate tax. (*Id.* ¶ 38.) However, Co-Trustees allegedly continue to refuse to apply such properties to the payment of estate tax. (*Id.*)

In sum, Ms. Pickens argues that pursuant to California Probate Code §§ 16000-16015, Co-Trustees have a duty to administer the Living Trust according to its terms, to act impartially in investing, to refrain from using or dealing with the property of the Living Trust for his or her own profit, and to take reasonable steps to control and preserve the property of the Living Trust for the benefit of all beneficiaries. (*Id.* ¶ 46.) However, Ms. Pickens claims that Co-Trustees breached their fiduciary duties to her by failing to pay the estate tax from the Living Trust, and by distributing the remaining properties of the Living Trust to Michael Paulson, thereby wrongfully subjecting Ms. Pickens to liabilities for estate tax. (*Id.* ¶¶ 47–48.)

C.     Procedural Background

On September 16, 2015, Plaintiff filed a complaint against Defendants. (*See generally* Doc. No. 1.) Thereafter, several motions to dismiss were filed. (Doc. Nos. 15, 19, 36, 40, 44.) On September 6, 2016, the Court issued an order granting in part and denying in part Ms. Pickens' motion to dismiss, granting in part and denying in part Co-Trustees' motion to dismiss, denying James Paulson's motion to dismiss, denying Ms. Pickens' motion to dismiss the cross-claim, and denying Co-Trustees' motion to dismiss

9

the cross-claim. (*See generally* Doc. No. 54.) On September 20, 2016, Ms. Pickens filed a cross-claim against Co-Trustees and James Paulson. (Doc. No. 55.) On October 14, 2016, Co-Trustees filed a motion to dismiss the cross-claim, (Doc. No. 63), which was granted in part and denied in part on January 4, 2017, (Doc. No. 75). On January 18, 2017, Ms. Pickens filed her first amended cross-claim. (Doc. No. 76.)

On February 1, 2017, Co-Trustees filed their second motion to dismiss Ms. Pickens' cross-claims, (Doc. No. 77), which was granted in part and denied in part on April 11, 2017, (Doc. No. 82). Thereafter, the instant summary judgment motions were filed in January and February of 2018, and the two motions to strike were filed in April and May of 2018. (Doc. Nos. 98, 111, 114, 118, 119, 121, 122, 123, 143, 153.)

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Celotex Corp.*, 477 U.S. at 330. When ruling on a summary

judgment motion, a court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

A.    Motions to Strike

Defendants Michael Paulson and Co-Trustees each filed a motion to strike. (Doc. Nos. 143, 153.) Michael Paulson moves to strike the Declaration of Stephenson Dechant in support of Co-Trustees' opposition to his motion for summary judgment. (*See generally* Doc. No. 143-1.) Co-Trustees move to strike Plaintiff's motions for summary judgment against Defendants Pickens and James D. Paulson. (*See generally* Doc. No. 153-1.)

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Accordingly, "[a] defense may be struck if it fails to provide 'fair notice' of the basis of the defense." *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1048 (N.D. Cal. 2004) (citation omitted).

"Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (citation omitted). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

The Court first turns to Michael Paulson's motion to strike Mr. Dechant's declaration and exhibits based on Rules 37 and 56. (Doc. No. 143-1 at 3.) Specifically, Michael Paulson argues that Co-Trustees did not disclose Mr. Dechant as a witness or

11

disclose the existence of his March 24, 2009 balance sheet. (*Id.*) In opposition, Co-Trustees assert that Mr. Dechant was disclosed as a witness in supplemental Rule 26 disclosures dated August 25, 2017, and there was an additional disclosure regarding the discoverable information of Mr. Dechant on August 30, 2017. (Doc. No. 151 at 3.) Moreover, Co-Trustees point out that the balance sheet was produced on October 31, 2017. (*Id.*; Huang Decl. ¶¶ 2–3, Doc. No. 151-6.) In his reply brief, Michael Paulson concedes to the facts produced in Co-Trustees' opposition brief and acknowledges that his motion to strike should be denied. (Doc. No. 152 at 2–3.) Accordingly, Michael Paulson's motion to strike is **DENIED**.

Next, Co-Trustees object and move to strike Plaintiff's motions for summary judgment against Defendants Pickens and James Paulson as they "improperly seek[] reconsideration of a prior ruling of this Court in favor of the Co-Trustees." (Doc. No. 153-1 at 2.) Specifically, Co-Trustees assert that early in this case, the Court granted their motion to dismiss Plaintiff's claims against them under 26 U.S.C. § 6324(a)(2). (*Id.*) Thus, according to Co-Trustees, the summary judgment motions at issue seek reconsideration of that ruling without noting a motion for such relief, violating the Local Rules, and prejudicing them by depriving them of a reasonable opportunity to respond. (*Id.* at 2–3.) Plaintiff retorts that it was candid in its motions that the Court had previously ruled on similar claims, that it does not move the Court to change its prior rulings on its § 6324(a)(2) claims, and that Co-Trustees were provided notice. (Doc. No. 157 at 6.)

In the order at issue, the Court concluded that:

> The Court similarly finds *Johnson* and the reasoning set forth therein persuasive with respect to whether Plaintiff must allege that the transferee received property immediately upon the date of decedent's death . . . The complaint does not allege that Co-Trustees were in possession of Estate property or received such property immediately after Ms. Paulson's death. For these reasons, Plaintiff has failed to state a claim against Co-Trustees as trustees or transferees under § 6234(a)(2). Accordingly, those claims are **DISMISSED**.

(Doc. No. 54 at 18.)

As evidenced by the portion of the order referenced above, the Court does not find that Plaintiff is currently seeking reconsideration of the Court's ruling. The Court notes that the previous ruling was made under the lens of Rule 12(b)(6) and was related to Co-Trustees' motion to dismiss. Accordingly, as the present motion relates to Ms. Pickens and James Paulson under a Rule 56 standard, the Court finds a motion to strike unwarranted. Accordingly, Co-Trustees' motion to strike is **DENIED**. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (noting that motions to strike are "disfavored").

