UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>JOHN MICHAEL PAULSON, et al.,<br><br>                              Defendants. | Case No.:  15-cv-2057 AJB (NLS)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 52(a)**<br><br>(Doc. No. 189) |

Presently before the Court is John Michael Paulson's (herein referred to as "Michael Paulson") summary judgment motion on one main point: whether he was discharged of his personal liability for the estate tax due to his capacity as trustee of the Living Trust under 26 U.S.C. § 2204. (*See generally* Doc. No. 189-1.) The United States opposes the motion and moves for a motion of findings and judgment on stipulated facts. (Doc. No. 191-1.) In Michael Paulson's response he does not object to a motion for judgment pursuant to Federal Rule of Civil Procedure 52 rather than a motion for summary judgment under Federal Rule of Civil Procedure 56. The Court, therefore, will treat Michael Paulson's motion as a motion for judgment pursuant to Federal Rule of Civil Procedure 52.

/ / /

/ / /

# FINDINGS OF FACT

1. On December 23, 1986, Mr. Allen E. Paulson established the Allen E. Paulson Living Trust (hereafter referred to as the "Living Trust"). (Doc. No. 188 at 2.) On January 28, 2000, it was amended and completely restated. (*Id.*)

2. Three subsequent amendments to the Living Trust were executed on March 21, 2000, June 6, 2000, and June 14, 2000. (*Id.* at 3.)

3. Article IV, Paragraphs A and B, of the Living Trust required the Living Trust to pay all estate taxes owed by the Estate of Mr. Allen E. Paulson. (*Id.*) Under California Probate Code Section 19001, the Living Trust was obligated to pay all claims of creditors of the Estate and expenses of administration of the Estate to the extent the Estate was inadequate to satisfy those claims. (*Id.*)

4. On March 21, 2000, Mr. Allen E. Paulson executed his Last Will and Testament. (*Id.*)

5. On June 6, 2000, Mr. Allen E. Paulson executed a First Codicil to his Last Will and Testament. (*Id.*)

6. On July 19, 2000, Mr. Allen E. Paulson died. (*Id.*)

7. Mr. Allen E. Paulson's Will was filed with the Probate Court. (*Id.*) Michael Paulson and Edward White were appointed and served as Co-Executors of the Estate until Edward White's resignation effective October 8, 2001. (*Id.*) Thereafter, Michael Paulson served as a court appointed Executor until January 15, 2013 and ceased performing those duties as part of the 2013 Settlement Agreement with the Co-Trustees. (*Id.*) The Court determined that because there was no executor appointed by the probate court after Michael Paulson's attempted resignation in 2013, Michael Paulson is still the statutory executor, but not personally liable for any estate tax in that capacity. (*Id.* at 3–4.)

8. At the time of Mr. Allen E. Paulson's death, the Living Trust held all of Mr. Allen E. Paulson's assets except for 100% of the shares in the Gold River Hotel & Casino

1   Corporation (hereafter "Gold River shares"), which were valued at $0.[1] (*Id.* at 4.) The
2   Living Trust's assets included real estate, stocks, bonds, cash, receivables and
3   miscellaneous assets valued on the date of Mr. Allen E. Paulson's death at $193,434,344.
4   (*Id.*) According to Form 706, the deductions[2] totaled $178,495,454. (*Id.*)
5   9. Following Mr. Allen E. Paulson's death, Michael Paulson and Edward White became
6   co-trustees of the Living Trust until White's resignation effective October 8, 2001. (*Id.*)
7   10. On October 11, 2001, Nicholas V. Diaco, M.D. consented to act as co-trustee of the
8   Living Trust with Michael Paulson. (*Id.*) Michael Paulson only served as trustee of the
9   Living Trust until March 24, 2009, when he was removed. (*Id.*)
10  11. After an extension of time to file the return, on October 23, 2001, the IRS received the
11  Estate's Form 706 Estate Tax Return. (*Id.* at 5.) The return was signed by Michael Paulson
12  as Co-Executor. (*Id.*) The Estate paid $706,296 concurrently with its filing of the Estate
13  Tax Return. (*Id.*) The Estate elected to defer the payment of the balance of its estate taxes
14  under Section 6166 of the Internal Revenue Code over the next 15 years. (*Id.*) Although
15  the original amount of estate tax shown due by the Estate Tax Return has been paid, the
16  additional assessment of estate tax made by the IRS in 2006 remains unpaid. (*Id.*)
17  12. At the same time he filed the Estate Tax Return with the IRS, Michael Paulson filed a
18  cover letter with the Return and also filed a letter dated October 19, 2001 requesting a
19  discharge under 26 U.S.C. § 2204. (*Id.*)
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /

---

[1] The IRS proposed to increase the value of Gold River shares on Schedule B to $5,380,000 in its Notice of Deficiency. (*Id.*) This increase was later abandoned as part of the Tax Court decision with a corresponding decrease in the Schedule L deductible debts or expenses related to Gold River. (*Id.*)

[2] These include items set forth in Schedules J and L (expenses incurred in administering property); Schedule K (debts, mortgages, and liens); and Schedule M (bequests to surviving spouse). (*Id.*)

13. The entire Estate Tax Return was voluminous and consisted of several boxes of forms, schedules, and supporting attachments. (*Id.*) Schedule G of the Estate's tax return, Form 706 stated:

> The Allen E. Paulson Living Trust established by Declaration of Trust dated December 23, 1986, was amended and completely restated January 28, 2000. Amendments thereto were executed on March 21, 2000, June 6, 2000, and June 14, 2000. An Order Construing Trust and Determining Validity of Trust Provision was entered in Superior Court of California, San Diego County, in trust proceeding PN 24815 dated September 22, 2000. During Allen Paulson's lifetime, he served as Trustee. After his death, John Michael Paulson and Edward White served as Co-Trustees. Subsequently, Edward White resigned and Nicholas Diaco was appointed Successor Trustee to serve with John Michael Paulson Successor Trustee. The Trust's taxpayer identification number is [redacted]. A copy of the Amended and Restated Allen E. Paulson Living Trust, each of the three amendments, and the aforesaid court Order, are attached as Exhibit 35.

(*Id.* at 5–6.)

14. The IRS acknowledged receipt of the Section 2204 discharge request, but never responded to it. (*Id.* at 6.)

15. On October 19, 2001, letters and attachments were prepared for signature of Michael Paulson under the supervision of Jeffrey M. Loeb and at his direction by a paralegal employed by the law firm Loeb & Loeb LLP, and that he was authorized to act as the Estate's representative before the IRS, and to make written or oral presentations on behalf of the Estate pursuant to 26 CFR § 601.504(b)(2)(ii). (*Id.*)

16. The letter was prepared based upon a Loeb & Loeb form document, the purpose of which is to begin the nine-month period within which the IRS has to issue a notification of the estate tax due or suffer the consequence of losing the right to impose personal liability upon persons acting in any and all fiduciary roles at the time the letter is sent. (*Id.*) The reference to "fiduciaries" in the subject line of the letter reflects accurately this scope of the letter's intended coverage. (*Id.*) The use of the term "Co-Executor" was meant to

identify Michael Paulson's title in a manner consistent with his title appearing on the federal estate tax return; it was not meant to limit the scope of the term "fiduciaries" appearing on the subject line of the letter. (*Id.*) It was Mr. Loeb's belief that such a letter operates to discharge an executor/trustee such as Michael Paulson both in his capacity as a co-executor and as a trustee. (*Id.*) In such circumstances, it was not his practice to submit two separate discharge requests. (*Id.*)

17. Schedule G of the Estate's tax return, Form 706, stated: "All assets reported on this return are assets of the above-described Allen E. Paulson Living Trust," except for the Gold River shares, which were valued at $0. (*Id.* at 7.)