B. The Parties' Motions for Summary Judgment

### a. Plaintiff's Motion for Summary Judgment against Michael Paulson and Michael Paulson's Cross Motion for Summary Judgment

As Michael Paulson's status as the statutory executor of the Estate is a source of contention in a majority of the motions for summary judgment currently pending before this Court, the Court directs its attention to Plaintiff's summary judgment motion against Michael Paulson first. Plaintiff brings its summary judgment motion on three points: (1) Michael Paulson is a statutory executor liable to Plaintiff in his representative capacity; (2) Michael Paulson is personally liable to Plaintiff under 26 U.S.C. § 6324(a)(2); and (3) Michael Paulson was not discharged of his personal liability for the estate tax due to his capacity as trustee of the Living Trust. (*See generally* Doc. No. 111-1.) Michael Paulson opposes the motion. (Doc. No. 134.) Michael Paulson also filed a motion for summary judgment against Plaintiff on the same issues. (Doc. No. 119-1.)

### i. Michael Paulson is the Statutory Executor Liable to Plaintiff in his Representative Capacity

Plaintiff argues that it is undisputed that Michael Paulson was the court appointed executor before his purported resignation. (Doc. No. 111-1 at 22.) However, as there was no executor appointed by the probate court after his resignation in 2013, Michael Paulson is still the statutory executor. (*Id.* at 23.) In opposition, Michael Paulson simply states that he is currently not the appointed, qualified, or acting executor. (Doc. No. 134 at 20.) Thus,

as this lawsuit was filed in 2015, two years after his resignation, he is not liable for any estate tax. (*Id*.)

Section 2203 provides:

> The term "executor" wherever it is used in this title in connection with the estate tax imposed by this chapter means the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent.

26 U.S.C. § 2203.

Having reviewed the parties' legal arguments and the evidence in light of the legal authority addressing this issue, and for the following reasons, the Court finds there is no genuine issue of material fact that Michael Paulson is currently the acting statutory executor. Significant to the Court's determination is the fact that Michael Paulson is unable to prove that he completed the requisite procedural steps to resign as the executor.

Relevant case law and the California Probate Code require several procedural tasks to be completed before the discharge of an executor is complete. For instance,

> It is very clear that before an executor can resign his trust, and before the Probate Court can accept the resignation, so as to relieve him from his duties and responsibilities as such executor, two things must plainly appear to have been done. First--A full settlement of the executor's accounts, showing the true condition of the estate, and how much and what part of it is unadministered. Second--That the Court has appointed some other person competent and qualified to receive the estate and finish the administration and execute the trusts.

*Lucas v. Todd*, 28 Cal. 182, 184 (1865). Moreover, after a personal representative has complied with the terms of the order for final distribution and filed the appropriate receipts, the court must "on ex parte petition, make an order discharging the personal representative from all liability incurred thereafter." Cal. Prob. Code § 12250(a). Additionally, a personal representative who resigns must "file an account not later than 60 days after termination of authority." Cal. Prob. Code § 10952.

The court in *Waterland v. Superior Court in and for Sacramento Cty.*, 15 Cal. 2d 34, 39–40 (1940), puts into greater detail the proper procedures for discharge.

> An executor or administrator may resign his appointment at any time, by a writing filed *in the superior court, to take effect upon the settlement of his accounts* . . . The liability of the outgoing executor, or administrator, or of the sureties on his bond, shall not in any manner be discharged, released, or affected by such resignation or appointment, but shall continue until the executor or administrator has delivered up *all* the estate to the person whom the court shall appoint to receive the same. The provision that his resignation shall take effect upon the settlement of his accounts, can mean nothing else than that his resignation shall not become effective prior to the settlement of his accounts. It is true that there is language in *Estate of Grafmiller*, *supra*, which may be construed to mean that the resignation of an executor becomes effective immediately upon the filing of his written resignation . . . If it was intended to imply that the resignation become effective *for all purposes* at the moment of its filing, such holding is directly contrary to the express language of section 520 of the Probate Code which provides that said resignation is "to take effect upon the settlement of his accounts."

Presently, the record demonstrates that Michael Paulson was the court appointed executor. (Doc. No. 111-1 ¶ 15.) To refute his status, Michael Paulson argues that he resigned as the executor through the 2013 Settlement approved on January 15, 2013. (Doc. No. 134 at 20.) However, this settlement was filed with the California Superior Court and not the Probate Court in charge of the underlying matter involving the Living Trust. (Doc. No. 1 ¶ 52; Doc. No. 111-32 at 1.) Moreover, Michael Paulson does not establish that he settled all of the accounts at issue or that the Probate Court appointed another executor after his supposed resignation. Most notably, there is no order from the Probate Court discharging him as the statutory executor. *See* Cal. Prob. Code § 11753(a) ("Distribution in compliance with the court order entitles the personal representative to a full discharge with respect to property included in the order.").

Without providing evidence of his proper withdrawal, Michael Paulson cannot now seek to argue that he is not liable as the statutory executor pursuant to § 2203. *Neustadter v. United States*, 90 F.2d 34, 37–38 (9th Cir. 1937) ("Until the entry of a decree discharging

15

a representative the trust still continues in contemplation of law and the representative remains clothed with the duty and authority of the office."). The Court accordingly **GRANTS** Plaintiff's summary judgment motion on this matter, (Doc. No. 111-1 at 21–23), and **DENIES** Michael Paulson's motion on this issue, (Doc. No. 119-1 at 12–13).

Michael Paulson's motion also argues that he is not personally liable as a statutory executor. (Doc. No. 119-1 at 13.) In opposition, Plaintiff states that it has never sought personal liability against Michael Paulson in this case arising from his role as executor. (Doc. No. 139 at 14.) Accordingly, Michael Paulson's motion in this respect is **DENIED AS MOOT**.

### ii. Michael Paulson's Personal Liability to Plaintiff Under 26 U.S.C. 6324(a)(2)

Plaintiff asserts that Michael Paulson is a trustee who held property of the Estate at the time of Decedent's death. (Doc. No. 111-1 at 24–26.) Thus, Plaintiff contends that he is personally liable under 26 U.S.C. § 6324(a)(2). (*Id.*) Michael Paulson retorts that the trust assets were not included in the gross estate, that no property was transferred pursuant to section 2038, and that even if the trust property was included in the gross estate it would be unjust and inequitable to hold him personally liable for estate taxes beyond the period when he was trustee. (Doc. No. 134 at 12–17.)

Section 6324(a)(2) provides:

> If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee . . . or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax.