18. Neither Edward White nor Nicholas Diaco ever signed any request seeking to invoke the provisions of 26 U.S.C. § 2204 to request a discharge personal liability. (*Id.*)

19. The IRS has not sought to hold either Edward White or Nicholas Diaco personally liable as past trustees of the Living Trust for any estate tax deficiency. (*Id.*)

20. On February 2, 2003, Michael Paulson entered into a Settlement Agreement and Mutual General Release in his capacities as an individual, Executor of the Will of Allen E. Paulson, and a Co-Trustee of the Living Trust with Madeleine Pickens and others. (*Id.*) Michael Paulson signed this 2003 Settlement Agreement on behalf of three different persons/entities and signed in each of these three different capacities. (*Id.*) He signed "J. Michael Paulson" in his individual capacity, as a beneficiary. (*Id.*) He also signed in a different location, "J. Michael Paulson, Executor" for the Estate of Allen E. Paulson, and he again signed in a third location, "J. Michael Paulson, Co-Trustee" for the Living Trust. (*Id.*)

21. On December 2, 2005, as a result of an IRS audit and a challenge by Michael Paulson as Executor of the Estate, the Tax Court determined pursuant to the parties' stipulation, that $6,669,477 of additional estate tax owed by the Estate. (*Id.*) The Estate elected to pay this additional estate tax liability under the same fifteen-year installment period permitted by 26 U.S.C. § 6166. (*Id.*)

22. On January 30, 2006, the IRS assessed the $6,669,477 of additional estate taxes due from the Estate. (*Id.* at 8.) These additional taxes were subject to being paid under the

existing Section 6166 installment election. (*Id.*)

23. While Trustee of the Living Trust, Michael Paulson prepared a number of reports to the state court listing out assets sufficient to pay the taxes, including the final report dated February 2009, which listed $50,035,577 in assets, just over $19 million in assets if the Supersonic Jet project and the Rand receivable were not included. (*Id.*)

24. On March 24, 2009, the Probate Court removed Michael Paulson as Trustee of the Living Trust and appointed Vikki Paulson and James D. Paulson as Co-Trustees. (*Id.*)

25. At the time of Michael Paulson's removal as Trustee in March of 2009, there had been no default in the installment payments to the IRS. (*Id.*) However, the April 19, 2008 payment had not been made and was instead on a one-year extension to April 19, 2009. (*Id.*) At that time there were still sufficient assets to pay the Section 6166 installments over the remainder of the 15-year period. (*Id.*)

26. On May 7, 2010, in response to one or more missed installment payments, the IRS issued the Estate a Notice of Final Determination as provided in I.R.C.§ 6166 has ceased to apply. (*Id.*) Such a notice was sent to the Co-Trustees. (*Id.*)

27. On April 16, 2012, before Michael Paulson resigned as part of the 2013 Settlement Agreement, and ceased performing duties as the Executor, Vikki E. Paulson and Crystal Christensen, Successor Co-Trustees of the Living Trust, filed a third petition in the United States Tax Court on behalf of the Estate seeking a review of the Estate's Collection Due Process rights. (*Id.*) At the time this petition was filed, Michael Paulson had no fiduciary role in connection with the Living Trust, which was required to pay all estate taxes owed by the Estate and was not involved in this petition. (*Id.* at 8–9.) This Tax Court petition was dismissed on April 18, 2013, for lack of jurisdiction because the petition had not been signed by Michael Paulson who was, at that time, the court appointed Executor of the Estate. (*Id.* at 9.)

28. From 2007 through 2013, several disputes arose between Michael Paulson, Vikki Paulson, Crystal Christensen, James Paulson, and other interested parties in the Living Trust. (*Id.*) On January 15, 2013 these parties entered into a Settlement Agreement and

Mutual General Release that formalized resolution to these disputes ("2013 Settlement Agreement"). (*Id.*) Michael Paulson entered into the 2013 Settlement Agreement as an individual, as Executor of the Will of Allen E. Paulson, and as a beneficiary and major creditor of the Living Trust and signed the 2013 Settlement Agreement in all of theses capacities. (*Id.*) He signed individually, as a beneficiary, and a major creditor of the Living Trust as "J. Michael Paulson", and he signed "J. Michael Paulson, Executor" for the Estate of Allen E. Paulson. (*Id.*) Vikki E. Paulson and Crystal L. Christensen each signed as "Co-Trustees" for the Living Trust. (*Id.*) On June 3, 2013, the Probate Court adopted the 2013 Settlement Agreement as an order of the Court. (*Id.*)

## **CONCLUSIONS OF LAW**

Plaintiff contends that though Michael Paulson was discharged from personal liability arising out of his position as Executor, he was not discharged from personal liability arising out of his role as Trustee of the Living Trust pursuant to 26 U.S.C. § 2204. (Doc. No. 191-1 at 12.) However, Michael Paulson argues that he followed all of the required procedures to be discharged as both executor of the Estate and trustee of the Trust. (Doc. No. 189-1 at 6.)