26 U.S.C. § 6324(a)(2). Thus, for tax liability to attach, the property must be part of the gross estate pursuant to 26 U.S.C. §§ 2034 through 2042. (*Id.*)

Plaintiff's main contention is that Michael Paulson is personally liable for any unpaid estate tax because he took possession of trust assets upon Mr. Paulson's death. (Doc. No. 111-1 at 24 (*see United States v Johnson*, No. 2:11-CV-00087, 2013 WL 3924087, at

*5 (D.Utah July 29, 2013) ("The court concludes that in order for a person to be a transferee under section 6324(a)(2), the person must have or receive property from the gross estate immediately upon the date of the decedent's death rather than at some point thereafter.")).) Michael Paulson does not refute this argument, but instead argues that the transfer of property in a living trust from a decedent to a successor trustee does not fall within § 2038. (Doc. No. 134 at 12.) Instead, he argues that the Trust assets should have been included in the gross estate under § 2033. (*Id.* at 13.)

Section 2038 provides that the value of the gross estate includes the value of all property:

> To the extent of any interest therein of which the decedent has at any time made a transfer . . . by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power . . . by the decedent alone or by the decedent in conjunction with any other person . . . to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3-year period ending on the date of the decedent's death.

26 U.S.C. § 2038(a)(1). In comparison, § 2033 provides that "[t]he value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." 26 U.S.C. § 2033.

In *Estate of Tully v. United States*, 528 F.2d 1401, 1403 (Ct. Cl. 1976), a case referenced by Michael Paulson, the court explained the seminal differences between §§ 2033 and 2038. Explicitly, §§ 2033 and 2038 "both impose a tax on property transferred at death. However, they are directed at two different situations." *Id.* Section 2038(a)(1) "is specific in its terms" and "taxes property which an individual has given away while retaining enough 'strings' to change or revoke the gift." *Id.* In contrast, § 2033 "is more general in its approach, and taxes property which has never really been given away at all." *Id.* However, § 2033 is not a catchall—

> [it] applies to situations where decedent kept so much control over an item of property that in substance he still owns the property. 'Interest' as used in section 2033 connotes a stronger control than 'power' as used in section

17

2038(a)(1). If controls over property cannot rise to the dignity of section 2038(a)(1) 'powers' they equally cannot create section 2033 'interests.' *Id.* at 1406.

Here, unpersuaded by Michael Paulson's arguments, the Court is satisfied that there is no genuine dispute of material fact that the trust assets are properly included under § 2038. The Living Trust at issue in the present matter is a revocable living trust. (Doc. No. 111-4 at 44.) The particular nature of a revocable living trust allows a settlor to retain an "unlimited right to revoke any conveyance to the revocable living trust[.]" *Amonette v. IndyMac Bank, F.S.B.*, 515 F. Supp. 2d 1176, 1184 (D. Haw. 2007). In other words, when a settlor "sets up a revocable trust, he or she has the right to recall or end the trust at any time, and thereby regain absolute ownership of the trust property." *Id.* (citation omitted). This power to "revoke" a trust is the essence of § 2038. *See Estate of Bowgren v. C.I.R.*, 105 F.3d 1156, 1160 (7th Cir. 1997) ("Section 2038(a)(1) requires inclusion of the value of the property transferred in trust in the settlor's gross estate if, at the time of his death, the settlor retains the discretionary power to terminate the trust.").

Moreover, the principles behind a revocable living trust demonstrate its proper inclusion under § 2038. A living trust agreement defines the circumstances when a trust's property can be distributed as well as defines how the properties should be maintained. A revocable trust allows the grantor the ability to unilaterally change the terms of the trust and withdraw property from the trust at any time. *See Florida Nat'l Bank of Palm Beach Cty. v. Genova*, 460 So.2d 895, 897 (Fla. 1984) ("This retention of control over property distinguishes a revocable trust from the other types of conveyances[.]").

Here, the Living Trust clearly states that Mr. Paulson as Trustor was authorized to amend the Trust. (Doc. No. 111-4 at 6.) Further it stated that during the Trustor's lifetime and specifically when Mr. Paulson was acting as the Trustee, he was authorized to have the broadest investment discretion, to buy, sell, and trade in securities of any nature, to borrow money, and to "take any and all other actions, without limitation, which are incident to or in the Trustee's discretion" to carry out any actions in the Living Trust. (*Id.* at 36–37.) Additionally, Mr. Paulson explicitly delineated in the Trust that he reserved the power to amend the trust. (*Id.* at 44.) In fact, Mr. Paulson executed this right on several occasions,

18

including a second amendment where he appointed Edward White as a co-trustee and a third amendment where Mr. Paulson changed the cash bequest to each beneficiary. (Doc. No. 111-2 at 8–9.)

In sum, the Court finds Mr. Paulson's ability to amend, revoke, or terminate the Living Trust triggers § 2038. *See In re Lumpkin's Estate*, 474 F.2d 1092, 1096 (5th Cir. 1973) ("The court held that retention of this right rendered the value of the trust property includible in [the] gross estate under the forerunner to § 2038[.]"); *see also Mathey v. United States*, 491 F.2d 481, 483–84 (3rd Cir. 1974) ("The taxpayers concede that, under the trust agreements involved here, a power in the grantor to name herself as trustee would amount to a power to 'alter, amend, revoke or terminate.'"); *Crile v. United States*, 212 Ct. Cl. 47, 49–51 (Ct. Cl. 1976) ("The retained power to vary shares among named beneficiaries and the included power to eliminate a named beneficiary have been held to be sufficient powers to include the trust property in the donor's estate [under § 2038].").

Michael Paulson argues that Schedule G demonstrates that no property was transferred pursuant to § 2038. (Doc. No. 134 at 15.) However, though the Form answers the question "[d]id the decedent make any transfer described in section 2035, 2036, 2038" in the negative, the question also states "If 'Yes,' you must complete and attach Schedule G." (Doc. No. 111-10 at 10.) Here, Schedule G was completed. (*Id.* at 28.) Thus, Michael Paulson's reliance on this document is misplaced.

Moreover, Michael Paulson argues that even if the trust property is included in the gross estate pursuant to § 6324, it would be unjust and inequitable to hold him personally liable for estate taxes beyond the period he was trustee. (Doc. No. 134 at 16.) This argument is meritless. Nothing in § 6324 states that liability under § 6324 depends on factors related to equity.