Section 2204 states:

> **(a) General Rule.**—If the executor makes written application to the Secretary for determination of the amount of the tax and discharge from personal liability therefor, the Secretary (as soon as possible, and in any event within 9 months after the making of such application, or, if the application is made before the return is filed, then within 9 months after the return is filed, but not after the expiration of the period prescribed for the assessment of the tax in section 6501) shall notify the executor of the amount of the tax. The executor, on payment of the amount of which he is notified . . . and on furnishing any bond with may be required for any amount . . . shall be discharged from personal liability for any deficiency in tax . . .
>
> **(B) Fiduciary other than the executor.**—If a fiduciary other than the executor makes written application to the Secretary for determination of the amount of any estate tax for which the

> fiduciary may be personally liable, and for discharge from personal liability therefor, the Secretary upon the discharge of the executor from personal liability under subsection (a), or upon the expiration of 6 months after the making of such application by the fiduciary, if later, shall notify the fiduciary (1) of the amount of such tax for which it has been determined the fiduciary is liable, or (2) that it has been determined that the fiduciary is not liable for any such tax. Such application shall be accompanied by a copy of the instrument, if any, under which such fiduciary is acting, a description of the property held by the fiduciary, and such other information for purposes of carrying out the provisions of this section as the Secretary may require by regulations. . ..

26 U.S.C. § 2204(a), (b).

The crux of the issue here is whether Michael Paulson followed the procedures outlined above to be discharged of personal liability arising out of his role as Trustee of the Living Trust. Plaintiff argues that Michael Paulson failed to follow these procedures.

Prior to 1970, Section 2204 was titled "Discharge of Executor from Personal Liability," and in fact, only allowed for the executor to discharge their personal liability. United States Statutes at Large, Pub. L. No. 91-614, 84 Stat. 1836. In 1970, however, it was re-titled "by striking out 'EXECUTOR' in the heading of such section and inserting in lieu thereof 'FIDUCIARY.'" *Id.* Subsection (b) was added to allow fiduciaries to apply for discharge of liability. It is not clear to the Court that the congressional intent by adding subsection (b) was that Congress recognized that there are instances where a fiduciary, such as a trustee, administering the trust continue to remain personally liable for tax even though the executor of the estate may have been discharged from personal liability as a result of filing of an application for discharge under Section 2204 as Plaintiff asserts in its opposition. (Doc. No. 191-1 at 14.) Accordingly, this argument regarding congressional intent is unpersuasive.

Plaintiff asserts that Michael Paulson did not submit any written application in his capacity as a fiduciary other than the executor. (Doc. No. 191-1 at 14.) Specifically,

Plaintiff points to the following facts: Michael Paulson signed the letter as "J. Michael Paulson, Co-Executor of the Will of Allen E. Paulson, Deceased"; he did not sign the letter personally or in all capacities; and he requested nine months as described for executors under Section 2204(a) rather than the six-month time frame for fiduciaries. (*Id.* at 15–16.)

As Michael Paulson points out, in contrast to Plaintiff's arguments that none of the procedures were followed, the letter sent to the IRS tells a different story. First, the title of the letter is "Request for discharge of fiduciaries from personal liability." (Doc. No. 189-1 at 8.) The plural form of fiduciary may indicate that Michael Paulson sought to be discharged as a trustee and executor. Second, the letter enclosed (1) a copy of Federal Form 4768; (2) co-executor's Section 6166 election for deferral of federal estate tax; and (3) co-executor's request for discharge from personal liability pursuant to I.R.C. Section 2204. (Doc. No. 172 at 21.) As to the request for discharge, the letter is not specific as to whether Michael Paulson was requesting discharge under parts (a) or (b) or both of Section 2204. (*Id.*) Further, requesting the longer time frame of nine months was likely appropriate as it encompassed both the time frame to be discharged as a fiduciary and as an executor.