Accordingly, as the trust assets were properly included under § 2038 and Michael Paulson was in actual possession of the Decedent's property at the time of his death, (Doc. No. 111-1 ¶ 17; Doc. No. 111-2 at 6), Plaintiff's motion for summary judgment on its §

6324(a) claim is **GRANTED**. (Doc. No. 111-1 at 24–26.) Michael Paulson's cross-motion for summary judgment is thus **DENIED**. (Doc. No. 119-1 at 9–15.)[5]

iii. Michael Paulson Was Not Personally Discharged in All his Fiduciary Capacities under 26 U.S.C. § 2204

Plaintiff contends that though Michael Paulson was discharged from personal liability arising out of his position as executor, he was not discharged from personal liability arising out of his role as Trustee of the Living Trust pursuant to 26 U.S.C. § 2204. (Doc. No. 111-1 at 26.) In opposition, Michael Paulson argues that he followed all of the required procedures to be discharged as both executor of the Estate and trustee of the Trust. (Doc. No. 134 at 17.)

Section 2204 states:

> **(b) Fiduciary other than the executor.**—If a fiduciary other than the executor makes written application to the Secretary for determination of the amount of any estate tax for which the fiduciary may be personally liable, and for discharge from personal liability therefor, the Secretary upon the discharge of the executor from personal liability under subsection (a), or upon the expiration of 6 months after the making of such application by the fiduciary, if later, shall notify the fiduciary (1) of the amount of such tax for which it has been determined the fiduciary is liable, or (2) that it has been determined that the fiduciary is not liable for any such tax. Such application shall be accompanied by a copy of the instrument, if any, under which such fiduciary is acting, a description of the property held by the fiduciary, and such other information for purposes of carrying out the provisions of this section as the Secretary may require by regulations. . . .

26 U.S.C. § 2204(b).

After careful review of the parties' arguments and the record, the Court finds that there are still genuine issues of material fact as to whether Michael Paulson successfully requested discharge as the trustee of the Living Trust. As mentioned above, § 2204 has several layers of procedural requirements including, a letter to the Secretary that includes

---

[5] The Court notes that Michael Paulson's cross motion relies heavily on *United States v. Johnson*, 224 F. Supp. 3d 1220 (D. Utah 2016) ("*Johnson II*"). (Doc. No. 119-1 at 19.) However, *Johnson II* is currently on appeal—*United States v. Johnson*, 17-4093.

a copy of the instrument at issue. *Id.* In the present matter, the letter Michael Paulson argues demonstrates his proper resignation is titled: "Request for discharge of fiduciaries from personal liability." (Doc. No. 111-10 at 7.) The foregoing letter was included in a packet of documents that included (1) a copy of federal form 4768; and (2) co-executor's section 6166 election for deferral of federal estate tax. (*Id.* at 3.) The letter that purportedly discharged Michael Paulson as executor is signed as "J. Michael Paulson, Co-Executor of the Will of Allen E. Paulson, Deceased." (*Id.* at 7.)

In sum, the letter on its face does not demonstrate that Michael Paulson followed the proper procedures. First, the letter is ambiguous as it does not specify that Michael Paulson is seeking discharge as the executor, trustee, or both. It only requests "discharge of fiduciaries." (*Id.*) Thus, the application lacks sufficient information as to Michael Paulson's intent to discharge his personal liability as a Trustee. Moreover, the letter requests a notification of any estate tax due within **nine months** of the date of the letter. (*Id.* at 7.) In contrast, § 2204 requires notification after **six months**. 26 U.S.C. § 2204(b).

Michael Paulson argues that substantial compliance with regulatory requirements is sufficient. (Doc. No. 119-1 at 23.) He then cites to *Johnson II* to argue that "[n]either section 2204 nor any applicable authorities or regulations require a specific format, form, or wording to make an application for discharge." (*Id.*) (internal quotation marks omitted) (citing *Johnson II*, 224 F. Supp. 3d 1237). However, as already mentioned, *Johnson II* is currently on appeal and thus its conclusions are unpersuasive.

Consequently, as there are genuine issues of material fact as to whether Michael Paulson followed § 2204(b)'s listed procedures to properly resign as Trustee of the Living Trust, the Court **DENIES** Plaintiff's motion for summary judgment and Michael Paulson's cross-motion for summary judgment on this issue.

Finally, Michael Paulson's cross-motion for summary judgment argues that as he was discharged from personal liability, he has no liability under 31 U.S.C. § 3713. (Doc. No. 119-1 at 25.) Plaintiff states in opposition that it does not seek personal liability against

Michael Paulson under § 3713. (Doc. No. 139 at 31.) Accordingly, this point is **DENIED AS MOOT**.

In sum, Plaintiff's summary judgment motion against Michael Paulson is **GRANTED IN PART AND DENIED IN PART** and Michael Paulson's corresponding cross-motion for summary judgment is **DENIED**. (Doc. Nos. 111, 119.)

### b. Ms. Pickens' Summary Judgment Motion against Plaintiff

Ms. Pickens brings her motion based on three points: (1) she is not a statutory executor under 26 U.S.C. § 2002 and 2203; (2) she is indemnified under the 2003 Settlement Agreement; and (3) she is not liable for the estate tax under 26 U.S.C. § 6324(a)(2) as the Trustee of the Madeleine Anne Paulson Separate Property Trust. (*See generally* Doc. No. 98-1.) The Court previously dismissed the claims that were asserted against Ms. Pickens under 26 U.S.C. § 6324(a)(2) as both a beneficiary of the Living Trust and as a trustee of the Marital Trust. (Doc. No. 54 at 12–13.) Thus, the claims pled above are the only remaining claims against Ms. Pickens. Plaintiff opposes the motion. (Doc. No. 100.)[6]

### i. Liability as a Statutory Executor

Ms. Pickens asserts that she is not the statutory executor because Michael Paulson's resignation as executor was not effective under California law and because she is not in possession of property belonging to the decedent's estate. (Doc. No. 98-1 at 14–18.) As discussed, *supra* pp. 13–16, this Order finds that there are no genuine issues of material fact regarding Michael Paulson's status as the statutory executor. Accordingly, both Ms. Pickens and Plaintiff's motions for summary judgment as to their 26 U.S.C. § 2203 claims are **DENIED AS MOOT**. (Doc. No. 98-1 at 14–18; Doc. No. 114-1 at 18–24.)

///

---

[6] The Court notes that Michael Paulson also filed an opposition to Ms. Pickens' motion for summary judgment. (Doc. No. 116.) However, this brief was filed after the scheduled deadline. (Doc. No. 99.)