26 U.S.C. § 2204 does not specify how Michael Paulson was to sign the letter. Plaintiff produces no case law to support its position that the way in which Michael Paulson signed the letter only exhibits that he signed it only as an executor. Michael Paulson argues that he signed using the term "Co-Executor" as a way to identify Michael Paulson's title in a manner consistent with his title appearing on the federal estate tax return. (Doc. No. 189-1 at 11.) Currently, there is no authority that requires specific format, form or wording to make an application for discharge. *See United States v. Johnson*, 224 F. Supp. 3d 1220, 1237 (D. Utah 2016) ("*Johnson II*"), *reversed on other grounds United States v. Johnson*, 920 F.3d 639 (10th Cir. 2019). However, Plaintiff argues that Michael Paulson signed various documents in different capacities and sometimes would sign the same document multiple times in his differing capacities. (Doc. No. 191-1 at 19–21.) There is no such requirement, however, how to sign the letter nor is there a requirement that Michael Paulson was supposed to provide two letters to the IRS.

Plaintiff argues that *Johnson II* clearly treated the discharge provisions of Section 2204(a) and (b) separately. *Id.* at 1237. However, it is unclear how the district court in *Johnson II* treated those two provisions separately. The district court did not address Section 2204(b) and the defendants in that case were offered a special lien under Section 6324A, which is not at issue in the instant litigation. Accordingly, the Court find this argument unpersuasive.

Further, it is stipulated that

> Mr. Loeb would testify that the letter was prepared based upon a Loeb & Loeb form document, the purpose of which is to begin the nine-month period within which the IRS has to issue a notification of the estate tax due or suffer the consequence of losing the right to impose personal liability upon persons acting in any and all fiduciary roles at the time the letter is sent . . . It was (and remains) his belief that such a letter operates to discharge an executor/trustee such as Michael Paulson both in his capacity as a co-executor and as a trustee.

(Doc. No. 188 ¶ 16.) However, Plaintiff argues that intent does not matter. (Doc. No. 191-1 at 18.) Plaintiff argues that the IRS cannot be expected to infer intent from a letter that does not mention the Living Trust. (*Id.* at 18–19.) Further, Plaintiff points to the fact that Mr. Loeb entitled the letter "Co-Executor's Request for Discharge from Personal Liability Pursuant to I.R.C. Section 2204" and did not mention Michael Paulson's capacity as a trustee. (*Id.* at 21.)

However, the Living Trust, not the Estate, held all of the assets at the time of the letter. There was not a separate a tax return for the Living Trust. The Living Trust, therefore, was to make the payments on the tax obligations of the Estate. Further, the subject line of the letter read: "Request for discharge of fiduciaries from personal liability." (Doc. No. 111-10 at 7.) Logically, the Court finds that Michael Paulson was seeking to discharge his personal liability as trustee of the Living Trust.

Further, the IRS never contacted Michael Paulson regarding any confusion over the letter. In fact, the IRS never responded to the letter. The IRS is "to notify the fiduciary (1)

of the amount of such tax for which it has been determined the fiduciary is liable, or (2) that it has been determined that the fiduciary is not liable for any such tax." 26 U.S.C. § 2204. If there was any confusion, Plaintiff argues that the IRS should have alerted the fiduciary that he remained liable for the full amount of "any estate tax for which the fiduciary may be personally liable." The Court agrees. Plaintiff should not have waited twelve years to raise this issue in litigation.

## CONCLUSION

Based on the foregoing, the Court **ORDERS** Michael Paulson to be discharged of personal liability under 26 U.S.C. § 2204 as a trustee of the Allen E. Paulson Living Trust. The Clerk of the Court is **DIRECTED** to close the case accordingly.

**IT IS SO ORDERED**.

Dated:  March 21, 2020

Hon. Anthony J. Battaglia
United States District Judge