### ii. Ms. Pickens' Liability for the Estate Tax Under the 2003 Settlement Agreement

Ms. Pickens argues that she is not liable for estate tax under the 2003 Settlement Agreement because the agreement clearly and unambiguously provides that she is limited to the estate tax that is attributable to the property distributed to her and payable as a result of any distribution made to her. (Doc. No. 98-1 at 18.) Plaintiff in its opposition brief concedes this point. (Doc. No. 100 at 23.) Accordingly, the Court **GRANTS** Ms. Pickens' summary judgment motion on this matter and **DENIES** Plaintiff's cross-motion for summary judgment. (Doc. No. 114-1 at 24.)

### iii. Ms. Pickens' Liability as a Trustee under Section 6324(a)(2)

Ms. Pickens contends that as she did not receive the properties at issue until nearly three years after the Decedent's death, she is not liable for estate tax under § 6324(a)(2). (Doc. No. 98-1 at 21–22.) In response, Plaintiff asserts that Ms. Pickens is liable as a trustee under § 6324(a)(2) because the statute provides for liability for assets held on the date of death and assets that are received later. (Doc. No. 100 at 25–26.)

Section 6324 states in pertinent part that an individual is personally liable for taxes if they "receive[], or ha[ve] on the date of the decedent's death, property included in the gross estate." 26 U.S.C. § 6324(a)(2). Thus, the present issue before the Court is whether the phrase "who receives, or has on the date of the decedent's death" requires an individual to receive property on the date of the decedent's death, or if the comma in the phrase signifies that an individual can receive the property at any time to be liable for taxes.

The Court already addressed this issue in Co-Trustees' motion to dismiss filed in 2016. (*See generally* Doc. No. 54.) In this order, Co-Trustees argued that they were not liable for estate taxes because they did not receive any property of the Estate at the date of Mr. Paulson's death. (*Id.* at 18.) Ultimately, the Court held that as the complaint did not allege that both of the Defendants were in possession of Estate Property or received such property immediately after Mr. Paulson's death that Plaintiff had failed to state a claim against them. (*Id.* (*see Johnson*, 2013 WL 3924087, at *5*).) Specifically, the court in

*Johnson* stated:

> Because section 6324(a)(2) may be interpreted in multiple ways, it is ambiguous and must be interpreted in favor of the Heirs. The court concludes that in order for a person to be a transferee under section 6324(a)(2), the person must have or receive property from the gross estate immediately upon the date of decedent's death rather than at some point thereafter.

*Id.*

Plaintiff argues that it would make no sense to require an immediate receipt of non-probate property as no life insurance company ever pays the beneficiary of a life insurance policy before the decedent's death or immediately on the date of the decedent's death. (Doc. No. 100 at 26–27.) Plaintiff then delves into an in-depth analysis of the statute to demonstrate that the use of the comma to separate the two phrases "receives" and "or has on the date of the decedent's death" demonstrate that the term "receives" is much broader and not ambiguous. (*Id.* at 27.)

Despite Plaintiff's vehement belief that the syntax in § 6324(a)(2) demonstrates that it is an error to arrive at the conclusion that § 6324(a)(2) applies only to persons who "on the date of death" held or legally received included non-probate assets, the Court is still unpersuaded based on the holding in *Johnson*. Accordingly, as Ms. Pickens received property on March 21, 2003, (Doc. No. 98-1 at 22), nearly three years after Mr. Paulson's death, she is not liable as a trustee under § 6324(a)(2). Thus, the Court **GRANTS** Ms. Pickens' summary judgment motion on her claims under § 6324(a)(2). *See Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 508 (1932) (noting that ambiguities as to the meaning of the tax statute are interpreted in favor of the taxpayer). Plaintiff's cross-motion for summary judgment is thus **DENIED**. (Doc. No. 114-1 at 24–32.)

In sum, Ms. Pickens' summary judgment motion is **GRANTED IN PART AND DENIED IN PART**, (Doc. No. 98), and Plaintiff's cross-motion for summary judgment is **DENIED**, (Doc. No. 114).

///

///

### c. Plaintiff's Motion for Summary Judgment Against James Paulson

Plaintiff argues that James Paulson is liable to it under 26 U.S.C. § 6324(a)(2) as a "trustee" who received assets that were included in the gross estate under § 2038. (Doc. No. 118-1 at 25.) Defendant James Paulson, who is not represented by counsel, did not file an opposition brief.

As already discussed above, pursuant to *Johnson*, James Paulson would need to be in possession of the Decedent's assets at his passing to be liable under § 6324(a)(2). *See Johnson*, 2013 WL 3924087, at *5 Here, it is undisputed that James Paulson held possession of all of the assets of the Living Trust in his capacity as trustee on March 24, 2009, (Doc. No. 118-1 at 25), nine years after Mr. Paulson died. Accordingly, finding that the property passed on to James Paulson after the date of the Decedent's death, the Court **DENIES** Plaintiff's motion for summary judgment under § 6324(a)(2).

### d. Michael Paulson's Summary Judgment Motion Against Ms. Pickens

Michael Paulson argues that he is entitled to summary judgment on the following matters: (1) Ms. Pickens' cross-claim for breach of fiduciary duty; and (2) Ms. Pickens' cross-claim based on the indemnity agreement. (*See generally* Doc. No. 121-1.) Ms. Pickens opposes the motion in its entirety. (*See generally* Doc. No. 136.)

#### i. Breach of Fiduciary Duty

Michael Paulson argues that pursuant to the 2003 Settlement Agreement, Ms. Pickens released any rights to the Estate and Trust, "acknowledg[ing] and confirm[ing] that the distribution of assets to her under the terms of [the] Agreement constitutes full and complete satisfaction of any and all rights she has to the distribution of assets under the Trust or . . . in the Estate." (Doc. No. 121-1 at 13 (citing Doc. No. 121-6 ¶ 6).) Thus, as the 2003 Settlement extinguished any interest Ms. Pickens had in the Trust and Estate, Michael Paulson does not owe her any fiduciary duties. (*Id.*) Ms. Pickens contends that she agreed to the language in Paragraph 6, and the release in paragraph 22, as consideration for Michael Paulson's obligation to distribute the property to her free and clear of all debts. (Doc. No. 136 at 7.) Thus, if Michael Paulson breaches his promise to distribute the

property "free and clear of all debts, liens, and encumbrances," her release will have no consideration and no effect. (*Id.*)

In order to successfully claim a breach of fiduciary duty, the claimant must establish (1) the existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach. *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991). Whether a fiduciary relationship exists in any given situation is a question of fact. *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1575–76 (1994).

After reviewing the parties' briefs, the record, and applicable case law, the Court finds that Ms. Pickens has failed to satisfy her burden in demonstrating genuine issues of material fact that Michael Paulson breached his fiduciary duty to her. As highlighted by Michael Paulson, Section 6 of the 2003 Settlement confirms that the distribution of assets under the agreement constitutes "full and complete satisfaction of <u>any and all rights</u> [Ms. Pickens] has to the distribution of assets under the Trust." (Doc. No. 77-3 at 27(emphasis added).) Thus, the 2003 Settlement extinguished any fiduciary relationship between Michael Paulson and Ms. Pickens.

To refute the clear terms of the Settlement, Ms. Pickens argues that she agreed to the language in Paragraph 6, and the release in Paragraph 22, as consideration "for Michael's obligation to distribute the property to her free and clear of all debts, liens and encumbrances." (Doc. No. 136 at 7.) Thus, according to Ms. Pickens, if she is liable for estate taxes, Michael will have breached his promise to her and her release will have no consideration. (*Id.*) Unfortunately, Ms. Pickens still does not support her arguments with any relevant case law, nor points to a provision in the 2003 Settlement that repeats her assertions.

Further, the Court finds that Ms. Pickens' breach of fiduciary duty claim against Michael Paulson is time-barred. A breach of trust and breach of fiduciary duty claim must be brought within three-years under California Probate Code Section 16460. *Critchlow v. Critchlow*, No. C 12-01198 LB, 2012 WL 5519212, at *8 (N.D. Cal. Nov. 14, 2012). Ms. Pickens argues that the four year statute of limitations applies. (Doc. No. 136 at 8.) The

Court disagrees. Section 16460 "applies to claims by beneficiaries against trustees[.]" *See Critchlow*, 2012 WL 5519212, at *8. Here, Ms. Pickens alleges breaches of trust and fiduciary duties under California Probate Code §§ 16000–16015. (Doc. No. 57 at 8.) Thus, § 16460 applies. *See AEG Concerts, LLC v. Hulett*, 217 F. App'x 596, 598 (9th Cir. 2007).

The issue then is whether the claim is barred. Michael Paulson states that Ms. Pickens had actual and constructive notice of any alleged breaches no later than March 24, 2009, when the court issued its decision to remove him as Trustee of the Trust. (Doc. No. 121-1 at 14.) In contrast, Ms. Pickens asserts that the claims giving rise to her breach of fiduciary duty cause of action against Michael Paulson could not have been discovered until Plaintiff brought suit against her for payment of estate taxes on September 16, 2015. (Doc. No. 136 at 8.) In assessing the time of accrual of a cause of action against a trustee under § 16460, the general inquiry is "who knew what and when was it known." *Noggle v. Bank of America*, 70 Cal. App. 4th 853, 860 (1999). A duty to inquire, as stated in the statute, arises when sufficient information is received to put a beneficiary on notice of a claim. *Id.* at 860.

Presently, Ms. Pickens should have been put on notice of her claim on March 24, 2009, when the court issued its order removing Michael Paulson as Trustee of the Living Trust for "wrongful" conduct. (Doc. No. 123-23.) It is undisputed that Michael Paulson was removed for misusing Trust funds. Thus, it would have been easy for Ms. Pickens to ascertain that Trust funds were not being used to pay estate taxes. Accordingly, as Ms. Pickens' cross-claim was filed in 2016, nearly five years after she could have been put on notice or discovered her claim, her breach of fiduciary duty cause of action is time-barred. *See Critchlow*, 2012 WL 5519212, at *10–11 (finding that the plaintiff was alerted to his breach of fiduciary duty claims by November 6, 2008, based on a memo where the plaintiff asked the court to rule that he could bring legal action against the other party for violating the no contest clause of the will); *see also Noggle*, 70 Cal. App. 4th at 858 (noting that statute of limitations under § 16460 occurs when "the beneficiary reasonably should have discovered[] the subject of the claim.").

Based on the foregoing, Michael Paulson's summary judgment motion on this issue is **GRANTED.**

### ii. Indemnification from Liability

Michael Paulson asserts that until Plaintiff's § 3713 claim against him is resolved by this Court, he has a viable claim for indemnification against Ms. Pickens. (Doc. No. 121-1 at 15.) In opposition, Ms. Pickens argues that Michael Paulson's contention that paragraph 21 obligates her to indemnify him for any personal liability he incurs under § 3713 is based on the mistaken belief that Plaintiff has asserted a claim against him for personal liability. (Doc. No. 136 at 3.) However, Ms. Pickens argues that Plaintiff has conceded this claim. (*Id.*) The Court agrees with Ms. Pickens.

Plaintiff admits that it has not sued Michael Paulson under 31 U.S.C. § 3713. (Doc. No. 111-1 at 22 ("The United States has not sued John Michael Paulson under 31 U.S.C. § 3713 in this case.").) Accordingly, as Michael Paulson is mistaken as to Plaintiff's desire to find him liable under § 3713, his summary judgment claim under § 3713 is **DENIED AS MOOT**.

### e. Michael Paulson's Summary Judgment Motion Against Co-Trustees

Michael Paulson argues that in the event this Court enters judgment against the Estate and determines that he is a statutory executor of the Estate, he will be liable for the estate tax to the extent of the Decedent's property that is in his possession. (Doc. No. 122-1 at 13.) However, pursuant to the 2013 Settlement Agreement, Michael Paulson asserts that Co-trustees agreed to indemnify him from this estate tax liability. (*Id.*) In opposition, Co-Trustees assert that summary judgment on Michael Paulson's indemnity claim would be premature and that he is not entitled to indemnity. (Doc. No. 137 at 12–14.)

The specific portion of the 2013 Settlement Agreement cited to by Michael Paulson is:

**Co-Trustees Indemnity Re: Claims against Michael by IRS or any other party resulting from the Agreement.** Except for the matters for which liability is assigned to or indemnity is to be provided by Michael under this Agreement and any claim arising in whole or in part from Michael's own

legally determined wrongful actions or wrongful conduct, from and after the Settlement Date, the Co-Trustees shall indemnify, defend (including the payment of reasonable attorneys fees) and hold Michael harmless from, against, or with respect to any and all claims filed, made, asserted, brought, or prosecuted by the IRS, solely arising from this settlement and the terms of this Agreement, including transfer to Michael of the entities noted in paragraph two.

(Doc. No. 111-32 at 17.)

After reviewing the parties' arguments and the evidence on the record, the Court finds that Michael Paulson has failed to demonstrate the absence of a genuine issue of material fact in regards to his claim for indemnification against Co-Trustees. First, the Court notes that the indemnification portion of the 2013 Settlement requires that Michael Paulson be held harmless with regards to all claims "solely arising from [the] settlement." (*Id.*) In his motion, Michael Paulson broadly argues that in the event that he is determined to be the statutory executor, he will be liable for estate tax to the extent of the Decedent's property that is in his possession. (Doc. No. 122-1 at 13.) However, this broad conclusion does not establish that his status as the executor and the claims against him exclusively arise from the 2013 Settlement nor that the claims stemmed from conduct "from and after the Settlement date" as required by the settlement. (Doc. No. 111-32 at 17.) Instead, Michael Paulson argues that his liability is "traceable to the 2013 Settlement." This is inadequate. In sum, Michael Paulson's general request for indemnification does not adequately satisfy his burden as the moving party at summary judgment.

Moreover, the indemnity section of the settlement also explicitly delineates that claims arising from Michael Paulson's own "legally determined wrongful actions or wrongful conduct" would not be indemnified. (Doc. No. 111-32 at 17.) In the instant action, Michael Paulson was removed as a trustee for "wrongful" conduct on March 24, 2009. (Doc. No. 123-23.) Specifically, the Probate Court stated:

The gifts made by [Michael Paulson] to his family members remain unpaid while [he] is using the trust assets for his own personal benefit and pleasures, including purchases of race horses, attending horse races in the United States and abroad, payment of substantial trustee fees, the use of trust assets for international travel, and other questionable activities. This is the primary

29

reason for removing the trustee. The Court finds that the trustee has put his own personal interests ahead of the interests of the trust beneficiaries. The Court finds that the trustee has misused trust assets for his own personal benefit, and has used his position as trustee to harm, or seek to harm, other beneficiaries as to whom he bears ill will.

(*Id.* at 4.) Thus, in sum, as Michael Paulson was determined by the Probate Court to have misused funds, he cannot now seek indemnity when his actions may have left the Living Trust in the position it is now—unable to pay its federal estate taxes. Accordingly, Michael Paulson's summary judgment motion on his claim of indemnification against Co-Trustees is **DENIED**.

### f. Plaintiff's Motion for Summary Judgment Against Co-Trustees

Plaintiff brings this summary judgment motion against Co-Trustees arguing that they are liable to Plaintiff in their representative capacity as statutory executors under 26 U.S.C. § 2203. (Doc. No. 123-1 at 22–25.) Additionally, Plaintiff contends that Vikki and Crystal are liable under California Probate Code § 19001, the express terms of the Trust, and that Plaintiff is entitled to enforce its tax liens against any obligation the Trust owes to the Estate for estate taxes. (*Id.* at 25–31.) Co-Trustees oppose Plaintiff's motion on all counts. (*See generally* Doc. No. 138.)

#### i. Liability as Statutory Executors

As already discussed *supra* pp. 13-16, the Court finds there is no genuine issue of material fact that Michael Paulson is the statutory executor. Accordingly, Plaintiff's motion is **DENIED AS MOOT**. Nonetheless, if Michael Paulson had properly resigned and the Probate Court did not appoint a qualified individual to fill the position, Co-Trustees could have been categorized as statutory executors. Plaintiff states that it is undisputed that Vikki Paulson and Crystal Christensen as Co-Trustees of the Living Trust are persons who have actual and constructive possession of Mr. Paulson's probate and non-probate assets. (Doc. No. 123-1 at 24.) Co-Trustees do not deny this allegation in their opposition brief, instead they focus on Michael Paulson's failure to resign as executor. (Doc. No. 138 at 15–17.) Accordingly, had the situation arose where there was no executor appointed, Vikki Paulson

30

and Crystal Christensen as current Co-Trustees of the Living Trust could have been considered statutory executors.

### ii. Co-Trustees' Liability under § 19001

Section 19001 of the California Probate Code provides:

(a) Upon the death of a settlor, the property of the deceased settlor that was subject to the power of revocation at the time of the settlor's death is subject to the claims of creditors of the deceased settlor's estate and to the expenses of administration of the estate to the extent that the deceased settlor's estate is inadequate to satisfy those claims and expenses.
(b) The deceased settlor, by appropriate direction in the trust instrument, may direct the priority of sources of payment of debts among subtrusts or other gifts established by the trust at the deceased settlor's death. Notwithstanding this subdivision, no direction by the settlor shall alter the priority of payment, form whatever sources, of the matters set forth in Section 11420 which shall be applied to the trust as it applies to a probate estate.

Cal. Prob. Code § 19001.

Plaintiff contends that Co-Trustees are liable for the unpaid estate tax pursuant to California Probate Code § 19001 as taxes are expenses of administration of the estate. (Doc. No. 123-1 at 26.) In opposition, Co-Trustees argue that § 19001 does not provide a mechanism to collect federal estate taxes from the Living Trust, does not provide a remedy against trust assets for "Debts" of a probate estate generally, and does not create a remedy of any kind. (Doc. No. 138 at 17–22.) After reviewing both parties' legal arguments and the relevant statutory code, the Court finds that there is no genuine issue of material fact as to Plaintiff's claims under § 19001.

The Court first notes that this matter was analyzed in the Court's September 6, 2016 order. (Doc. No. 54 at 19.) Specifically, the Court stated "[c]onsidering the cited statutory text and the allegations in the complaint, the Court concludes Plaintiff has adequately stated a claim under § 19001 . . .Whether the estate tax constitutes an expense of administration, a debt, or a claim as encompassed by section 19001, can be appropriately determined when the Court is not bound by the allegations in the complaint." (*Id.*)

Currently, the Court continues to find that Plaintiff has established liability under § 19001. The Court notes that Co-Trustees forge a good attempt at precluding Plaintiff's

claim, but Co-Trustees disregard the implied legislative intent in the statute. Section 19001(b) recognizes that Probate Code Section 11420 prioritizes government collection of taxes above administration expenses and creditor claims. *See* Cal. Prob. Code § 190001(b). This specific provision shows that legislators do not enact statutes that provide for creditor's claims without prioritizing the government's claims above all else. Further, although § 19001(a) only includes "creditor's claims" and "expenses of administration," Plaintiff's right to pursue estate tax is impliedly included in this provision because such has been prioritized in state and federal statutes. *See* Cal. Probate Code § 11420; 31 U.S.C. § 3713. Thus, the Court is not convinced that Congress would enact a statute or pursue policy that will allow private creditors to collect on a decedent's trust estate, while excluding the United States of America from its own claims.

Further, the plain meaning behind the statute supports the Court's conclusion. First, it is undisputed that the Living Trust is revocable. Second, a "creditor" under the Code "means a person who may have a claim against the trust property." *Id.* at (c). Finally, "debts" as referenced in section (b) of Probate Code 19000, means all claims, as defined in subdivision (a), <u>all expenses of administration</u>, and all other proper charges against the trust estate, <u>including taxes</u>." *Id.* at (f) (emphasis added). Consequently, it is clear to the Court that the estate taxes is a debt for which Plaintiff has a claim against the estate.

Ultimately, the Court concludes that there is no genuine dispute over any material facts in regards to Plaintiff's claim under California Probate Code § 19000 and thus its motion is **GRANTED**. *See Dobler v. Arluk Med. Ctr. Indus. Grp., Inc.*, 89 Cal. App. 4th 530, 534 (2001) ("[Section 19001] provides the assets of a revocable trust are subject to the claims of creditors of the deceased settlor's probate estate to the extent the probate estate insolvent.").

   iii.   Enforcement of the Unpaid Estate Tax Under the Express Terms of the Trust

Plaintiff contends that Vikki Paulson and Crystal Christensen as current Co-Trustees of the Living Trust are liable to Plaintiff for the unpaid estate tax under the express terms of the Living Trust. (Doc. No. 123-1 at 28–30.) In opposition, Co-Trustees contend that

Plaintiff is not a third-party beneficiary to the Declaration of Trust and thus Plaintiff is not entitled to enforce the express terms of the Trust for its benefit. (Doc. No. 138 at 24–26.)

To allege the existence of a contract, a plaintiff must plead mutual consent, sufficiently definite contractual terms, and consideration. *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1142 (N.D. Cal. 2013). In contrast, a trust is defined as "an equitable estate committed to the charge of a fiduciary (trustee) for a beneficiary[.]" Bryan A. Garner, <u>A Dictionary of Modern Legal Usage</u> 892 (1995).

"Before a third party can recover under a contract, it must show that the contract was made for its direct benefit—that it is an intended beneficiary of the contract." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. *See Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997). One way to determine if the intent behind the contract was to benefit a specific party is to "ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." *Klamath Water Users*, 204 F.3d at 1211.

Ultimately, Plaintiff's failure to demonstrate how the Living Trust is a contract and how it is a third-party beneficiary to the supposed contract at issue torpedoes its claim. Presently, Plaintiff tries to concoct liability by arguing that under the terms of the trust, the Living Trust was required to pay all estate taxes. (Doc. No. 123-4 at 11, 13.) Plaintiff then leaps to the conclusion that under the terms of the Trust, "payment of the estate tax by the Living Trust to the Estate so the Estate can pay [Plaintiff], or payment of the estate tax directly to [Plaintiff] results in the same obligation of the Trust being fulfilled." (*Id.* at 29.) Thus, Plaintiff argues in a broad manner that as it is a creditor, it is entitled to enforcement of the contractual provision in the trust agreement as an intended third-party beneficiary. (*Id.*)

However, Plaintiff makes this assumption without establishing that the Living Trust is a contract. Without such information, Plaintiff cannot establish an absence of genuine issue of material fact that it is third-party beneficiary to the Living Trust. *See United States*

*v. City of Los Angeles, Cal.*, 288 F.3d 391, 404 (9th Cir. 2002) ("A promise creates no duty to a beneficiary unless a contract is formed between the promisor and the promise[.]") (citation omitted); *see also Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-0389 WHA, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) ("All in all, plaintiffs have not shown that the servicer participation agreement reflects the express or implied intention of Chase and the United States to benefit third-party borrowers via their contract.").

Consequently, as the moving party, Plaintiff has failed to satisfy its burden in demonstrating an absence of a genuine issue of material fact that it is a third-party beneficiary to the Living Trust. Thus, the motion is **DENIED**.

### iv. Enforcement of the Tax Liens

Plaintiff asserts that to the extent that the Trust is obligated to make payments to the Estate so that it can then pay the estate taxes, rather than making a direct payment to Plaintiff, it has federal tax liens against all property and rights to property of the Estate under 26 U.S.C. §§ 6321, 6322, 6323. (Doc. No. 123-1 at 30.) In opposition, Co-Trustees argue that the tax lien provides no recourse to the assets of the Living Trust. (Doc. No. 138 at 26.) Specifically, Co-Trustees contend that as California Probate Code § 19001 does not create any interest in the Living Trust to pay for Paulson's estate taxes and Article IV of the Living Trust does not create an obligation for the Living Trust to pay for the Estate taxes, Plaintiff cannot enforce its tax liens. (*Id.* at 27–28.)

Unfortunately, Co-Trustees arguments in opposition fail to demonstrate genuine issues of material fact over Plaintiff's right to enforce its liens if and when an amount of estate taxes is determined. This is especially in light of the fact that this Order concludes that § 19001 does create an interest in the Living Trust for the Estate's taxes. Accordingly, based on this, the § 6321 lien the Government has against the "property" of the Paulson estate does extend to assets of the Living Trust pursuant to 26 U.S.C. § 7403. Thus, Plaintiff's motion is **GRANTED.**

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment against Michael Paulson, (Doc. No. 111),

**DENIES** Michael Paulson's cross-motion for summary judgment, (Doc. No. 119), **GRANTS IN PART AND DENIES IN PART** Ms. Pickens' motion for summary judgment against Plaintiff, (Doc. No. 98), **DENIES** Plaintiff's cross-motion for summary judgment against Ms. Pickens, (Doc. No. 114), **DENIES** Plaintiff's motion for summary judgment against James Paulson, (Doc. No. 118), **GRANTS IN PART AND DENIES IN PART** Michael Paulson's summary judgment motion against Ms. Pickens, (Doc. No. 121), **DENIES** Michael Paulson's motion for summary judgment against Co-Trustees, (Doc. No. 122), and **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment against Co-Trustees, (Doc. No. 123). Additionally, Michael Paulson and Co-Trustees' motions to strike are **DENIED**. (Doc. Nos. 143, 153.)

**IT IS SO ORDERED**.

Dated: September 7, 2018

Hon. Anthony J. Battaglia
United States District Judge

35